WRIT NO. 12-03324-CRF-272-A

41,804-02

## APPLICANT'S ATTACHED MEMORANDUM OF LAW FOR HIS 11.07

GROUND OF ERROR NO. 1: APPLICANT IS BEING DENIED HIS DUE PROCESS RIGHT TO A COMPLETE COPY OF THE TRIAL RECORD TO PREPARE HIS POST-CONVICTION COLLATERAL ATTACK.

Applicant is "NOT" seeking a free copy of the trial record. The Court Reporter refused and failed to properly record word for word every thing that was said during trial. Specifically by trial counsel, prosecutor and judge and jury. Additionally failed to include the jury note(s) to the judge, whether trial counsel was present during the decision making process as to how to respond to the note. Additionally there is a total absence from the record as to what steps were taken to secure Applicant's presence during this critical stage of the proceedings.

The present trial records clearly verifies there was three off the record discussions. This vital and potential vital information was not recorded. This failure insured that the transcription of the proceedings is fatally incomplete. The first discussion occurred immediately after the venire panel was seated. Vol.3 P. 5 L.3. Applicant was present and now will recite to the best of his ability what was said. The trial judge the Honorable Travis Bryan III called ATTENTION: to the distinguished Mr. Robert Cessna veniremenber No. 6. (Who was selected as juror No.2. Vol.3 P.162 L.8.) As being a famous sport writer who works for the local newspaper. The Bryan Eagle. Then the judge launched into a short speech about his highly acclaimed friend's more distinguished accomplishments, then asked the entire courtroom to give him around of applause for his close and dear friend Mr. Cessena. The entire courtroom did in fact give him a loud and long round of applause. All these vital events were not recorded as such they are not a part of the transcribed record. The lack of this recorded evidence has denied applicant the necessary record to establish that counsel was ineffective for not questioning this juror about his relationship with the judge, if said relationship would effect his decision making process. This is the most vital and primary function during voir dire. See Cadoree v. State, 810 S.W.2d 786,789 (Tex.App.-Houston [14th Dist.] 1991).

Additional off-the-record discussion took place. Vol.3 P.142 L24, P.165 L.25. This missing word for word conversation involved the judge, D.A. and trial counsel. This missing record is potentially vital.

Another "off-the-record discussion." Vol.3 P.173 L.20. Applicant overheard portions of this open court proceeding. Counsel revealed his representation of applicant against the actions of the Barzos County Sheriff Department which entail all of the state's witnesses. Counsel revealed that he works with the Barzos

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 03 2015

Abel Acosta, Clerk

1

Co. Sheriff's Dept. as a ride along, at times he participates in armed raids during which his very life is entrusted in the hands of the county's deputies. Therefore, it was in the best interest of counsel to not subject his co-workers to ridged cross-examination. Exposing them to possible disciplinary actions, civil suits or criminal charges being filed against them. Thereby creating a hostile work environment. White v. Reiter, 640 S.W.2d 586,599 (Tex.Cr.App. 1982).

This lack of this recorded evidence has denied applicant the evidence he needs to establish his counsel's conflict of interest, and that the judge was aware of this conflict of interest. Applicant is now left with the ball assertion in state and federal court, post-conviction proceedings. The Supreme court has long ago ruled in its landmark decision this is insufficient. Cuyler v. Sullivan, 100 S.Ct. 1708,1719 (1980)("[u]ntil a defendant shows his counsel representation represented a conflict of interest, he has not established the constitutional predicate for his claim of ineffective assistance of counsel.

See Vol.4 P.183 L.15 which unambiguously establishes that there was a jury note, that a discussion was held then a reply was sent by the judge. Also that the record does not include this note, nor if counsel and or applicant was present and consulted before a reply was sent, also what steps were taken to secure applicant's presence. It is mandatory that the record reflects these events. See Tex.C.C.P. 36.27. See also U.S. v. Smith, 31 F.3d 469,473 (7th Cir.1994).

This rule is setup to guard against Ex Parte communications between the judge and jury. Now what is the most disturbing portion of the missing records is the ex parte communications between the judge, prosecutor and jury. As noted in the record Vol.4 P.183 L.15 the juror(s) during deliberation the jury requested to view the video. Applicant has now submitted a notarized affidavit. Ex. A. The judge ran everyone out of the courtroom except the prosecutor. The judge then summoned the jury panel into the courtroom, the prosecutor set up the video on his person lap top and served as the on scene operator. Trial counsel nor Applicant was present. Shortly after this viewing the jury returned a verdict of guilty. None of these highly illegal, highly prejudicial events are on the record. This in itself requires a new trial. See Revell v. State, 885 S.W.2d 206,211 (Tex.App.-Dallas 1994). Ex parte communication limited to the jury foreman and judge alone was prejudicial enough for the Supreme Court to agree a new trial was warranted. United States v. United States Gypsum Co., 98 S.Ct. 2864,2885-86 ("Finally, the absence of counsel from the meeting and the unavailability of the transcription of full report of the meeting aggravate the problems..."). This secret meeting between the judge,

2.

prosecutor and the _entire jury panel's_ private extended viewing of the inculpatory video orchestrated by the prosecutor, far exceeds the ex parte communication(s) the Supreme Court requires for reversal. Id at 2885-86.

In the event that this court should attempt to rule that this error needed to be objected to, to preserve error will only highlight that these ex parte communications and events took place without counsel being present, in violation of 36.27 supra., _U.S. v. Smith,_ supra at 471.

Applicant has a due process right to these records without unnecessary delay. _DeLancy v. Caldwell,_ 741 F.2d 1246,1247 (10th Cir.1984). Applicant has suffered harm but not limited to: Being forced to file an incomplete 11.07 in efforts to stop the running of the one-year statute of limitation pursuant to 28 U.S.C §2244. Also the continuing incarceration of an innocent person. _Triestman v. U.S.,_ 124 F.3d 361,379 (2nd Cir. 1997). Applicant request that he be provided a complete copy of the trial record, and the opportunity to supplement his 11.07.

GROUND OF ERROR NO. 2: APPLICANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO CROSS-EXAMINE THE WITNESSES AGAINST HIM.

Officer Ficke prepared the Vehicle Inventory Report which is testimonial _the linch-pin_ (evidence) that was used to prove the gun and jacket was legally obtained. Thereby allowing it to be used as evidence during trial. As such the manner in which the report was prepared is the nexus of the entire case. Because of these facts applicant had a Sixth Amendment right to cross-examine this witness. _Meledez-Diaz v. Massachusetts,_ 129 S.Ct. 2527 (2000):

> "The Sixth Amendment of the United States Constitution, made applicable to the State's via the Fourteenth Amendment, _Pointer v. Texas,_ 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), provides that '[I]n all criminal prosecutions, the accused **shall** enjoy the right...to be confronted with the witnesses against him.' In _Crawford, [v. Washington,_ 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)] after reviewing the Clause's historical underpinnings, we held that it guarantees a defendant's right to confront those 'who bear testimony' against him... A witness testimony against a defendant is thus inadmissible unless (Pg. 321) the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination Id. at 54, 124 S.Ct. 1354, 158 L.Ed.2d 177."

The fact in question is whether the Vehicle Inventory Report compiled by Brazos Co. Sheriff's Deputy Ficke is testimonial. It represents the same testimony he is expected to provide if called at trial. See _Meledez-Diaz v. Massachusetts,_ supra at 321: ("The fact in question is that the substance found in the possession of Melenda-Diaz-the precise testimony the analysts would be expected to provide if called to trial.").

3

This report prepared by officer Ficke is considered on the same plane as the report prepared by the analysis in <u>Meledez</u> supra each are not entitled to the exception of business records. See <u>Meledez</u>, supra L.Ed.2d at 328:

"The analysts' certificates-like police reports generated by law enforcement officials do not qualify as business or public records for precisely the same reason. See Rule 803(8)(defining Public records as "excluding, however, in criminal cases matters observed by police officers and other law enforcement personal"). At 329 "Business and Public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because-having been created for the administration of the entity's affairs and not for the purpose of establishing or proving some fact at trial they are not testimony..."

For this reason applicant has a Sixth Amendment right to cross-examine officer Ficke, so he could test the reliability of the report. <u>Meledez</u>, supra at 326: ("To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner by testing in the crucible of cross-examination."). Additionally it's the prosecutor's responsibility to ensure Ficke is present and not applicant's. Because it is the prosecutor's job to produce adverse witnesses. <u>Meledez</u>, supra L.Ed. 2d at 323 ("Const. Amend 6. The text of the Amendment contemplates two classes of witnesses-those against the defendant and those in his favor. The prosecutor **must** produce the former.)". Because applicant was denied his Sixth Amendment right to cross-examine officer Ficke this writ should be granted and a new trial order.

Next is the matter of being denied the right to cross-examine the witness that gave evidence against applicant for a past crime, a description of the vehicle and the sole witness to provide a description and identification of applicant as the driver of the vehicle. The State was allowed to prove this key element by hearsay testimony without allowing applicant to test the reliability of said testimonial evidence. <u>Matz v. State</u>, 14 S.W.3d 746,747 (Tex.Crim.App.2000)("The gravemen of the general exclusion of hearsay is that such testimony is not subject to testing through cross-examination."). All testifying witness agreed they could not identify applicant as the driver until **after** applicant was forcefully pulled over and simultaneously arrested at gun point. Vol.4 P.75 L8-14. Officer Terry Young testified that" I may have been about a block or so behind everybody else. Vol.4 P.58 L18-19. Officer Ledesna testified he was in the vehicle at the very back I came in after--right after the stop. Vol.4 P. 82 L.2-3. Even though this witness was alleged to be a CI him/her was still subjected to cross-examination because he/she gave evidence against applicant that he was the driver of the vehicle without said

4

testimony the forceful stop, arrest and inventory search also the confiscation of the gun was illegal. Therefore, applicant had a Sixth Amendment right to cross examine this witness.

Even the judge was concerned by the lack of any direct testimony by stating: That they never identified him before they pulled him over. Vol. 4 P. 108 L.12-17. Applicant had a right to test the credibility of the CI's description. Because this very information through out trail and specifically to deny appliant's motion to suppress. Vol.4 P.108-111. See <u>Crawford v. Washington</u>, 124 S.Ct. 1354,1364 (2004):

> "The test of the Confrontation Clause reflects this focus. It applies to 'witnesses' against the accused-in other words, those who 'bear testimony' 2 N. Webster, An American Dictionary of the English Language (1828). "Testimony.' in turn, is typically '[a] soleman declaration or affirmation made for the purpose of establishing or proving some fact. Ibid."

This witness's testimonial evidence was used to identify both the vehicle and applicant as the driver. Before the CI's information, Brazos Co. Sheriff's Dept. had no ideal applicant had an arrest warrant by the city of Bryan police Dept., his location nor what he was driving. Vol. 4 P.88 L.3-11. This detailed information provided by this alleged witness is of the paramount importance because only this witnesses' identification of the truck and applicant as the driver provided authority for the deputies to forcefully pull applicant over arresting him at gun point. This vital evidence can not be overstated. Without it there could have been no stop, no arrest and no search, no trial much less a conviction.

Because the State failed to produce this witness for cross-examination applicant was denied his Sixth Amendment right to subject this witnesses information to adversarial testing. <u>Meledez</u>, supra at 326. For this reason this writ should be granted and new trial ordered.

GROUND OF ERROR NO. 3: THE PROSECUTOR DENIED APPLICANT A FAIR TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONST. BY USING HYPOTHETICAL SITUATIONS WHICH INCLUDED THE SPECIFIC FACTS OF THE CASE TO COMMIT JURORS TO THE STATE'S THEORY OF CONVICTION BEFORE ANY EVIDENCE BEING PRESENTED BEFORE THE ACTUAL TRIAL BEGIN.

GROUND OF ERROR NO. 4: THE PROSECUTOR DENIED APPLICANT A FAIR TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONST. BY USING HYPOTHETICAL SITUATION WHICH INCLUDED THE SPECIFIC FACTS OF THE CASE TO STRIKE THE JURORS THAT WERE UNWILLING TO CONVICT APPLICANT BASED UPON THE EVIDENCE AND LEGAL THEORY THAT THE STATE WAS GOING TO PRESENT WHEN THE TRIAL BEGIN.

The prosecutor used the exact facts of the case that they were going to use to convict applicant to find jurors that would convict applicant and struck the ones that would not commit themselves.

The state's theory to convict is that the truck belonged to him and anything that was in his truck belonged to him. e.g. gun and jacket.

During voir dire the prosecutor set forth the exact facts and legal theory to all venirepersons: vol.3 P. 41-42 MR. CALVERT: Did--you drove your truck to the courthouse today---No. 37 Yes, sir, MR. CALVERT: It's parked out in the parking lot? No. 37: Yes, sir...You didn't bring you tools into the courtroom, did you?...No, sir--okay. And you said those tools, even thought they're in your vehicle, they're in your possession, right? Yes, sir, they are--why? do you think so?--Because they're under my care. I can manage those tools. The prosecutor then when row by row P. 42 L.22-24 Jury member Mr. Cobes agreed. The jury foreman agreed P. 57 L.6. All jurors that disagreed were struck. e.g. P.45 L.3 Mr. Bernal.

The prosecutor even selected jurors that were willing to convict applicant even if they did not prove he owned the gun (exact facts of the case). P. 65. Jurors that refused to convict based upon these facts were struck. e.g. Ms. Ford (P.65 L. 23) Ms. Welsh P. 66.

The prosecutor first set forth the facts and legal theory (the gun was in applicant's truck, even if someone else (Ms. Campbell) claims they own it, it is still in applicant's possession. Vol.3 P.65-68 L.5-8 Mr. CALVERT: Are you okay with what we were talking about, that somebody could not own something and not even physically be in possession; but they can still be in possession of it? you okay with that? This represents the exact facts and exact lack of evidence the state was fixing to present. For the verinemembers were asked how they felt about convicting someone based upon these facts. Any juror that refused to convict based upon this lack of evidence or legal theory were struck. This clearly violated Applicant's 6th and 14th Amendment right to a fair and impartial jury and trial. U.S. v. Webster, 162 F.3d 308,341 (5th Cir. 1998)(The Sixth Amendment right to a fair trial includes the right to an impartial jury Morgan v. Illinois, 504 U.S. 719, 727, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992)"). Because the jurors were already committed to convict applicant based upon this particular set of facts they were no longer impartial. Cadoree v. State, 810 S.W.2d 786,789 (Tex.App.-Houston [14th Dist] 1991):

> "The Court of Appeals in affirming the trial court stated: "the policy behind the above rule is that voir dire is designed to insure impartial jurors, but if jurors are forced to commit themselves prior to the trial as to how they would consider certain facts or testimony, then the case is being tried on voir dire and the jurors are no longer impartial."

For sure the prosecution's questions were designed to bring out the jurors views on the facts of the case that was fixing to be trial. Atkins v. State, 951 S.W.2d 787,789 (Tex.Cr.App.1997):

"...By asking the veniremembers if they could convict based on the hypothetical given, the State was **not explaining the law** but was seeking to commit the venire to a particular set of facts."). See also <u>Paustian v. State</u>, 992 S.W.2d 625,627-28 (Tex.App.El Paso 1999)("While it is proper to use hypothetical fact situation to explain the application of the law, it is **NOT** proper to inquire how a venirperson would respond to a particular circumstances presented in a hypothetical question...The State was **NOT** explaining the law, but was seeking to commit the venire to a particular set of facts. <u>Atkins</u>, spura., 789. Every veniremember who ultimately served on the jury was asked individually that same question by the State. This type of question using hypothetical or otherwise, is improper and serves **NO PURPOSE OTHER THAN** to commit the jury to a specific set of facts prior to presentation of any evidence at trial." **Id** at 789").

There should not remain any doubt that the prosecutor used the exact facts of the case. He asked all veniremebers row by row how they felt and the ones that did not agree to convict were struck. These questions were specifically designed to bring out the veniremembers views on the facts of the case that was going to tried. See <u>Paustian v. State</u>, supra. at 627:

"Although it is proper to question juror's views and sentiments on social and moral subjects generally, the courts do not permit a hypothetical cases to be submitted, nor do they allow questions designed to bring out the juror's views on the case to be tried."

The prosecutors questions did in fact bring out the juror's views not only on the case to be tried but also of the evidence the state was going to present and how the juror's viewed this evidence. The record verifies that the prosecutor used the voir dire to question, interrogate and investigation the jurors views of this specific case. Thereby handpicking a jury to convict appellant upon the evidence and lack of evidence the State was going to present. <u>Brandborg v. Lucas</u>, 891 F.Supp. 352,358 (E.D.Tex.1995):

"However, jury selection is 'not to afford individual analysis in depth to permit a party to choose a jury that fits into some mold that he believes appropriate for his case.' <u>Shclinsky v. United States</u>, 379 F.2d 735, 738 (1st Cir.)..."

Applicant will now set forth the facts in the record establishing how the prosecutor capitalized on his unconstitutionally committed jurors. The prosecutor from the start of trial "Opening Statement" started reminding jurors of their commitment by letting them know "its applicant truck." P. 23 L.6-7 Mr. Greer and Ms. Campbell were located together. they were in Mr. Greer's pickup. **HE OWNS IT.** The prosecutor had his very first state witness Terry Young testify it was applicant's truck P.34 L.24-25 "...you said earlier, there was nobody else in the Defendant's truck, right? P. 35 L.1 A. That's correct, sir. The prosecutor continued to argue to

7

the jurors it was applicant's truck even though he knew it was not. Because trial counsel had this very witness admit it was not applicant's truck. Vol. 4 P.72 L.24-25 P.73 L.1-5. "Q. Now, the vehicle that Mr. Greer was driving, that is actually registered to a Kenneth Greer, is that right? A. Yes, sir. Q. And so, that would be--that would be David's dad, and not actually David, it that correct? A. Yes, sir.

At this point the prosecutor knew it **was not applicant's truck**, to obtain a conviction he had to convince the jury it was applicant's truck because they had already committed themselves to do so. The prosecutor reminded jurors of their commitment during voir dire that they would convict applicant if the gun was in his truck but was not physically in his possession. Vol.4 P.177 L.20-21. The prosecutor pounded this point into the jurors minds until it was literally the last words they heard. "Its his trick, Its his truck." Its his truck before they begin to deliberate. Closing arguments P. 178 L.24-25 "...It's his vehicle. There is no question. NONE. We are beyond a shadow of a doubt. The vehicle was his. P. 179 "...It's registered to his parents, but it's his truck. That's his truck (remember the jury committed to convict if the gun is in his truck)... Because it was in his vehicle that he was driving..the gun was in his truck. P. 180 L. 25 Its his truck. P.182 Driving his truck, within one minute of the jurors being excused to begin deliberation.

Because of these actions of the prosecutor, applicant was denied his 6th and 14th Constitutional Amendments right to a fair and impartial trial and jurors. For these reasons this writ should be granted and a new trail ordered.

|ROUND OF ERROR NO. 5: THE PROSECUTOR DENIED APPLICANT A FAIR TRIAL BY PAINTING A FALSE PICTURE, USING FALSE TESTIMONY AND EVIDENCE TO OBTAIN A CONVICTION WHICH DENIED APPLICANT A FAIR AND IMPARTIAL TRIAL IN VIOLATION OF APPLICANT'S 6TH AND 14TH AMENDMENT RIGHTS OF THE U.S. CONSTITUTION.

STANDARD OF REVIEW: PYLES V. JOHNSON, 136 F.3D 986,996 (5TH CIR. 1998) TO OBTAIN A REVERSAL BASED UPON PROSECUTOR'S USE OF PERJURED TESTIMONY OR FAILURE TO CORRECT SUCH TESTIMONY A HABEAS PETITIONER MUST DEMONSTRATE THAT 1) THE TESTIMONY WAS ACTUALLY FALSE, 2) THAT STATE KNEW IT WAS FALSE AND 3) THE TESTIMONY WAS MATERIAL.

In this case the State had the burden to prove three essential elements beyond a reasonable doubt. 1) that applicant was a convicted felon within the last five years or still on parole; 2) that he was in possession of a gun; 3) the gun was a firearm. The first element was self proven because applicant signed a stipulation that he was a convicted felon still on parole at the time of the offense. Vol. 6

8

P. 17 Ex. 14. Accordingly the state only had to prove the two remaining elements to be entitled to a guilty verdict. The record verifies the prosecutor used false testimony and false evidence to prove them. Then maximized the effect of the false evidence had on the verdict by informing the jury they were not required to base their verdict on proof beyond a reason doubt. Vol.4 P.165 L.12-15.

As previously shown the prosecutor had hand picked his jury to fit his mold. A jury that had committed themselves to convict applicant if the gun was found in applicant's truck. Vol.3 P.41-44. Additionally committed themselves to convict applicant of possession of the gun in his truck if someone else testified it was their gun. P.65-70.

Now to establish the prosecutor knew each time he stated or a witness testified the truck or vehicle belonged to applicant was false. The State's first witness Deputy Terry Young testified on cross-examination (Vol.4 P.72-73 L.24-25,1-5) that applicant's father was the registered owner and not applicant. Because this witness knew before trial it was not applicant's truck the prosecutor is legally accountable for this same knowledge. See Carriger v. Stewart, 132 F.3d 463, 480 (9th Cir.1977).

Therefore the prosecutor knowingly and intentionally had officer Young commit aggravated perjury by carefully manipulating his testimony, by having him testify that the registered owner was Greer and it was applicant's truck. Vol.4 P.31. L.1-2 P.32 L.10-14,P.33 L.7-8 Q. Weapons drawn pointed at the Defendant's truck? A. Some did, yes sir. P. 34 L.24-25 you said earlier, there was nobody else in Defendant's truck, right? P.35 L.1 That's correct sir. P. 56 L.13-16.

On cross-examination the false statements of the prosecutor and perjured testimony was fully exposed by proving the truck was owned and registered to applicant's father **"NOT"** applicant. P.72-73 L.24-25,1-5. Not to be impeded by the truth, the prosecutor once again had Young confirm the truck was applicant's. Vol.4 P.154 L.21-25 P.155 L.1. The prosecutor also had officer Ware confirm under oaths that the truck was applicant's. Vol.4 P.158 L.1-3. The prosecutor begin to embed and multiple the impact this false evidence would have on the verdict by compiling credibility for this lie, by falsely stating applicant's only witness testified that it was applicant's truck. Vol.4 P.179 L.1-2. "Monishia told you that. It's registered to his parents, but that's his truck. That's his truck." The record is "VOID"! This testimony does not exist. A classic example of telling one lie to cover up for another lie. The prosecutor then maximized the vital and key role this false testimony and evidence would have on the jurors' deliberation to secure a guilty verdict. By simultaneously reminding the jurors of their commitment during voir dire

9

and how this false evidence has decided this for them that applicant is guilty. Vol.4 P.179 L.10-15 "...the lone issue in front of you is _not possession_. There can be no dispute. Again, we are there beyond a shadow of a doubt that this man was exercising care, custody, control or management over that pistol. We _know that._ Why? _Because it was in his vehicle_..." The prosecutor continued to hammer and embed this false evidence into the hearts, minds. and souls of each juror to exacerbate the influence it would ultimately have on their verdict. The prosecutor pounded it until the very last minute. P.180 L.25. P.181 L.1 "It's his truck. P.182 L.22 "...driving his truck..." The fact that it was applicant's truck was still ringing in the jurors ears when they were released.

Additionally the record verifies the prosecutor painted a false picture of the evidence that he used to prove the second element of the offense, which is the gun was a firearm. The prosecutor stated to the jury this elements is self proven. Therefore, you need not concern yourself with this element. By stating the defendant signed a stipulation that it was a firearm. Vol.4 P. 164 L.5-7: "Because you _know_ that was a firearm because that was stipulated to..."

Once again the record verifies this evidence does not exist. The prosecutor painted a false picture of the evidence to prove his entire case. e.g. possession of a firearm. See _Pearson v. State_, 649 S.W.2d 786,789 (Tex.App.Forth Worth 1983)("Certainly, we know reversal _must_ follow where the prosecutor deliberately presents a false picture of the facts by knowingly using perjured testimony. Citing _Means v. State_, 429 S.W.2d 490 (Tex.Cr.App.1986).").

The jury had sworn to follow the law and was left but one choice to vote GUILTY, GUILTY, GUILTY---12 times unanimously! There can remain no doubt that using false evidence to prove the only two remaining elements rendered applicant's trial fundamentally unfair. Also that there exist a reasonable probability that this wealth of false evidence effected the judgment of the jury.

Prosecutor next painted a false picture of the evidence for two reasons: The first reason: To cover up the fact that there was three jackets in the truck, a red flowery satin jacket, 2) a camouflage jacket 3) a black leather jacket. . The second reason: To inject his own opinion that applicant's only witness was a liar. Vol. 4 P. 180 L.13-14 Why? And we know beyond any shadow of a doubt Monishia lied and lied and lied. _Daggan v. State_, 778 S.W.2d 465,469 (Tex.Cr.App.1989)("Nor does it matter that the falsehood goes merely to an issue of credibility. See _Napue_, surpa ("A lie is a lie no mater what its subject...").

There was three jackets in the truck applicant's camouflage jacket with hood on

10

it Vol.4 P.128 L.12-13. The red flowery satin jacket Ms. Campbell was wearing. P. 128 L.8-9. Also the black leather jacket the gun was allegedly in. Prosecutor needed to prove there was only two jackets in efforts to hedge the evidence to secure a conviction. Therefore, prosecutor repeatedly had his witnesses falsely testify that the jacket Ms. Campbell was wearing was camouflage. R. Ledesna. P.83 L.1 P.144. L.19.

During closing arguments the prosecutor used this false evidence to persuade the jury that applicant's only witness was a liar. P.166 L.17-19 "...she said she was wearing a different jacket that day. She wasn't, she in fact was wearing a camouflage jacket." To establish that the aforementioned testimony is false simply view the video which establishes the state knew the witnesses' testimony and the prosecutors arguments were false.

Any reasonable likelihood of the effect of this overwhelming false evidence may not have had an injurious effect on the judgment of the jury was placed beyond reproach by the prosecutor committing the structural error of falsely telling the jury their verdict did not have to be based on proof beyond a reasonable doubt. Vol.4 P.165 L.12-15. The chance of a fair trial disappeared like one drop of water on a red hot skillet "poof."

What really makes the prosecutor's action so intolerable is the fact he had the evidence (that the truck did not belong to applicant) which destroyed his theory of conviction and he had a duty to not mislead the jury but chose to repeatedly paint a false picture to secure a conviction. Brow v. Borg, 951 F.2d 1011,1015 (9th Cir.1991); see also U.S. v. Blekey, 14 F.3d 1557,1560 (11th Cir.1994)("[A] prosecutor must refrain from improper methods calculated to produce a wrongful conviction."). Actually there is more than the required reasonable doubt that the false evidence effected the jury verdict to require reversal. Westly v. Johnson, 83 F.3d 714,726 (5th Cir. 1996).

The prosecutor use of false testimony to prove all the remaining elements then falsely telling the jury that the proof did not have to be beyond a reasonable doubt denied applicant his right to a fair and impartial trial in violation of the 6th and 14th Amendments of the U.S. Const. Therefore, this writ should be granted and a new trial ordered.

GROUND OF ERROR NO. 6: THE PROSECUTOR DENIED APPLICANT A FAIR TRAIL IN VIOLATION OF THE 6TH AND 14TH AMENDMENTS OF THE U.S. CONST. BY MAKING MISSTATEMENTS OF THE LAW.

STANDARD OF REVIEW: ROSE V. JOHNSON, 141 F.SUPP.2d 661,707 (S.D.TEX.2001): "IN DETERMINING WHETHER THE PROSECUTOR'S REMARKS PREJUDICED

DEFENDANT'S SUBSTANTIVE RIGHTS, THE COURT ASSESS (1) THE MAGNITUDE OF THE STATEMENTS (2) THE EFFECT OF ANY CAUTIONARY INSTRUCTIONS GIVEN, AND (3) THE STRENGTH OF THE EVIDENCE OF THE DEFENDANT'S GUILT."

The prosecutor misstated the law during voir dire regarding applicant's 5th Amendment right to remain silent and not testify. Vol.3 P. 85 L.7-9. MR CALVERT: You might incriminate somebody else right? Can anyone think of another one? Then the prosecutor misstated the law which involves applicant's most substantial structural right which is so precious that it violates the very foundation of American citizens right to trial by jury is based upon. That the state must prove their guilt "beyond a reasonable doubt". Vol.4 P.165 L.12-15. '...you are the finders of fact. You can find these facts and add them up. **It does not have to be beyond a reasonable doubt...**" Bear in mind at this point in the trial the jury charge had already been read. Also that the judge gave this is seal of approval by not correcting it.

Applicant will concede at this point his counsel did not object to either of these misstatements of law. But because these remarks of the prosecutor are manifestly improper and violates mandatory statutes that the prosecutor will not misstate the law to the jury or engage in improper conduct to obtain a wrongful conviction, as such this error was not waived. Wills v. State, 785 S.W.2d 378, 385 (Tex.Cr.App.1989):

> "That is, jury argument error will not be waived for failure to object where the argument is manifestly improper, or violates some mandatory statute, or injects some new fact harmful to the defendant's case. Mathews v. State, 635 S.W.2d 532,539 (Tex.Cr.App.1982); Walthall v.State, 594 S.W.2d 74 (Tex.Cr.App.1980). In making the determination of whether a statement is manifestly improper, harmful prejudicial, courts are to look at the record as a whole."

By the prosecutor seeking the jury to base their verdict on less evidence and proof than beyond a reasonable doubt is an illegal method to secure a wrongful conviction. See U.S. v. Blakey, supra. at 1560; United States v. Rodriquez, 765 F.2d 156,159 (11th Cir.1985). It's manifestly improper to falsely state the law regarding applicant's U.S. 5th Amendment. This violation in conjunction with the request that the jury can base its verdict on less than reasonable doubt are manifestly improper. These remarks and the closing arguments were not only objectionable but were clearly improper. For these comments to be considered harmless the evidence against applicant must be overwhelming. U.S. v. Blakey, supra. at 1560-61. As thoroughly explained in ground of error No. 9 . The evidence is a far cry from being overwhelming. This error of the prosecutor should be considered a structural error due to the fact it effects the framework within which a trial must proceed

12

rather than simply an error in the trial process itself. <u>Pyles v. Johnson</u>, supra. at 993 ("Structural error is error 'effecting the framework within which a trial proceeds itself.' <u>Fulminante</u>, 499 U.S. at 310, 111 S.Ct. at 1265. By it's very nature, structural error 'def[ies] analysis by 'harmless error' standards. Id at 309, 111 S.Ct.at 1265.'"). Furthermore this error (violation of Texas Penal Code 2.01) was reasonably calculated to injury applicant by denying him his due process rights to a fair trial in violation of the 14th Amend. of the U.S. Constitution. <u>Moore v. State</u>, 848 S.W.2d 920,922 (Tex.App.-Houston [1st Dist.] 1993). Additionally bear in mind <u>no cautionary instructions were given.</u> Because the error instructed the jurors they could based their verdict on less proof than the law requires, there is a reasonable probability that the results of the proceedings would have been different absent this error. Therefore, this writ should be granted and a new trial ordered.

> GROUND OR ERROR NO. 7: THE PROSECUTOR ILLEGALLY COMMENTED ON APPLICANT'S RIGHT TO REMAIN SILENT WHICH DENIED APPLICANT HIS UNITED STATES CONSTITUTIONAL 14TH AMENDMENT RIGHT TO A FAIR TRIAL.

> GROUND OF ERROR NO. 8: THE PROSECUTOR'S MISSTATEMENT OF THE LAW REGARDING APPLICANT'S RIGHT TO REMAIN SILENT WAS ILLEGALLY USED TO POISON VENIREPERSONS TO DENY APPLICANT 6TH AND 14TH AMENDMENT RIGHT TO A FAIR TRIAL.

This is the very unique case in which Applicant's Fifth Amendment right to remain silent (not testify) is placed in a real peril. Because the venirepersons (jury) will be informed before trial begins that applicant is a convicted felon. Therefore, applicant is in grave danger of being tried and convicted for being a criminal in general. Vol.3 P.90 L.5-13: "VENIREPERSON NO. 43: I think where I struggle with it is that each--each on its own, I probably could; but when you put the two together, you know, having the past felony and then choosing to not speak for himself, each one erodes the credibility. So, I think it becomes easier in my mind to prove the--without reasonable doubt, that there was a law broken because each one promotes a little bit more on top. so, it becomes a little more difficult." P.91 L.3-9. VENIREPERSON NO. 39: I just couldn't say. I would try very hard not to hold that against him; but, **especially, you know, having a past felon**; and if he's---it would be very--psychologically, I don't think I can. It would--I'm afraid I might tend to hold it against him. And if his lawyer is telling him that, get a new lawyer."

As such any comment by the prosecutor that applicant may have other felony conviction(s) or have something to hide would be highly prejudicial thereby denying applicant a fair trial. When judging the actions of the prosecutor bear in mind by

13

his own admission he is both a seasoned attorney and prosecutor. P.91 L.12-13 "...Ms. Nelson, because I'm somebody who's been--I've done **both jobs.** I've been a criminal defense attorney, too."

Therefore, the prosecutor was well trained in the effects his direct comments and alluding to others would have on this jury panel. Because of his training his actions were strategically designed to achieve the desired results.

Ironically just seconds before the State begins speaking on the Fifth Amendment a venireperson starts speaking about his roommate having a firearm in his possession and he knowns he is not suppose to have a firearm it's his fault for not telling. Because appellant did not tell his is guilty of possession of the firearm. P.81 L.18-21. VERIREPERSON NO. 48: "...if I know my roommate has a gun in the house and I'm **not suppose to have a firearm in my possession, the that's on me.** I know that he has it in the house."

The prosecutor knew before trial that applicant's main defense was going to be his girlfriend was going to testy the gun that was in the truck was hers. Vol.4 P. 26 L.5-6. The prosecutor quickly seized upon this belief that if you don't tell on someone then your guilty. P. 81 L.22-23. MR. CALVERT: **Sure. Sure.** At this point, through -- and that's Fair." The prosecutor then pounced upon this opportunity to strategically implant into the minds of all venireperson's that the 5th Amendment includes the right to not tell on someone else. P.82 L.8-13. "MR. CALVERT: I understand. Okay. Can anybody tell me what that is? The Fifth Amendment to the United States Constitution? The Fifth Amendment is protection against self--" VENIREPERSONS: Incrimination. This fact and misinterpretation of the law was solidified and cemented into all venierpersons by the prosecutor. P. 85 L.7-8. MR. CALVERT: You might incrimination somebody else, right? Can anybody think of another one? This soliciting lead to a verireperson to come up with the ideal that the reason applicant would not testify is he had something to hide. P.84 L.17-18. VENIREPERSON NO. 5: And as a juror, I would look at, okay, what is that person afraid to say on the stand? What are **they hiding?**

The prosecutor quickly gave this ideal his seal of approval. P.84 L.20-21. "MR. CALVERT: **Sure. And absolutely. That's** a fair way to feel. This ideal that applicant had something to **hide** and the prosecutor would bring it out on cross-examination, was hopelessly embeded into **all venireperson's minds** by seizing the moment to implant into their minds a real world example of some things that applicant may wish to hide. (Bear in mind at this point the prosecutor had secretly recorded his interview with Ms. Campbell Vol.4 P.126 L.2-5 as such he knew that

14

Ms. Campbell was going to testify that her and applicant were having a heated argument). The following event took place Vol.3 P. 86 L.18-15 P. 87 L.1. MR. CALVERT: Let me--that's absolutely let me kind of give you a **real world example.** We tried a case in here, I guess just a week or two ago where a guy was charged with the offense of assault, okay, on a girlfriend. And he assaulted--or had been accused of assaulting not one, but two other girlfriends previously, right? And there was a **real danger that if you testify** and say something, it might open the door to us getting into these other girls right. The prosecutor knew that the evidence was going to reveal this heated argument. The prosecutor capitalized and carefully implanted this seed into the jurors' mind that applicant may have also hit his girlfriend and this is the reason he may not testify. He was scared this may come out on cross-examination.

At this point in the jury selection the entire jury pool was hopelessly poisoned beyond rehabilitation, no amount of objections or curing instruction(s) could have insured applicant would receive a fair trial. No court has better made this clearer than in the opinion in <u>Orea v. Fruehauf Corporation,</u> 554 F.2d 1304, 1310 (5th Cir. 1977): ("Furthermore, the cleansing effect of the cautionary instructions in the case is dubious for, as the trial judge himself observed during trial, '[Y]ou can throw a skunk into the jury box and instruct the jurors to not smell it but it doesn't do any good."). See also <u>Hicks v. State,</u> 815 S.W.2d 3299, 303 (Tex.App.-Houston [1st Dist.] 1991).

The prosecutor's comments and lack of any curing instructions which by the way would have been totally worthless which combined to deny applicant a fair trial. As such these errors of the prosecutor's denied applicant his 6th and 14th Amendments right to a fair trial. Therefore, this writ should granted a new trial ordered.

GROUND OF ERROR NO. 9: PROSECUTOR MISCONDUCT MAKING IMPROPER JURY ARGUMENTS DENIED APPLICANT A FAIR TRIAL IN VIOLATION OF THE 6TH AND 14TH AMENDMENT OF THE U.S. CONST.

STANDARD OF REVIEW: <u>U.S. V. INSAULGARAT,</u> 378 F.3D 456,461 (5TH CIR. 2004): "IF AN IMPROPER REMARK WAS MADE, WE MUST DETERMINE WHETHER THE REMARK "PREJUDICED THE DEFENDANT'S SUBSTANTIAL RIGHT." <u>MUNOZ [UNITED STATES V. MUNOZ,</u> 150 F.3D 401 (5TH CIR.1998)] 150 F.3D AT 415. THE PREJUDICE DETERMINATION INVOLVES "(1) THE MAGNITUDE OF THE STATEMENTS PREJUDICE, (2) THE EFFECT OF ANY CAUTIONARY INSTRUCTIONS GIVEN, AND (3) THE STRENGTH OF THE EVIDENCE OF THE DEFENDANT'S GUILT." <u>UNITED STATES V. TOMBLIN,</u> 46 F.2D 1369, 1389 (5TH CIR. 1995). "THE DETERMINATIVE QUESTION IS WHETHER THE PROSECUTOR'S REMARKS CAST SERIOUS DOUBT ON THE CORRECTNESS OF THE JURY VERDICT." <u>UNITED STATES V. IREDIA,</u> 866 F.2D 114,117 (5TH CIR. 1989)."

Permissible areas of jury arguments have been well established. See <u>Mayberry</u>

v. State, 830 S.W.2d 176,178 (Tex.App.-Dallas 1992)("Proper subjects of jury argument include (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answer to arguments of opposing counsel, and (4) pleas for law enforcement. Alejando v. State, 493 S.W.2d 230,231-32 (Tex.Cr.App.1973)."

The first jury argument Vol.4 P. 164 L.4-7: "So, what does this all boils down to a whole day spent on possession knowingly or intentionally possessing a firearm. Because you know that was a firearm because it was stipulated to..." The next involves the burden of proof the State must sustain to prove its case. P. 165 L.12-15 "You are the finders of fact. You can find these facts and add them up. It does not have to be beyond a reasonable doubt..." Additionally the prosecutor instructed the jury that the vehicle (truck) was applicant's Vol.4 P. 178 L.24-25, 179 L.2,14-15,20-21; 180 L.25; 181 L.1; 181 L.1; 182 L.22. The prosecutor went so far as to lie to the jury as to what applicant's witness testified to by stating she witness confirmed twice that it was applicant's truck. P.179 L.1-2.

The State Additionally instructed the jury on the issue of possession in that it has already been decided solely based upon the fact the vehicle was applicant's. P. 179 L.10-15. "...the lone issue in front of you is not possession. There can be no dispute. Again, we are beyond a shadow of a doubt that this man was exercising care, custody control or management over the pistol. We know that. Why? Because it was in his vehicle that he was driving." None of the prosecutor's arguments fits within the four permissible areas. The first argument is totally false, there exist no stipulation that applicant consented that the gun was a firearm. This first argument was designed and used to lower the State's burden of proof. "That the appellant did possess a firearm. The second argument was clearly prejudicial as it was designed to unconstitutionally lower the State's burden of proof "beyond a reasonable doubt." This statement denied applicant his substantial right to fair trial by having a jury base their verdict on LESS PROOF (e.g. preponderance of the evidence) than the law requires "beyond a reasonable doubt". U.S. v. Wise, Supra at 152. Also it violated state law; Texas Penal Code §2.01. There is no escaping the fact that these two arguments were both designed and did in fact lower the State's burden of proof thereby effecting the jury verdict.

The last two arguments will be grouped together. These two arguments are false. The State's very first witness testified on cross-examination that the vehicle (truck) was owned by applicant's father and not applicant. Vol.4 P.72 L.24-25 P.73 L.1-5. As stated by the prosecutor because the gun was found in applicant's truck it was in his possession. As such these two arguments used false

16

evidence to prove yet one more essential element. The only remaining element was stipulated to. Therefore, the only two remaining elements the prosecutor's arguments proved them to the jury based upon false evidence. The harm was sealed by informing the jury the state did not have to prove their case beyond a reasonable doubt.

The state's arguments injected new non-existing evidence into the case and instructed the jury this false evidence and testimony proved their case. As such these comments cast doubt on the verdict. Each argument was improper, the evidence is unambiguously clear that the cumulative effect of these errors were designed and did effect the verdict which denied denying applicant a fair trial in violation of the 6th and 14th Amendments of the U.S. CONST.

The State's case was **extremely weak.** Even the trial judge agreed that applicant was never identified (by any officer) before he was simultaneously forcefully stopped and arrested at gun point. Vol.4 P.108 L.12-17. The gun and jacket were illegally not listed on the required inventory sheet. There was no eyewitness. The gun was not in applicant physical possession. The truck it was discovered in did not even belong to applicant. The passenger in the truck testified at court the gun belonged to her. Then explained why she had it e.g. for protection as she was recently the victim of kidnapping and rape. Therefore, the prosecutor's remarks were prejudicial. U.S. v. Insaulgarant, Supra. at 461. As such this writ should be granted and a new trial ordered.

GROUND OF ERROR NO. 10: PROSECUTORIAL MISCONDUCT DENIED APPLICANT HIS 6TH AND 14TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL.

Applicant is entitled to effective assistance of counsel on direct appeal by the 6th and 14th Amendments of the U.S. CONST. Lofton v. Whitely, 905 F.2d 885,887 (5th Cir. 1990); Evitts v. Lucey, 105 S.Ct. 830 (1985). The number one requirement of presenting any issue on appeal is to be able to point to the record that supports to the error. Also it's appellant's/applicant's responsibility to provide sufficient record on appeal. Ex Parte Chandler, 182 S.W.2d 350,353 (Tex.Cr.App.2005)("It is the applicant's obligation to provide a sufficient record that support his factual allegations with proof by a preponderance of the evidence.). See also Tamez v. Director, TDCJ-CID, 550 F.Supp.2d 639,642 (E.D.Tex.2005):

"The Fifth Circuit has held that "[a]bsent evidence **in the record,** a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value."

Furthermore, see Duggan v. State, 778 S.W.2d 465, 468 (Tex.Cr.App.1989)"

17

"It shall be the primary duty of all prosecutors...not to convict, but to see that justice is done." Art. 2.01 V.A.C.C.P. This overriding duty falls upon the prosecutor in his capacity as the State's representative in criminal matters. As a trustee of the State's interest in providing fair trials, the prosecutor's is ...more than a mere advocate, but a fiduciary to fundamental principles of fairness. See <u>Berger v. United Sates,</u> 295 U.S. 78,88 55 S.Ct. 629, 633, 79 L.Ed. 1314,1321 (1935)."

Additionally the Texas appeals courts have consistently ruled on the problem they face in trying to rule on claims of ineffective assistance of counsel on direct appeal is the underdeveloped record. <u>Goodspeed v. State,</u> 187 S.W.2d 390,392 (Tex.Cr.App.2005). Even when the appeals courts have reversed cases on direct appeals only to have their decision overturned by the court of criminal appeals due to the record being undeveloped. <u>Bone v. State,</u> 77 S.W.3d 828 (Tex.Cr.App. 2002); <u>Rylander v. State,</u> 101 S.W.3d 107,110-111 (Tex.Cr.App.2003)(In this case, like the majority of cases, "the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions.").

For these reasons and courts decisions verifying that a undeveloped record is insufficient to obtain a reversal on appeal. Therefore, the lack of the record of the conversations of the judge, prosecutor, trial counsel and jurors has insured the denial of an adequate record on direct appeal and now post-conviction proceedings. By not having an adequate record to support these issues. <u>Tamez v. Director of TDCJ-CID,</u> Supra. at 642.

There are several critical times during the proceedings that events were not recorded. The first being, Vol 3 P.5 L.3 (venire panel seated). The trial judge called ATTENTION: MR. ROBERT CASSENA Veniremember No.6. As a fellow student and class member of Texas A&M University. Additionally a famous sports writer for the local mews paper. The Bryan Eagle. The judge made a special speech regarding Mr. Cessena's renowned accomplishments, then asked the "entire courtroom" for a round of applause for his close and dear friend that he obviously thought the world of. Which the courtroom gave him. This unrecorded event clearly demonstrated the highly likelihood this friendship could effect the impartiality of this veniremember that was seated as juror No. 2 Vol.3 P.162 L.8. This juror was "never" questioned by counsel or the prosecutor. This is a key inquiry during voir dire. <u>Cadoree v. State,</u> 810 S.W.2d 768,789 (Tex.Cr.App.-Houston [14th Dist.] 1991).

Additionally a critical off-the-record discussion. Vol.3 P.173 L.20. Applicant overheard portions of it: Counsel openly revealed his representation of applicant represents a severe conflict of interest. Counsel revealed he works with the Brazos Co. Sheriff's Dept., as a ride along which entails all of the State's witnesses as

or potential Co-workers. This obvious critical evidentiary support is missing from the record. This critical evidence would have unambiguously verified counsel's representation was forcing counsel to serve two masters simultaneously. The best interest of his co-workers who's hands he must entrust his very life in. The best interest of applicant (who interest ends upon the completion of trial). In which case to prevail he would be forced to creditably expose his co-workers actions were corrupt, wrong or illegal. These missing records would have alerted appellant counsel to file as a ground of error ineffective assistance for not questioning this juror about his relationship with the judge. Montez v. State, 824 S.W.2d 308, 310 (Tex.App.-San Antonio 1992, no prt).. Also file a motion for new trial with supporting affidavit to fully develop the record of this conflict of interest. Which would have been granted. Lucero v. State, 246 S.W.3d 86,94 (Tex.Cr.App.2008). The denial also has prejudiced applicant in his post-conviction proceedings. Because he is force to make bald assertions for ineffective assistance of counsel on these two issues and the Supreme Court has stated that is inadequate. Cuyler v. Sullivan, supra. at 1709.

Additional off-the-record discussions took place Vol.3 P.142 L.24 P.165 L.25. This missing word for word conversation involved the judge, prosecutor and trial counsel. Applicant did not over hear any portion of these conversations yet this missing records are potentially vital.

Additionally there is the matter of the missing jury note (Vol.4 P.183 L.15-16) which must be in the record also whether counsel was present and what efforts were made to secure applicant's presence. It is mandatory that this must be in the record. 36.27 supra. see also U.S. v. Muraj, 947 F.2d 520,525-26 (1st Cir.1991).

Now for the most disturbing event that is totally missing from the record. Once the jury begin deliberating they sent out a note requesting to see the video. Vol.4 P.183 L.15. Applicant has included Ex.A. which is an affidavit which basically states the judge and the Prosecutor remained in the courtroom all spectators were cleared the judge then summoned all jurors into the cleared courtroom the prosecutor re-set up his personal lap top with his power point presentation and they all engaged in a ex parte viewing of the critical inculpatory video with the prosecutor being their personal operator. Applicant nor applicant's counsel was present. We know this much that once this private viewing with the Judge and prosecutor was concluded the jury quickly returned a verdict of guilty. Exactly what all the judge and the prosecutor said to the jury for sure some words were spoken between them during this exclusive meeting, all of which are considered illegal ex parte

19

communications. This is an extreme violation of applicant's 6th and 14th Amendment right to a fair trial. See U.S. v. Smith, supra. at 471:

> "It's well-settled that once the jury has begun to deliberate, counsel **MUST** be given an opportunity to be heard before the trial judge responds to any jury inquiry Rogers v. United States, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); United States v. Widgery, 778 F.2d 325 (7th Cir.1983). This rule is grounded in Fed.R.Crim. Proc.43(2)'s [this same requirements is codified in Texas State Court's Tex.C.Crim.Proc. 36.27; Revell v. State, supra. at 211 and is mandatory noncompliance is reversal error] requirement that a **criminal defendant be present 'at ever stage of the trial'**, the Sixth Amendment's Confrontation Clause, and the Due Process Clause of the Fourteenth Amendment. Thus, unless waived discussion concerning the jury inquiry and court response **must take place on the record** in the presence of the defendant. Id. [U.S. v. Widgery, supra.] at 327."

Applicant has established both harm and prejudice due to these instances of prosecutor misconduct therefore, either these missing portions of the record be supplemented and applicant be granted an out-of-time appeal or a new trial be ordered.

GROUND OF ERROR NO. 11: THE TOTALITY OF THE ACTS OF PROSECUTORIAL MISCONDUCT DENIED APPLICANT HIS 6TH AND 14TH U.S.CONST AMENDMENTS RIGHTS TO A FAIR TRIAL.

STANDARD OF REVIEW: WESTLEY V. JOHNSON, SUPRA AT 726:

> "[t]HE EN BANC COURT RECOGNIZED AN INDEPENDENT CLAIM BASED ON CUMULATIVE ERROR ONLY WHERE "(1) THE INDIVIDUAL ERRORS INVOLVED MATTERS OF CONSTITUTION DIMENSIONS RATHER THAN MERE VIOLATIONS OF STATE LAW; (2) THE ERRORS WERE NOT PROCEDURALLY DEFAULTED FOR HABEAS PURPOSES; AND (3) THE ERRORS 'SO INFECTED THE ENTIRE TRIAL THAT THE RESULTING CONVICTION VIOLATES DUE PROCESS. ID., [DERDEN V. MCNEAL, 978 F.2D 1453 (5TH CIR._____)] QUOTING CUPP V. NAUGHTENM, 414 U.S. 141,147, 94 S.CT. 396, 400, 38 L.ED.2D 368 (1973). MERITLESS CLAIMS OR CLAIMS THAT ARE NOT PREJUDICIAL CANNOT BE CUMMULATED, REGARDLESS OF THE TOTAL NUMBER RAISED. DERDEN, 978 F.2D AT 461."

1). Before the trial started the prosecutor with held brady material, and inclusion of the same in the record. e.g. dispatch log, and audio recording of his interview with Ms. Campbell. This evidence could have been used to not only to impeach the creditability of the State's witness, but also to prove the initial stop was illegal and resulting confiscation of the gun was illegal "no gun no case". Also this secret recording could have been used to further establish by record references that the prosecutor used the facts of the case to handpick a jury and commit them to convicting applicant based upon his mold.

2). The above error was compounded by the prosecutor not producing Officer Ficke and the CI for cross-examination. Meledez, Supra, at 328. This is true because Officer Ficke prepared the vehicle Inventory Report, therefore, applicant had a right to cross-examine him. Id. at 326-328. No testifying witness personally

20

identified applicant before he was stopped and arrested at gun point. Only the CI identification was introduced at trial and then only by hearsay. Therefore, applicant had a right to cross-examine the CI. Id. at 328.

3). Additionally the acts of misconduct by the prosecutor were exacerbated by the effects these cumulative errors by misstating the law dealing with applicant's 5th amendment right to remain silent. "He might incriminate someone else." Also by implanting into they jurors mind to consider evidence that does not exist e.g. that applicant may not testing because he beat up his girlfriend and he is scared this might come out on cross-examination if he testifies. Vol. 3 P.86 L.18, P..87 L.1.

4). The prosecutor unconstitutionally used void dire to hand pick a jury to convict applicant based upon: If the illegal item was found in his truck and is not in his physical possession and it did not even belong to him (someone else claimed ownership) it was still in his possession. Vol.3 P.40 L.18. These are the exact facts of the case. Also bear in mind that the prosecutor had already investigated and secretly recorded his investigative interview with the only defense witness. Vol.4 P.126 L. 2-5. Therefore, he knew she was going to claim ownership of the gun. Also that she was going to state that her and defendant had a heated argument. The facts of his real world example. Vol. 3 P.86 L.18. All jury members were committed to convict applicant based upon the state's theory and mold of conviction. The ones that were not were struck. Vol.3 P.46 L.3.

These acts prejudiced applicant as it denied him a fair and impartial jury. Adkins v. State, Supra. at 789. He reminded the jurors of their commitment during closing arguments that they would convict applicant even if the gun was not in his possession. Vol.4 P.177 L.20.

5). The prosecutor not only failed to correct false testimony and evidence but compounded its unconstitutional effects by actually using it to prove his case. Then consistently reminding the jurors of the false evidence. Then exacerbated its effect on the verdict by flat out lying to the jurors by telling them applicant's only witness testified; "that's his truck. That's his truck." Vol.4 P.179 L.1-2. This was to convenience the jurors if she said its his truck then it must be his truck. Then immediately explained to the jury that the gun was in his truck so possession has been decided for you. P. 179 L.10-15. The false evidence was literally hammered into the jurors minds until they were released for deliberation. The prosecutor knew if he corrected this false evidence it would destroy his legal theory and his committed jurors to so convict. Brow v. Borg, supra at 1015, Adkins v. State, Supra. at 789. The record verifies that he used false evidence to secure a wrongful

21

conviction. <u>Blakey</u>, surpa. at 1560. This error has a cumulative effect with the other instances of misconduct.

6). Next is the flagrant disregards for anything resembling ethical conduct. The prosecutor lied to the jury: "[y]ou know that was a firearm because **that was stipulated to...**" No such stipulation exist. In this case the prosecutor had to prove three elements: 1).Applicant was a convicted felony; 2) He possessed a gun, and 3). the gun was a firearm. The first element was actually self proven by an actually signed stipulation. The last two were proven based upon false and nonexisting evidence.

7). This instant of misconduct spotlights the malicious intent of the prosecutor by abandoned his role as an officer of the court and taking on the role of a criminal by violating the Texas Penal Code 2.01. Leaving nothing to chance he told the jury your verdict does not have to be based on proof beyond a reasonable doubt. Vol.4 P. 165 L.12-15. The cumulative effect of this errors insured that any chance that applicant had at a fair trial by an impartial jury disappeared like smoke in wind storm.

8). Now the matters of misconduct that has effected applicant's right to effective assistance of counsel on direct appeal and now in his post-conviction proceedings in both state and federal court. As thoroughly explained, numerous portions of the trial records are missing. Also the recorded interview with Ms. Campbell that the prosecutor used to coerce and intimate her into testifying the way his wished. This is yet one more criminal violation (Tex.P.C.36.05) the prosecutor used to secure the conviction. Also the missing jury note. Additionally the most flagrant act of misconduct, extensive ex parte communications with deliberating jurors. Vol.4 P.183 L.14-16. What was said by the judge and prosecutor to the jury after the begun deliberation. While the prosecutor and judge provided them an inclusive private extended viewing. The prosecutor remained as the jury's personal video operator on his person lap top. Whether counsel was present and what steps were taken to secure the presence of applicant. All this must be contained in the record. 36.27 Supra. Harm and prejudice is assumed and reversal must follow. <u>Revell v. State</u>, Supra. at 211; <u>Word v. State</u>, 206 S.W.3d 646,650 (Tex.Cr.App.2006). The missing vital portions regarding off-the-record discussions, denied appellant counsel the necessary evidence and knowledge to file a motion for new trial to further develop the record. Counsel would have been entitled to a hearing to do so. <u>Lucero v. State</u>, Supra. at 94. Had this been done and a full and a fully developed record presented on direct appeal there is a reasonable probability the results would have been

22

different. <u>Strickland v. Washington</u>, 104 S.Ct. 2052 (1984). Also this of lack the mandated record is now prejudicing applicant's ability to prove his counsel's conflict of interest. <u>Cuyler v. Sullivan</u>, Supra. at 1709, and other issues. <u>Tamez v. Director of TDCJ-ID</u>, Supra. at 642. The totality of the cumulative effects of these acts of prosecutor misconduct denied applicant's his right to a fair trial and effective assistance of counsel on direct appeal and now his chance to present an adequate record during post-conviction proceedings. All in violation of the 6th and 14th Amendment of the U.S. Constitution.

> GROUND OF ERROR NO. 12: THE TRIAL COURT DENIED APPLICANT HIS 6TH AND 14TH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL BY NOT PROVIDING COUNSEL A COMPLETE COPY OF THE TRIAL RECORD.

As previously shown there was four off-the-record discussions. Also missing is the sustained lengthy session of ex parte communications between the judge, prosecutor and deliberating jurors. also the missing jury note, if trial counsel was present, and what steps were taken to secure applicant's presence. <u>U.S. v.Smith</u>, Supra. at 471. The missing dispatch log(s) and secret audio recording of the defense witness. Vol.4 P.126 L. 2-5. These missing records denied appellant counsel the knowledge and record references to file an adequate motion for new trial with an affidavit in support, alleging but not limited to counsel's representation was under a severe conflict of interest. <u>Cuyler</u>, Supra. Why counsel failed to question Robert Cessna about his relationship with the judge. Had counsel did so, a hearing on his motion for new trial would have been granted. <u>Lucero v. State</u>, Supra. at 94. This in turn would have provided appellant counsel the necessary record to raise these issues and others. The appeals court with the necessary records to rule on these issues and others. See <u>Rylander v. State</u>, Supra. at 110-111.

Additionally missing is the stipulation that provided the prosecutor the right to introduce the video. Vol.4 P.34 L.12-17. The stipulation that the gun was a firearm Vol.4 P. 164 L.6-8. Also a copy of the alleged evidence sheet Vol.4 P.156.L.13-17. It is well settled law that counsel on direct appeal can not argue outside the record. Also that the state of undeveloped record often requires the appeals court(s) to deny claims. Id at 110-111.

Had appellant counsel had these missing records he could have brought these issues on direct appeal. Therefore, there is a reasonable probability the results of the direct appeal would have been different. <u>Strickland</u>, supra.

> GROUND OF ERROR NO. 13: APPLICANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS 6TH & 14TH AMEND. OF THE U.S.CONST.

STANDARD OF REVIEW: <u>Strickland v. Washihngton</u>, 466 U.S. 668,104 S.Ct. 2052,2064-74, 80 L.Ed.2d 674 (1984):

Claims of ineffective assistance of counsel in a criminal case is evaluated under the two-prong test set forth in the U.S. Supreme Court's decision in Strickland. Strickland v. Washington, 104 S.Ct. 2052 (1984). To succeed on a claim of ineffective assistance of counsel, the defendant must show: (1) that his attorney's representation fell below an objective standard of reasonableness; and (2) that due to counsel's unprofessional errors the results of the proceedings would have been different. Strickland, 466 U.S. 687-88. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. 80 L.Ed.2d at 682. Strategic choices made by counsel after a through investigation of the law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than a complete investigation are reasonable precisely to the extent that reasonable professional judgments support limitations on an investigation. The Strickland standard applies to a claim of ineffective assistance of counsel arising under 6th and 14th Amendment of the U.S. Const. as well as Article 1 §10 of the Texas Const. Hernandez v. State, 726 S.W.2d 53 (Tex.Crim.App.1986). While the courts normally looks to the "totality of the representation" and "particular circumstances of each case." In evaluating the effectiveness of counsel, Ex parte Raborn, 658 S.W.2d 602,605 (Tex.Cr.App. 1983), we have also found that under some circumstances a "signal error of omission by ...counsel [can] constitute[] ineffective assistance of counsel. Ex Parte Felton, 815 S.W.2d 733,735 (Tex.Cr.App.1991)."

Applicant will now by number set forth all the reasons counsel was ineffective.

1). Counsel's was under a severe conflict of interest the entire time he was representing applicant. The evidence to establish counsel's divided loyalties was revealed in an off-the-record discussion. Vol. 4 P. 173 L.20. The essence of this discussion is set forth on Pages one and two of this memorandum. In short all the State witnesses are counsel's co-workers and making them look bad or exposing them to disciplinary, civil or criminal charges in efforts to vigorously fight for applicant rights would have created a hostile work environment. White v. Reiter, supra. at 599.

Applicant seeks an evidentiary hearing to develop the record on this aspect of ineffective assistant so he can do more than make a bald assertion which is not enough to be entitled to relief. Cuyler, supra. at 1719. Accordingly when the record is supplemented with the evidence applicant will supplement this issue.

2). Counsel failed to properly preserve applicant's motion to suppress or urge a timely hearing before trial. To avoid duplication this aspect of counsel is fully developed in attached grounds of errors 14-16.

3). Counsel failed to object when the state failed to produce the video (DVD) 20 days before trial as the law requires. Counsel did not receive the video until 10-30-12 which was only 14 days before trial. The trial judge strenuously warned the prosecutor if he did not provide this video to counsel in a timely manner he may not allow it to be used at trial. Vol.2 P.5 L.20-22. Therefore, counsel was given red flag to object to the untimely production. Had counsel objected. This objection

24

would have been granted if not it would have been an abuse of discretion. T.C.C.P. Rules 38.22(3)(5)(a), 39.14. Counsel's objection would have allowed him at least 6 more days. Which would have provided him time to retained or consulted with an expert witness. Which would have quickly lead to the discovery that the video has been seriously tampered with because it was commingled with three other Video's. This would have alerted counsel to object to its admission because it was no longer in its original state. Then counsel could have proven Brazos county did not have a Evidence control system. Therefore, they could not even begin to establish the proper chain of custody. Cuba v. State, 905 S.W.2d 729,735 (Tex.App.-Texarkana 1995). As such this video would have been and is totally inadmissible, without this evidence there is a reasonable probability the results of the proceedings would have been different. Before the jury reached their verdict they requested to see this video. Vol. 4 P.183 L.15. As such the video was the linch pin that resulted in the guilty verdict.

4). For agreeing to allow the State to enter a redacted version of the inculpatory video and according to records signing a stipulation to so allow them to do so without applicant's knowledge. Applicant established in ground of error 16 that the video was totally inadmissible. See Lyons v. McCotter, 770 F.2d 529,534 (5th Cir. 1985)("To pass over the admission of prejudicial and arguably inadmissible evidence may be strategic to pass over the admission of prejudicial and clearly inadmissible evidence, as here, has no strategic value.").

Furthermore, the trial judge thoroughly warned the prosecutor and counsel that any stipulation once trial begins must be in writing. Vol. 4 P.19 L.20-22. In a criminal case the stipulation must be in writing signed by the applicant in open court and approved and signed by the judge and filed in the record. Ellard v. State, 650 S.W.2d 840,841 (Tex.Cr.App. 1983). See also Tex.C.C.P. Art 1.15. The record is void of any such stipulation. Even in the most liberal interpretation the complete terms of the stipulation must be in the record. If the complete terms don't appear in the record the stipulation is void and of no effect. See Howeth v. State, 645 S.W.2d 787,789 (Tex.Cr.App.1983)("The record of appeal is as bare as Mother Hubbard's cupboard concerning what the "contents" of the ordinance might be...nonetheless, the stipulation must be complete as to the object of the stipulation."). Counsel was so grossly ineffective that he not only did not object to obviously inadmissible evidence but agreed to allow it to be admitted by illegal means. Id. at 789; Ellard v. State, Supra. at 481. The exact terms of this agreement of this stipulation is obviously unclear. Vol.4 P. 34 L.12-17 "Judge the parties

have a stipulation regarding the publishing of this exhibit. And pursuant to this stipulation --- we can put that in the record later [never to do so]. MR. GRAY: We have an agreement. P.142 L.18-25. "MR. CALVERT: Judge, at this point in time, we have previously offered States's Exhibit No. 3, pursuant to a stipulation with the Defense, **certain portions of the audio were redacted.** [we have no ideal what portions were agreed to be redacted] For these purpose now, [It's obvious this stipulation has ever changing terms] we are going to offer all of the State's Exhibit No. 3 with the audio included." The record verifies the terms of this alleged stipulation were not in the record and were obviously ever changing to what ever suited the prosecutor. With no objectios. Therefore, this stipulation is void. Howeth v. State, Supra. at 789. Without this evidence there is a reasonable probability the results of the proceedings would have been different.

5). Counsel failed to object when the State failed to produce either officer Ficke or the CI for cross-examination. Applicant had a constitutional right to cross-examine officer Ficke because he is the actual person that prepared the Vehicle Inventory Report. Meledez, Supra at L.Ed.2d 326-328. This denied applicant his right to subject this report to adversarial testing it in the crucible of cross-examination. Id at 326,328-329. This would have determined but limited to whether the gun and jacket were actually listed on a separate evidence sheet as stated by counsel but does not exist in the record as is required by policy. Also the non-existing chain of custody. This would have provided the necessary evidence applicant needed to have the motion to suppress granted.

Applicant had a right to cross-examine the CI as admitted after the state rested their case; The only evidence in the record that identifies applicant in the vehicle is the CI Vol.4 P. 110 L.7-12. Counsel had articulated all the reasons he had a legal right to cross-examine the CI: Vol.4 P.108 L.2-11 "...[o]nly that the person is reliable. We don't have any specific information as to, you know, the description of my client, large male. He was wearing a coat. He wasn't wearing a coat. The vehicle was a black truck, small black truck. Whether there was an LP--I mean, there's just--we just don't know these things." Then the trial court sanctioned applicant's constitutional right to cross-examine the CI. Vol.4 P.108 L.1-11: "THE COURT: All right. I'm a little more concerned about the fact that he was never identified in the vehicle, merely by a description of a confidential informant. And, yes, there were warrants out; But they actually have to see him in there and identify him before they pull the vehicle over." Counsel once again articulated the reasons he has a right to cross-examine the CI. Vol.4 P. 111

L.12-15. "...We don't know about any of the specifics, how he described my client, the vehicle, any of these things."

Counsel at this point knew without this information there could have been no stop, no arrest, no search no gun and no case. Also knew applicant had a constitutional right to cross-examine the CI and he had the judge's support, yet he still failed to object. Meledez, Supra. at 328-329. This decision can not be considered trial strategy. Strickland, Supra. The CI's information which is the most vital evidence in the entire case. Without it the police had no ideal applicant was any where around, what he was driving and more importantly that he had a pending arrest warrant that was only 12 hours old that only the City of Bryan Police Department were aware of. Vol.3 P.167 L.6. See also Vol.6 Ex. #1. Without this vital information there would have been no stop, no arrest and no search, no gun, no case! Therefore, Applicant had a constitutional right to test the CI's description, and how he obtain this knowledge in a cubical of cross-examination. Meledez, supra at 328-329. Even if it would have had to be in camera. Bodin v. State, 807 S.W.2d 313,318 (Tex.Cr.App.1991). Due to counsel's lack of objection which would have been sustained if not the judge would have abused his discretion. Id. at 328-329. Applicant was denied his constitutional right to subject this vital evidence to adversarial testing. These two witness were the very foundation of the state's case. Without the hearsay evidence supplied by the CI there would have been no stop,arrest or subsequent confiscation of the gun. Without a proper Vehicle Inventory Report the gun would have been ruled illegally obtained and inadmissible. Colorado v. Bertine, 107 S.Ct. 738,743-44 (1987). Because this is the very nexus of the evidence the State's case is founded upon and it was never subjected to adversarial testing, this error of counsel is a structural error it is not subjected to a harm analysis. Gochicoa v. Johnson, 53 F.Supp.2d 943,950 (W.D.Tex.1999)("In this Court's opinion, the error is instead a structural one, because the error committed by counsel were so egregious that the prosecution's case was never subjected to meaningful adversarial testing. Thus, analysis under the prejudice prong of Strickland is not necessary.").

Also this one error of counsel alone is enough to find counsel ineffective. Ex Parte Felton, Supra. at 735.


6). Failed to object to hearsay statements and request an immediate ruling.

The State was allowed to prove that applicant was the driver of the truck by hearsay testimony which was the most essential evidence in the entire case. If this

27

evidence was objected to and a ruling obtained the stop, arrest and subsequent search would have been ruled illegal, or at least this issued would have been preserved.

Officer Terry Young testified, that he could not and naturally did not identify applicant as the driver. Vol.4 P. 58 L.18-19. "I may have been about a block or so behind everyone else." Later on cross-examination by double hearsay that someone else learned from someone else that applicant was in the vehicle. Vol.4 P.75 L.8-10. "Investigator Ledesma had received information that Ms. Campbell and Mr. Greer were together in the vehicle..."

Officer Ledesma testified that he could not and did not identify applicant as the driver before he was arrested at gun point by forceful detention. Vol.4 P. 82 L.2-3. "I was in the vehicle at the very back. I came in after-- right after the stop." On cross-examination he admitted the only way he knew applicant was in the truck was by information related to him by the CI. Vol.4 P.88 7-11. "Okay. Prior to receiving that call from the confidential informant, you had no direct personal knowledge that Mr. Greer was, in fact, in that particular vehicle; is that correct. A. Yes, sir. After the state rested their case the judge agreed no one testified that they personally were able to identify applicant as the driver before he was arrested. Except by the description given by the CI. Vol.4 P.108 L.12-17. "THE COURT: All right. I'm a little more concerned about the fact that the was never identified in the vehicle, merely by a description of a confidential informant. And, yes, there were warrants out, but they actually have to see him in there and identify him before they pull the vehicle over." The state agreed that the only evidence in the record that identifies applicant as the driver before he was arrested at gun point was the CI's. Vol.4 P.110 L.7-12. "[W]e have a known inform-- a known person making a presumptive--a legally presumptively reliable tip to law enforcement that these two people are in this vehicle. That's the evidence that's in the record so far." Therefore, all parties acknowledged that the state was able to establish applicant was the driver of the vehicle before he was pulled over only through hearsay testimony. Also the record clearly demonstrates counsel made no objection. This hearsay testimony was offered to prove for a fact that applicant was identified as the driver before being forcibly stopped. Counsel failed to object to this inadmissible hearsay testimony, he therefore, wholly abdicated his role in the adversarial process, thereby depriving applicant of a fair trial. Gochicoa v. Johnson, 53 F.Supp. 2d 943,953 ((W.D.Tex.1999). See also Sanchez v. State, 243 S.W.3d 57,64-65 (Tex.App.-Houston [1st Dist.] 2007) ("...counsel...failed to object

28

to officer Morales's testimony as to what the confidential informant told him on the grounds that it was hearsay...Here, the testimony in question <u>did not reveal the details of the information provided to Morales</u>."). This hearsay information effected applicant's substantial rights by allowing the state to prove this essential elements of case by inadmissible hearsay. <u>Schaffer v. State</u>, 777 S.W.2d 111,113 (Tex.Cr.App.1989). As such this case should be reversed.

Had counsel objected to this hearsay his objection would have been granted if not it would have been an abuse of discretion. See <u>Schaffer v. State</u>, Supra at 113, See also TEX.R.EVID 801(a). Without this hearsay testimony there is a reasonable probability the results of the proceedings would have been different.

7). Failed to object to backdoor hearsay statements and request an immediate ruling.

When the prosecutor artfully asked questions of one witness about another person's demeanor, this is nothing less than the prosecutor soliciting backdoor hearsay (indirect hearsay). Vol.4 P.86 L.4-5,8-9.). See <u>Schaffer v. State</u>, Supra at 113 ("...the hearsay prohibition through artful questioning designed to elicit hearsay indirectly, in short, "statement" as defined in Tex.R.Civ.Evid.801(a), now see Tex.R.Crim.Evid. 801(a) necessarily includes proof of the statement whether the proof is direct or indirect."). The prosecutors questions were designed to obtain hearsay indirectly which is still hearsay. Id. at 113. Had these statements been objected to the objection would have been sustained. If not it would have been an abuse of discretion. Id. at 113. Without this hearsay there is a reasonable probability the results of the proceedings would have been different. <u>Stickland</u>, Supra.

8). Failed to allow Applicant to review the video (DVD) even in the face of numerous requests before trial so he could make an intelligent and informed decision to accept the state's plea offers or go to trial.

Applicant repeatedly wrote letters to trial counsel informing him he needed to watch the video so he could decided whether or not to accept the state's plea offers which were eight, five years prison time. The State went all down to two years State Jail right before voir dire. Because counsel failed and refused to do so applicant's decision to reject the state's numerous plea offers were not an informed and intelligent decision. See <u>Hill v. Lockhart</u>, 106 S.Ct. 366,369 (1985)("...Our concern in <u>McMann v. Richardson</u> [90 S.Ct.1441 (1970)] with the quality of counsel's performance in advising a defendant whether to plead guilty stemmed from the more general principle that all defendants facing felony charges are entitled to the

29

effective assistance of competent counsel."). Applicant's decision to refuse the State's plea offers is based upon counsel's failure and refusal to allow applicant to view the DVD. Thereby providing applicant the knowledge of the strength of the evidence against him. Because counsel refused and failed to provide applicant the information he needed to make a well informed decision, which is the core function of counsel during the time a defendant is deciding whether or not to accept the State's plea offer. This failure of counsel rendered applicant's decision unintelligent, unknowing and involuntary. C/F Burk v. State, 80 S.W.3d 82,93 (Tex.App.-Fort Worth 2003); Johnson v. State, Supra at 19 ("If, prior to trial, appellant had listened to the audiotape her overall strategy might have been substantially different. For example, she might have considered a plea.").

Applicant's has now attached these numerous letters collectively as Ex.'s B 1-B 5. Once the DVD was given to counsel on 10-30-12 counsel only came to visit applicant once at the county jail during this time before trial, this visit only lasted 20 minutes at the most. The video was at least over one hour therefore, it was impossible for counsel to have shown it to applicant. Applicant has attached a copy of the jail visitation log as Ex. C.

Had counsel allowed applicant to view this inculpatory DVD it would have convinced applicant to plea guilty and accept the eight, five or two year State Jail offers. The persuasive nature of the video finds support in the record. Vol.4 P. 183 L.15. Once the jury viewed the DVD it persuaded them to find applicant guilty. For these reasons applicant's decisions to refuse the state's plea offers were unknowing, unintelligent and involuntary decisions. Hill v. Lockhart, Surpa. 369. For this reason this writ should be granted and the plea offer be reinstated.

9). Failed to object to the introduction of critical evidence without establishing a proper chain of custody. e.g. Gun, DVD or jacket.

Counsel failed to discover that Brazos Co. Sheriff's Department did not have an evidence control system from the date of arrest to the date of trial. Therefore, it would have been impossible to establish a chain of custody for all the inculpatory evidence. Coupled with the discovery there existed no separate evidence sheet period. Contrary to counsel's belief. Vol.4 P.156. L.13-17.

This error is cumulative to the fact counsel failed to discover and object to the introduction of the DVD because it was the product of four DVD's commingled into one. Cuba v. State, supra. at 735. Had counsel objected for these two reasons the objections would have been sustained and the evidence ruled inadmissible. If not it

would have been an abuse of discretion. Id. at 735. Also this would have preserved error for appeal. Without this DVD there is a reasonable probability the results of the proceedings would have been different.

Regarding the gun and jacket the judge would have had to instruct the jury that this evidence has not been subjected to a proper chain of custody which effects its credibility. Id. at 735 Rule of Evid. 901. Had the judge not done so it would have been an abuse of discretion. 901 Supra. Therefore there exist a reasonable probability the results of the proceedings would have been different absent these errors of counsel.

10). Counsel failed to object when the State stated that Applicant was: "only" in jail for the offense he is now convicted of. Vol.4 P.9-15 which is the hearing on the admission of jailer Lakeith McKinney's highly prejudicial and inflammatory testimony. This is true because, first it brings to the juror's minds, applicant is in the County Jail wearing jail cloths, which in effect is illegally trying applicant in jail cloths. 364 F.Supp 335. Doing is so prejudicial it's automatic reversal error. Second that applicant is in jail for breaking the rules. P.12 L.15. The judge asked "was he in jail for anything else other than this particular cause of action? CALVERT: He was not judge." This is misleading and presents false facts and just plain lying to the judge. Duggan v.State, Supra at 469 ("Nor does it matter that the falsehood goes merely to the issue of credibility. See Napue, Supra ("A lie is a lie no matter its subject..."). Because in fact applicant was in jail for operating a motor vehicle without registration, theft of 1,500-20,000 dollars magistrated in Brazos Co. on 5-19-12. Warrning #427138. Warrant #12-04020-02, and a blue warrant. These three Ex.s are attached collectively as Ex. D-1, D-2.

Trial counsel's failure to object caused applicant harm because the state was allowed to use McKinny's testimony under the false context that applicant was only in jail for a felon in possession of a firearm. So the statement of "I am in jail for breaking the rules" can only be applied to that charge. When in fact it didn't. Had trail counsel had any kind of grasp of his client's, (applicant's) actual situation and asked for an immediate ruling on his running objections, it would have been granted or it would have been an abuse of discretion. Applicant gave counsel a note during trial in efforts to get counsel to object to his testimony or impeach his credibility. See Ex. E. Counsel's refusal resulted in allowing the state to paint a false picture of the evidence. Means v. State, 429 S.W.2d 490 (Tex.Cr.App.1986). Had counsel consulted with applicant, applicant would have provided him a copy of the grievance that had been filed against this witness by

31

another offender in which applicant was a witness. Applicant has since tried to obtain a copy of this grievance. By applicant's father requesting it through a freedom of information act request. See Ex. F. This request was denied alleging there was a pending criminal investigation involving this jailer. Ex. G. Also Ex. H. Which verifies the cause No. Also Ex.I. Which is a news paper article in which this jailer was successfully indicted for sexually assaulting inmates, "jailer having sex with inmates." This grievance was filed against this jailer for sexual harassment. This grievance could have been used to impeach his credibility. This would have provided the judge with evidence as to why this jailer was willing to lie. This evidence would have severally undercut the already questionable probative value of this evidence. Gilmore v. State, 323 S.W.3d 250,254. Had counsel made these objections and presented the attached evidence there is reasonable probability the judge would have ruled this evidence was inadmissible, thereby changing the results of this proceeding and the results of the trial. Strickland, Supra.

11). Counsel failed to object when applicant was not allowed to be present at all stages of the trial. E.g. when the jury sent the note out and the judge sent a reply. We now know the record is void of this mandated information. 36.27 Supra. Vol.4 P. 183 L. 14-16. See U.S. v. Smith, Supra at 471 ("..[a] criminal defendant be present "at every stage of the trial," the Sixth Amendment's confrontation clause, and the Due Process Clause of the Fourteenth Amendment. Thus, unless waived discussion concerning the jury inquiry and the court's response must take place on the record in the presence of the defendant."). Had counsel objected to allowing the judge and prosecutor having an exclusive private, long extended meeting with the deliberating jurors without applicant being present, this objection would have been sustained, if not the judge would have abused his discretion, Id. at 471.

This error of counsel effected applicant's substantial rights to be present at all stages of trial, as well as preventing the prosecutor and judge from having this extended private ex parte meeting with the deliberating jurors. Therefore, this error should not be subjected to a harm analysis. Gochicoa v. Johnson, Supra at 950. Additionally this objection would have preserved a complete record of these events. The courts having found one error of counsel is enough to establish ineffective assistance of counsel. Nero v. Blackburn, supra. Therefore, absent these errors of counsel there is a reasonable probability the results of the proceedings would have been different. Strickland, supra.

12). Failed to object to the numerous times the State presented false evidence. In

32

this case applicant was charge as being a felon in possession of a firearm. Applicant stipulated to the fact of being a felon still on parole. Vol.6 Ex. 14. This left the state with the burden to prove only two elements. 1). That it a firearm; 2) that it was in applicant's possession. The state was allowed to prove both using false evidence. The first element was proved based upon false and <u>non existing</u> <u>evidence</u>! Vol.4 P.164 L.5-7. "Because you know that was a firearm because <u>that</u> <u>was</u> <u>stipulated</u> <u>to</u>..." There is no such stipulation. Applicant has supplied the entire record. This matter has further been set out previously in error No. 9.

The second element was also proven with false evidence. Vol.4 P.179 L.10-14 "...the lone issue in front of you is <u>not</u> <u>possession.</u> There can be no doubt. Again we are there beyond a shadow of a doubt that this man was exercising care, custody, control or management over the pistol. We know that why? Because <u>it</u> <u>was</u> <u>in</u> <u>his</u> <u>vehicle</u>..." The weight the jury placed in this false evidence "it was in his vehicle" is demonstrated by their commitment during voir dire that if its in his truck its in his care, custody and control. Vol.3 P.41-44. Even if someone else claimed ownership of the gun. Vol.3 P.65-70.

What makes counsel's lack of objection to this obvious false testimony such a deplorable and despicable act is counsel knew for a stone cold fact it was false. Vol.4 P.17월 L.3-4. "And we don't even have proof its a firearm." Vol.4 P.72 L.24-25 P.73 L.1-5. "Q. Now, the vehicle that Mr. Greer was driving that's actually <u>registered</u> <u>to</u> <u>a</u> <u>kennith</u> <u>Greer,</u> is that right? A. <u>Yes,</u> <u>sir.</u> Q. And so, that would be <u>David's</u> <u>dad,</u> <u>not</u> <u>actually</u> <u>David,</u> <u>is</u> <u>that</u> <u>correct</u>? A. <u>Yes,</u> <u>sir.</u>

The cumulative effects of this false and prejudicial evidence being admitted due to counsel's poor performance is driven home and cumulative, by allowing the prosecutor to falsely represent what applicant's only witness testified to thereby, bolstering the effects the previously presented false evidence would have on the jury verdict. Vol.4 P. 179 L.1-2. "Monisha told you that. It's registered to his parents, but <u>'that's</u> <u>his</u> <u>truck.</u> <u>That's</u> <u>his</u> <u>truck.'</u>" This error of counsel was cumulative to the fact he allowed the prosecutor to literally pound this false evidence into the jurors' minds until a minute before they were released to reach a verdict. Vol.4 P.178 L.24-25; 179 L.2,14-15,20-22; 180 L.25; 182 L.22.

Counsel knew this evidence was false and he also knew the prosecutor was using it to prove the only two necessary elements to obtain a conviction and influence the jury verdict. Had counsel made an objection it would have been sustained if not the judge would have been abusing his discretion. See <u>pearson v. State,</u> 649 S.W.2d 786,789 (Tex.App.-Fort Worth 1983)("Certainly, we now know, reversal must follow

where the prosecutor deliberately presents a false picture of the facts by knowingly using perjured testimony." Citing Means v. State, 429 S.W.2d 490 (Tex.Cr.App. 1986).

There can be no reasonable trial strategy in allowing the prosecutor to use false evidence! For sure allowing them to use it to prove the only two remaining elements necessary to obtain a conviction. This error of counsel harmed and prejudiced applicant by allowing his trial to be fundamentally unfair. Thee is a reasonable probability that without these errors or counsel the results of the proceedings would have been different. Strickland, Supra.

13). Failed to object when the state introduced the illegal incomplete inventory list. Counsel knew the inventory list did not include the gun or jacket which established by mandatory required procedures for a legal inventory search to be conducted by the Barzos County Sheriff's Department. Which trial counsel works for as a ride along. Yet not only did counsel fail to object but actually actively assisted the court in establishing the inventory list that was prepared by his co worker was proper by asking the court to consider a non-existing evidence sheet. Counsel told the judge the gun and jacket are properly listed on this evidence sheet in accordance to policy. Vol.4 P.156 L.13-17. The record is totally void of any such evidence sheet. There can be no trail strategy in helping the state justify introducing an illegally prepared inculpatory document by telling the court its justified in doing so based upon a false non-existing document. This is yet one more prime example of the manifestation of counsel's divided loyalty. Asking the court to consider non-existing evidence that is detrimental to applicant's case is far more than unreasonable. In times of war helping the enemy is called treason. Without this evidence there would have been no case. Without counsel helping the state justify the introduction of an ill-prepared document which in turn was used to justify the confiscation and subsequent arrest for a felon in possession of a firearm and trial. There is a reasonable probability the out come of the trial would have been different. Strickland, Supra.

14). For assisting and urging excuses for the state to deny applicant's his 6th Amendment right to cross-examine officer Ficke. Vol.4 P.89 L.24-25 P.90 L.1-9.

The State offered the Vehicle Inventory Report prepared and signed by Deputy Ficke without objection. See Vol.6 Ex.5. What is so shocking is that counsel actually set forth the facts that the Supreme Court used to rule that applicant has the right to cross-examine this witness. Vol.4 P.89 L.18-21. "Q.I don't anticipate that he's going to be called but he was the one that actually prepared this sheet; is that correct? A. Yes, sir. To my knowledge, yes, sir. See Meledez, Supra. at 328

34

as further set out on page four of this memorandum. Then counsel in his next breath urged the court to introduce this Vehicle Inventory Report without objection in his mistaken belief that it would prevent Officer Ficke from having to testify. Also counsel wanted the judge to know trial counsel was the one that was responsible for the inventory sheet being introduced into the record and not the state prosecutor.

The record further demonstrates the judge was shocked and surprised that counsel had not objections and brought his concerns to counsel attention. See Vol.4 P.90 L.5-9. "MR. GRAY: We have no objection. Judge. THE COURT: No further objection? MR. GRAY: No further objection. Judge. that was actually at our urgence, [to introduce the inventory sheet not the state's] and that should prevent the deputy from having to testify." This record demonstrates two dramatic things. 1). Counsel did not know the law governing the facts of this case. 2). His willingness to help the state to deny applicant his constitutional right to cross-examine this witness thereby subjecting the state's case to adversarial testing. See Powell v. Alabama, 53 S.Ct. 55, 59 (1932); Meledez, Supra. at 328; Gochicoa v. Johnson, Supra at 950.

Counsel's statement is classified as oxymoron as is undeniably pointedly foolish. The exact reason counsel urges to court to deny applicant his constitutional right to cross-examine officer Ficke is the very reason applicant has a constitutional right to do so. Melediz, Supra at 328-329. Applicant suffered egregious harm by counsel turning in to a better prosecutor than the state's prosecutor at denying applicant his constitutional right to cross-examine this vital witness and evidence. For sure there is a reasonable probability that the results of the proceeding would have been different absent these errors of counsel. Strickland, Supra.

15). Failed to object when state introduced critical inculpatory evidence that was altered e.g. several different videos selectively made into one. Therefore, this one video is impossible to authenticate for legal introduction. Vol.4 P.151 L.6-7 Front camera and backseat camera of Ficke's car. Vol.4 P.144 L.10-12, Vol.4 P.166 L.1920. Front and back seat of Ballew's car.

Counsel failed to object because the DVD was hopelessly commingled and impossible to authenticate. Selectively putting bits and pieces of four different DVD made into one is evidence that not only has been tampered with, but seriously, and undeniably tampered with and altered. Furthermore, there is no chain of custody. This inculpatory evidence was obviously inadmissible. Cuba v. State, Supra. at 735. Counsel did not simply pass over obviously inadmissible inculpatory

35

evidence which is not within the realm of trial strategy. See Lyons v. McCotter, Supra. at 534. Counsel went one step further by turning into a defense prosecutor by assisting the state prosecutor by engaging in illegal means to have this inadmissible evidence introduced by way of a ever changing oral stipulation in the middle of trial without placing the exact terms of this stipulation into the record. See Howeth v. State, Supra at 789. Furthermore, as the judge stated any stipulation that is offered once trial starts must be in writing. Vol.4 P.19 L.20-22. Which is supported by the decision of the Tex. Crim. App.'s See Ellard v. State, Supra at 841.

The defense prosecutor agreeing to allow this inculpatory DVD to be admitted, and not simply not objecting to it but orchestrating and conspiring with the state prosecutor by devising an illegal stipulation to insure this inculpatory evidence was introduced so the jury could consider it repeatedly. Counsel went so far as to during closing arguments to remind the jurors they have this DVD to refresh their memory. Vol.4 P.168 L.15-17. The very actions of the jury verifies that the DVD is persuasive and it's favorable for the state. They were having trouble reaching a verdict they watched this DVD and quickly returned a guilty verdict. Vol. 4 P. 183 L.14-16. P.184 L.3-5. Had it not been for these errors of counsel, this detrimental inculpatory evidence could not have been introduced. Therefore, there is a reasonable possibility the results of the proceedings would have been different. Strickland, Supra.

16). Counsel refused and failed to allow the only defense witness to review the video to refresh her memory, and prepare her for cross-examination, stating that he could not allow her to review the video because this would be witness tampering:

First to not preparing this witness for cross-examination by allowing her review both the DVD record and the taped interview is ineffective. Johnson v. State, Supra.; Mallet v. State, 9 S.W.3d 856,867 (Tex.App.-Fort Worth 2000). Next not allowing the witness to review the DVD based upon his misunderstanding of the law, "It would be witness tampering." This is yet one more instant of ineffectiveness of counsel. Because counsel is required to have a firm grasp of the laws dealing with the facts of this case. Alabama v. Powell, Supra. Flores v. State, 576 S.W.2d 632,634 (Tex.Cr.App.1978). It is well defined law that allowing this witness to review this tape is not witness tamper. As such counsel is ineffective for such ignorance of the law. Ex Parte Chandler, 182 S.W.3d 350,358 (Tex.Cr.App.2005).

The record speaks for itself. Counsel was so grossly ineffective that he not only did not even allow the only defense witness to review the DVD or the audio

recording by the prosecutor but did not even inform her they existed. This in the face of the fact that counsel knew she was going to claim ownership of the gun and if her testimony was believed applicant would be found not guilty. See Vol.4 P. 132 L.22-24. "Q" Are you aware that you were being video tapped at that point and time?. A. **No, I wasn't.** Vol.4 P.126 L.2-5. "...are you aware that I was recording that conversation? A. **No, I wasn't aware that you were recording anything.**

The harm and prejudice due to this error of counsel allowed the prosecutor to "not" simply impeach her testimony but literally ambush her on cross-examination with her statements in the video and audio recording. Which subsequently allowed him to point out these inconsistencies to the jury during closing arguments. Vol.4 P. 181 L.3-25 P.182 L.1-14. Additionally this allowed the prosecutor to use the threat of the unknown recorded conversation to coerce her into testifying favorable for the prosecution. Vol.4 P.126-132. This video was used repeatedly to impeach her direct examination testimony. P.126-143. As a prime example see P.143 L.12-14. "Once she found out she was being videotaped, on redirect, she changed her testimony and said that happened later." Additionally this allowed the prosecutor to viciously and relentlessly attack her credibility by reminding the jury it is their job to judge witnesses credibility. Vol 4 P.177 L.11-12. "...You're judging the credibility." The prosecutor then explained why she had a reason to lie, then proceeded to bash her credibility by portraying her to be a liar, not once, not twice nor even just three times but eight times during closing arguments. P.180-182.

Counsel's lack of preparing the only defense witness to testify resulted in the ultimate harm--"the jury discredited her testimony and found applicant guilty." Because if the jury would have believed her testimony (the gun was her's) then they would have found applicant not guilty. Had it not been for this error of counsel the results of the proceedings would have been different. Stickland, Supra.

17). Failed to object when prosecutor misstated the law. The Fifth Amendment right includes the right not to incriminate others. Vol.3 P.85 L.7-9. Instructed the jury after the jury charge had been read that the evidence; "does not have to be beyond a reasonable doubt." Vol.4 P.165 L.14-15. Counsel's failure to object to these obvious well known misstaatmemnt of laws are not with the realm of trial strategy also this one error of counsel is enough to find counsel ineffective. See Andrew v. State, 159 S.W.3d 98,102 (Tex.Crim.App.2005);

> "[t]he Supreme Court said that, "In making [its] determination the [reviewing] court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." Counsel failed to do so in the case when he failed to object to the prosecutor's misstatement of law...Defense counsel has a duty to

37

correct misstatements of law that are detrimental to his client. This duty derives from counsel's function "to make the adversarial testing process work in the particular case." There can be no reasonable trial strategy in failing to correct misstatment of law that is detrimental to the client.")

See also <u>Branch v. State</u>, 335 S.W.3d 893,899 (Tex.Crim.App. 2001). There can be no reasonable trial strategy in failing to correct this false impression that was harmful to appellant. See <u>Andrews v. State</u>, Supra at 103. Ignorance of well-defined general laws, statutes and legal propositions is not excusable and such ignorance may lead to a finding of constitutionally deficient assistance of counsel. See <u>Ex Parte Chandler</u>, Supra at 358. The prosecutor gave the jury incorrect information to determine applicant's guilt. This is a structural error as it effects the very frame work that trials proceed. See <u>Pyles v. Johnson</u>, Supra. at 993. As such its violation defies analysis of harmless error. Id. at 995. Furthermore, it a violation Tex.P.C. §2.01. Had counsel objected to these misstatements of law the objection would have been sustained or it would have been an abuse of discretion. <u>Anderws v. State</u>, Supra at 102. There is a reasonable probability the results of the proceedings would have been different without these errors of counsel. <u>Strickland</u>, Supra.

18). Failed to object when prosecutor made improper jury arguments. See <u>Mayberry v. State</u>, 830 S.W.2d 176,178 (Tex.App.-Dallas 1992)("The permissible areas of jury argument are well established. Proper subject of jury argument include (1) summation of the evidence (2) reasonable deduction from the evidence, (3) answers to argument of apposing counsel. (4) pleas for law enforcement."). The complained of arguments: Vol.4 P.164 L.4-7. "So what does this all boil down to a whole day spent on possession, knowingly, intentionally possessing a firearm. Because you know that was a firearm <u>because it was stipulated to</u>..." This argument injects new facts into the record that are totally false, harmful and prejudicial to applicant. It invites the jury to based their verdict upon non-existing false evidence. <u>Napue v. Illinois</u>, Supra., <u>U.S. v. Blakey</u>, Supra. at 1560; <u>U.S. v. Murrah</u>, 888 F.2d 24 (5th Cir. 1998)("A prosecutor may not directly refer to or even allude to evidence that was not adduced at trial."). See also <u>Cooper v. State</u>, ("However, such error is not reversible, unless, viewing the record as a whole, we can conclude the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts, harmful to the accused into the trial.").

Additionally the prosecutor instructed the jury that the vehicle was applicant's Vol.4 P.178 L.24-25, 179 L.2,14-15,20-22; 180 L.25; 181 L.1 182 L.22. We know this is false and the prosecutor is using it improperly to influence the

verdict, as such it's manifestly improper. <u>Guidry v. State</u>, 9 S.W.3d 133,154 (Tex.Cr.App.1999). Additionally the prosecutor falsely stated that: "Monishia **told you that**. It's registered to his parents but **that's his truck. That's his truck."** Vol.4 P.179 L.1-2. This argument is false, because no such testimony exist, it injects new facts into the record harmful to applicant. Also it was used for the improper purpose to bolster the credibility of his previous false argument. <u>U.S. v. Murrah</u>, Supra at 26; <u>Guidry v. State</u>, Supra at 154.

Additionally the prosecutor argument misstated a well defined law after the jury charge was read. "...you are the finders of fact, you can find these facts and add them up. It **does not have to be beyond a reasonable doubt."** This argument violates mandatory statues, Tex.P.Code 2.01 and the very structural foundation of criminal trials. This argument can only be viewed as a improper method calculated top produce a wrongful conviction. <u>U.S. v. Blakey</u>, Supra. at 1560. All of these arguments are improper and counsel did not object to any them. Had counsel objected the objections would have been sustained if not it would have been an abuse of discretion. Without these errors of counsel there is a reasonable probability the results of the proceedings would have been different. <u>Strickland</u>, Supra.

19). Failed to request findings of facts and conclusion of law after the motion to suppress was denied. Had counsel done so it would have been granted if not the judge would have abused his discretion. <u>State v. Oages</u>, 210 S.W.3d 643,644 (Tex.Cr.App.2006). Counsel's failure to do so harmed and prejudiced applicant's right to effective assistance of counsel on appeal. <u>Evitts v. Lucey</u>, Supra. Also this denied the appeals court of an adequate record on appeal to properly review this trial court's ruling. <u>State v. Cullen</u>, 195 S.W.3d 696,698 (Tex.Cr.App.2006). Additionally this lack of an adequate record is harming and prejudicing applicant's post-conviction proceedings in both State and Federal court. <u>Tamez v. Director TDCJ-CID</u>, supra. at 642.

20). Failed to object when the jury were allowed to take this video and player into the jury room during deliberation. Due the lack of the mandatory record and possible changes this record may bring about applicant can not adequately present and brief this issue at this time, but will once record is properly supplemented.

21). Counsel failed to object to prosecutors production and use of custodial integration video (DVD) in violation of Texas law. The courts in <u>Nguyen v. State</u>, 292 S.W.3d 671,676 (Tex.Cr.App. 2009), sets out all the requirements that a electronically recorded custodial integration statement must meet before it's admissible; 1). It **must** verify that Miranda warning rights were read and

waived. 2). The recording **must** be accurate and **not have been altered**; and 3). Trial counsel **must** be given a **true, complete, and accurate** copy of all recordings at least 20 days before trial. The video verifies the miranda warnings were never read. Therefore, it was impossible to knowingly waive them. The one video was the product of four DVD's selectively commingled into one. It was not provided to counsel until 10-30-12 (Vol.6 Ex.3) at the earliest and trial was on 11-13-12. As such the admission was prejudicial and clearly inadmissible, counsel's failure to object to its admission is unexcusable. The failure to do so has no strategic value. Lyons v. McCotter, Supra. at 534. Had counsel objected to its illegal nature the objections would have been sustained if not it would have been an abuse of discretion. Nguyen v. State, Supra at 676. Without this evidence there is a reasonable probability the results of the proceedings would have been different. Strickland, Supra.

22). Counsel failed to pursue exculpatory evidence. Dispatch logs of Brazos Co. Sheriff's Dept. and Bryan Tx. Police Dept. for February 16, 2012 specifically for the hrs. 1pm-4pm. Had counsel obtained these logs they would established that the warrant for applicant's arrest was not confirmed until after applicant was pulled over at gun point and placed under arrest. This evidence could have been used to prove the stop, arrest and search was illegal. Also it could have been used to impeach the credibility of the state's witnesses. This is therefore, Brady material. United States v. Bagley, 105 S.Ct. 3375 (1985). Had counsel discovered this evidence there is a reasonable probability the outcome of the trial would have been different. Strickland, Supra.

23). For asking the judge and jury to consider evidence that is not in the record that is detrimental to applicant. When it came to the attention of the court before the jury that the jacket and gun were not on the Vehicle Inventory Report as mandated by policy counsel informed the courtroom that it was listed in the evidence sheet. This evidence is not in the record. This allowed the court and jury to consider evidence that is not in the record and which is detrimental to applicant. This non-existing evidence could have been considered by the trial court and appellate court when denying applicant's motion to suppress. There is a reasonable probability that without this non-existing evidence being considered the results of the hearing on the motions to suppress and trial would have been different. Strickland, Supra.

24). Failed to question venireperson Robert Cessna if his personal friendship with the presiding judge would have effected his ability to be a fair and impartial

juror. Applicant can not adequately present this issue due the lack of mandatory record but applicant has a motion pending to have the record supplemented with the mandatory record is supplemented applicant will fully brief this issue.

25). Improper jury arguments of counsel. Applicant will now justify coining trial counsel the defense prosecutor. Counsel did more to criticize and place Applicant's fifth amendment right to remain silent prejudicially in the minds of the jurors in closing arguments than the prosecutor is legally entitled to. See the defense prosecutor's closing arguments. Vol.4 P.170 L.1,11. "...There's **no testimony from David...There is no statement from David...**" This is direct statements of applicant's failure to testify. Had the state prosecutor made these statements reversal error would have been required. Anderson v. State, 813 S.W.177 (Tex.App.-Dallas 1991) citing Johnson v. State, 611 S.W.2d 649,650 (Tex.Cr.App. 1981). Counsel was well aware that the jurors were already struggling to not hold applicant's failure to testify against him. Especially mixed with the fact they were told applicant was a convicted felony. See Vol.3 P.90 L.5-13. Counsel also knew more jurors were excused for cause because they would hold it against applicant if he did not testify, than any other reason. Vol.3 P. 113 L.16-18. The defense prosecutor knew any comment on applicant's right to not testify was highly prejudicial. This denied applicant a fair trial with an impartial jury. U.S. v. Webster, supra. at 341. Yet the law allows trial counsel to do so. Hicks v. State, Supra. at 304.

The defense prosecutor conceded applicant's guilt which is the proverbial final nail in the coffin. P. 174 L.19-25, 175 L.1-3.

> "...They're going to talk about David's coat, you know, him saying that's not his. Think about this. You've got a convicted felon. He's in a police car, just like Monishia, in handcuffs. Officers comes up with a coat, "Hey, is this yours?" Officers wouldn't be bringing a coat **unless he found something in the coat, right?** So, is it shocking that he would say that's not my coat?

This is a clear admission of guilt. Defense prosecutor clearly admitted it was applicant's coat. He also admitted that applicant was a convicted felon. Also admitted that applicant knew the police found something in his jacket that a convicted felon could not possess e.g. a gun. That applicant was a lair and that this is the reason he lied. Also that the jury could not be surprised that he lied. Counsel connected the gun to the jacket and the jacket to applicant. Also that applicant knew the gun was in the jacket. Additionally that applicant lied but the jury should understand why he lied and not be surprised. Counsel had already allowed the state prosecutor to use false evidence to prove the truck was applicant's, and

41

the gun was a firearm. As such counsel's admission conceded applicant's guilt. See Doherty v. State, 781 S.W.2d 439,442 (Tex.App.-Houston [1st Dist.] 1989):

> "Fleming himself made remarks prejudicial to appellant. Feleming's remarks to appellant, "you didn't take all the money? " and, "what did you do, hit him over the head first?" Were heard 15-20 feet away. Felming essentially admitted his client's guilt in the presence and hearing of the jury."

There is no trial strategy in admitting applicant's guilt. Stickland, Surpa. This error resulted in further harm because it opened the door for the prosecutor to assassinate and annihilate applicant's character even though he never testified. This was done by repeatedly telling the jurors he lied. Vol.4 P.179, 23, 180 L.3,8-9,12; 182 L.22. These were virtually the last words out of the defense prosecutor's mouth before he dismissed the jurors. What juror would not believe applicant was guilty if it came out of his own counsel's mouth. Any chance applicant had a fair trial was totally destroyed. This final one error of counsel alone is enough to find counsel ineffective. Ex Parte Felton, Supra at 735.

GROUND OF ERROR NO. 14: APPLICANT WAS DENIED HIS 6TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL.

GROUND OF ERROR NO. 15: APPLICANT WAS DENIED HIS AND 14TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANT OF COUNSEL ON APPEAL.

Applicant is constitutionally entitled to effective of counsel on appeal pursuant to the 14th Amendment of the U.S. Constitution. See Lofton v. Whitley, 905 F.2d 885,887 (5th Cir.1990). Citing Evitts v. Lucey, 105 S.Ct. 830 (1985).

For a applicant to establish ineffective assistance of counsel on appeal applicant need only show that a different outcome on appeal would have resulted but for the error of counsel. Duhamel v. Collins, 955 F.2d 962,967 (5th Cir. 1992); Ex Parte Owenby, 749 S.W.2d 880,881 (Tex.Crim.App.1988)(This second prong [of Strickland test] requires that in the instant case the applicant must be able to show that the outcome of his appeal would have been different if he was now allowed an out-of-time-appeal on this issue). This involves a significant lower threshold showing of harm, because counsel may have been ineffective on appeal for not raising an issue or that issue raised was deficiently briefed. Duhamel, supra. at 1130-31.

Applicant asserts that his appellant counsel was ineffective because the trial court denied counsel the mandatory complete trial record. There is four off-the-record discussions. Two applicant has recited to the best of his ability the essential facts. See pages 1-3 of this memorandum. The jury note is missing and the astounding extended private ex parte communications between the judge, prosecutor and deliberating jurors. These missing mandatory records (36.27 supra) denied

appellant counsel the necessary records to file a motion for new trial with supporting affidavit. Had counsel been provided these records and filed the motion for new trial seeking to develop these issues the motion would have been granted an a hearing would have been ordered. Lucero v. State, Supra. at 94. This would have allowed counsel to present a fully developed record supporting counsel's conflict of interest. Cuyler v. Sullivan, Supra. at 1719. That applicant was not present at all stages of the trial and ex parte communications between the judge and prosecutor with the jury. U.S. v. Smith, supra. at 471-73. Also that counsel did not question Mr. Cessna about his being impartial, due to being special friends with the presiding judge. Cadoree v. State, Supra. at 789. Had this motion for new trial been filed, developing these facts and bring these issues up on direct appeal there is a reasonable probability that if applicant was now granted an out-of-time appeal the results of the proceedings would be different. Ex Parte Owenby, 749 S.W.2d 880,881 (Tex.Cr.App.1988); also Strickland, Supra.

Appellant counsel was ineffective because she failed to request a hearing on the motion for new trial by filing a Setting Request form with the District Clerk. See Clerk's Records P.70. Also she failed to file the required affidavit and attaching it to the motion for new trial as pointed out by the District Attorney. See Clerk's Record P. 65. And appellant counsel failed to present issues in her motion for new trial specifically requested by applicant. See attached Ex. J. Had these issues been presented on a motion for new trial then the factual bases for each claim would have been developed. Therefore, there would have been a record to reference to, such as but not limited to, why trial counsel failed to allow applicant to try on the jacket in front of the jury which is a XL and applicant wears a 5X this would have been like putting a baby shirt on a giant, this would have conclusively proven the jacket was not applicants. Like OJ Simpson "if it does not fit you must acquit." Had counsel listed these issues in her motion for new trial along with the necessary papers and attaching them with her motion for new trial. There is a reasonable probability the results of the motion for new trial would have been different. Lucero v. State, Supra at 94. Thereafter, the results of the direct appeal would have been different. Stricklnad, Supra.

Had counsel raised and properly briefed the issues presented herein there is a reasonable probability a different out come would have resulted. The Honorable Fifth Circuit held in McGrae v. Blackburn, 793 F.2d 684, 688 (5th Cir. 1986)(Because this is not a case where counsel's deficiencies prevented ANY APPELLATE review, or where counsel entirely failed to challenge the prosecution's case, McCarae's claim

43

requires a showing that counsel's errors were so serious that counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment. Hamilton v. McCotter, 772 F.2d 171,182 (5th Cir.1985). See also Strickland, supra at 2064"). In the instant case appellant counsel COMPLETELY FAILED to challenge the Prosecutor's case on Grounds of error 2-12,16,17 also the issues she did raise were deficiently briefed which denied applicant any meaningful review which shows applicant was denied his 6th and 14th Amendment right to effective assistance on appeal. Id. citing Strickland, Supra at 2064.

Applicant has shown and satisfied his burden under Stickland by showing that the issues now raised if appellate counsel had raised them and properly briefed them on direct appeal reversal would have followed and a new trial ordered years ago.

The denial of effective assistance of counsel on appeal prejudiced applicant by denying him proper and/or presentation of these issues now being presented. See U.S. v. Phillips, 210 F.3d 345 (5th Cir.2000). There is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would be different if applicant was now granted an out-of-time-appeal. Ex Parte Owenby, supra at 881.

> GROUND OF ERROR NO. 16: APPLICANT WAS DENIED HIS 6TH AND 14TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL BECAUSE HE FAILED TO ADEQUATELY PRESENT AND PRESERVE APPLICANT'S 4TH AMENDMENT CLAIMS.

This issue is governed by the supreme court's decision in Kimmelman v. Morrison, 106 S.Ct. 2574 (1986). Counsel completely failed to filed a motion to suppress the video of the custodial integration. He did file one regarding suppression of the audio but never properly requested or received a hearing. See Clerk's Record P.11-12. Had counsel done so and alleged it violated the requirements the court set forth in Nguyen v. State, Supra at 767. As further set-out in ground of error 13 subsection 21 on pages 39-40 of this memorandum, it would have been granted, if not it would have been an abuse of discretion. Id. at 767. The video was 4 videos made into one, selectively redacting exculpatory portions and including the inculpatory portions. The final video is undeniable a video that has been tampered with altered and commingled with 3 other videos, hopelessly destroying the ability for it to be authenticated, and its ability to be legally admitted as evidence. Cuba v. State, supra at 735. Additionally had counsel discovered and admitted as evidence that Brazos Co.Sheriff's Dept. did not have an evidence control system from time of arrest until trial. See attached Ex. K. The chain of custody could not have been established. See Wortham v. State, 903 S.W.2d 897,900 (Tex.App.-Beaumont 1995)("Only upon a showing that an exhibit was tampered with or altered will a chain of custody

44

question effect admissibility."). This evidence would have proven this video was hopelessly inadmissible. The motion would have been granted if not it would have been an abuse of discretion. Id. at 900. For sure the issue would have been preserved for appellate review. The results of the proceedings would have been different without this evidence. Kimmelman v. Morrison, supra at 2583.

Counsel failed to file an adequate motion to suppress the illegal arrest and subsequent search and confiscation of the gun and jacket. Additionally counsel failed to request a pre-trial hearing on the motion to suppress. Counsel waited until after the jury was impaneled and even then did not request a separate hearing. Vol.3 P.167 L.18-20. At the point in time when counsel finally urged his motion was after the state rested its case. Vol.4 P.100 L.17-18. All the evidence that counsel sought to suppress he had already allowed the state to present it without a single objection. See Griffin v. State, 850 S.W.2d 246,249 (Tex.App.-Houston [1st Dist.] 1993)("Defense counsil must object every time allegedly inadmissible evidence is offered. Hudson v. State, 675 S.W.2d 507,511 (Tex.Cirm.App.1984); See also Brasfield v. State, 600 S.W.2d 288,296 (Tex.Cr.App.1980)." Because no objections were made when the complained of evidence was admitted, there is "nothing preserved" for appellate review. Hudson, 675 at 511. Once the motion was denied counsel failed to file a motion requesting findings of facts and conclusions of law. Which would have allowed the appeals courts to adequately rule on the real reason(s) the trial court denied the motion. State v. Oages, supra at 644; State v. Cullen, supra at 698.

Counsel failed to properly present his motion to suppress the gun and jacket. Counsel should have set out the mandatory requirements of the Vehicle Inventory Report policy and how the mandatory requirements were not followed: This inventory policy was entered. Vol.6 Ex.16. This policy specifically requires and mandates:

> II. POLICY: This inventory procedure may not be used as a pre text to conduct an exploratory search for incriminating evidence...Vehicle inventories SHALL be conducted in accordance with the procedures outlined in this directive.
> P. 2B. VEHICLE INVENTORY REPORT
> 3. ALL items of value SHALL be recorded on the Vehicle Inventory Report.
> 4. In most cases, the property should be left inside the impounded vehicle. If, however, the vehicle cannot be reasonably secured or the property is of such value that the officer does not believe it would be safe to leave it in the vehicle, the property SHALL be logged into the Property/Evidence unit for safekeeping. Any property removed from the vehicle SHALL be noted on the Vehicle Inventory Report, indicating where it was stored...6. The signature of the owner or driver of the inventoried vehicle should be obtained on the Vehicle Inventory Report, when practicable. The signature of the driver of the wrecker towing the vehicle, shall be obtained.

Police officers have no discretion in following inventory search procedural policy. See <u>Colorado v. Bertine</u>, 107 S.Ct. 738,743 (1987):

"The underlying rational for allowing an inventory exception to the Fourth Amendment warrant rule is the police officer <u>are</u> <u>not</u> <u>vested</u> <u>with</u> <u>discretion</u> to determine the scope of the inventory search. See <u>South Dokota v. Opperman</u>, 428 U.S. 364,282, 96 S.Ct. 3092, 3103-3104, 49 L.Ed.2d 1000 (1976)(POWELL J. Concurring). This <u>absence</u> <u>of</u> <u>discretion</u> ensures that inventory searches will <u>not</u> be used as a purposeful and general means of discovering evidence of crime."

At 742 Our decisions have always adhered to the requirements that inventories be conducted according to standardized criteria. See <u>Lafayetta</u>, 462 U.S. at 648, 103 S.Ct. 2610; <u>Opperman</u>, 428 U.S. at 374-375, 96 S.Ct. at 3099-3100."

Therefore, the Supreme Court has set the legal guidelines: If the standard procedure policy is not followed then the inventory search is illegal, because it becomes nothing more than a purposeful and general means of discovering evidence of a crime. <u>Colorado v. Bertine</u>, Supra at 743.

First the policy <u>mandates</u> that all items of value **SHALL** be recorded on the Vehicle Inventory Report. Now we must determine the base line of the value of the property officer Ficke considers valuable enough that it must be listed on the report. This inventory list is in the record. Vol.6 Ex.15. It list 3 pair of sunglasses ($1.00 each) 2 small flashlights ($3.00 dollars each), 3 Blue water bottles that were empty which are free, but even full they are about $5.00 each. Therefore, any item of value of $1.00 or more is considered of value. We know the pistol and black leather jacket is worth way more than $1.00. Neither was listed, as such this is the first instance in which the mandatory requirement of the policy was not followed.

Next the policy mandates (P.2 sec.4). Any property removed from the vehicle **SHALL** be noted on the Vehicle Inventory Report. The gun and jacket were not listed on the report nor where they were stored. Therefore, this is the second and third instances in which the mandatory policy was not followed. These three instances of failure to follow the mandatory policy exhibits and demonstrates bad faith. To further verify bad faith the state capitalized on the lack of following the mandatory requirements of policy by making a major issue out of not knowing where the jacket was found. Vol.4 P.60 L.20-23. By stating it was not found in Monishia duffel bag. Yet as Monishia testified it was in her duffel bag. Had the jury believed the jacket was in her duffel bag there is a reasonable probability the outcome would have been different. As such the record verifies that this was a strategic decision. A clear act of **BAD FAITH.**

Next remember that the policy includes mandatory language therefore, it

mandates compliance....Vehicle inventories **SHALL** be conducted in accordance with the procedures outlined in this directive. Applicant has thus established that three mandatory requirements that were not adhered to. Next requirement, the signature of the owner or driver of the inventoried vehicle should be obtained, when practicable. Officer Ficke was the officer that prepared the report and the arresting officer. Once the report was completed with the tow truck driver's signature. The officer along with his report got into the front seat with applicant in the backseat. Applicant was taken to the county jail unhandcuffed and booked in. At any point applicant could have reviewed this document and placed his signature on it. So its obvious that it was highly practicable to obtain his signature. At any point officer Ficke could have handed applicant the report and applicant signed it. This lack of compliance denied applicant the chance to insure the inventory was complete. This lack of compliance undercut two of the three major reasons to conduct the inventory search in the first place. See Lagaite v. State, 995 S.W.2d 860,865 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). Inventories serve to protect (1) the owner's property while in custody, (2) the police against claims or disputes over lost or stole property. Had this procedure been followed applicant would have noticed his $75.49 dollar camouflage jacket was not even listed or where the black jacket and gun were stored. This bad faith lack of compliance, is the key reason the state was allowed to present false evidence at trial; There was only two jackets in the truck one Ms. Campbell was wearing and the black leather jacket, and applicant was wearing only a tank top and it was the middle of winter so that was his jacket with the gun in it. Also where it was stored. Vol.4 P.43 L.9.

Also trial counsel argued during the motion to suppress that the County allows drivers that are going to be arrested to call someone else to come get the vehicle so they will not have to search and tow it off. See Vol.4 P.63 L.18-25 P.64 L.1. Counsel could have called applicant's father and he would have testified that just 83 days latter applicant called him after he was arrested and he came and got the truck instead of them searching it and towing it in. See Ex. L attached.

Additionally is the fourth instance the mandatory procedural requirements in the policy were not complied with. Which counsel failed to alleged or argue in the suppression hearing. Ex 16 P. 2: C. **DISCOVERY OF EVIDENCE.**

> "1. If, in the course of a vehicle inventory, the officer discovers an item that constitutes contraband or evidence connected to the commission of a criminal offense, the officer **SHALL** seize the evidence and process in according to the established procedures of this Department."

This once again mandates that the gun and jacket are mandatorily required to be

47

listed on this Vehicle Inventory Report. Counsel then could have presented the fact that the Department had no evidence control system. Therefore, there was no way to follow a non-existing procedure for processing evidence. This evidence would have established the state failed to follow four mandatory requirements of their policy and one requirement. Had counsel presented these in the motion to suppress it would have been granted and without this evidence there would have been no trial. As such the out come would have been different without this evidence. Kimmelman v. Morrison, supra at 2583.

Additionally at the hearing counsel failed to issue a subpoena for officer Ficke because he is actually the officer that prepared the inventory report. Applicant had a constitutional right to cross-examine him. Meledez, supra at 328. Also counsel should have insisted that the confidential informant be present because he was the sole person that identified applicant before he was arrested at gun point. Applicant had a right to test his description, even if it would have had to be in camera. See Bodin v. State, supra at 318. Counsel failed to cite one single case law to support his motion.

For sure had the motion been presented as now outlined it would have been properly preserved for appellate review. Thereafter there is a reasonable probability the results of the direct appeal would have been different.__

GROUND OF ERROR NO. 17: PROSECUTOR DENIED APPLICANT HIS DUE PROCESS RIGHT TO THE DISCOVERY AND DISCLOSURE OF EXCULPATORY EVIDENCE.

STANDARD OF REVIEW: "PYLES V. JOHNSON, SUPRA AT 998. THE PROSECUTIONS SUPPRESSION OF EVIDENCE FAVORABLE TO THE ACCUSED VIOLATES THE DUE PROCESS CLAUSE IF THE EVIDENCE IS MATERIAL EITHER TO GUILT OR THE PUNISHMENT. KOPYCINSKI V. SCOTT, 64 F.3D 223,225 (5TH CIR.1995) (CITING BRADY V. MARYLAND, 373 U.S. 83, 87, 83 S.Ct. 1174,1197, 10 L.ED.2D 215 (1963)). THIS INCLUDES EVIDENCE THAT MAY BE USED TO IMPEACH A WITNESS'S CREDIBILITY. SEE ID. (CITING UNITED STATES V. BAGLEY, 473 U.S. 667, 676, 105 S.CT.3375,3380, 87 L.ED.2D 481 (1985))."[E]VIDENCE IS MATERIAL ONLY IF THERE IS A REASONABLE PROBABILITY THAT, HAD THE EVIDENCE BEEN DISCLOSED TO THE DEFENSE, THE RESULTS OF THE PROCEEDINGS WOULD HAVE BEEN DIFFERENT." BAGLEY, 473 U.S. AT 682, 105 S.CT. at 3383-84; SEE ALSO KOPYCINSKI, 64 F.3D AT 235-36: IF THE PROSECUTION WITHHOLDS EVIDENCE THAT SATISFIES THE ABOVE DEFINITION OF MATERIALITY, THEN HARMLESS ERROR ANALYSIS IS IN APPOSITE AND HABEAS RELIEF IS WARRANTED. SEE KYLES V. WHITLEY, 514 U.S. 419, 435, 115 S.CT. 1555,1556, 131 L.ED.2D 490 (1995)."

The state's witness testified that he was notified by phone by a confidential informant that applicant was in a certain location driving a certain vehicle and had a pending arrest warrant. That he confirmed the arrest warrant by contacting dispatch. This was the only reason they were legally allowed to forcefully stop and arrest applicant at gun point, was to execute this arrest warrant. Vol.4 P.16

L.5-8. Therefore, the authority is based upon the confirmation by the dispatcher that is listed on the dispatch log. Applicant contends that it was not until after applicant was arrested at gun point that dispatch confirmed the arrest warrant. Therefore, this dispatch log is exculpatory evidence. This dispatch log can prove the stop, arrest and inventory search of the vehicle and confiscation of the gun were all illegal products of the fourth amendment violation. This dispatch log could have also been used to impeach the credibility of each of the state's witnesses. Bagley, supra at 3380. Whether this dispatch log is exculpatory evidence can easily be determined. Simply compare the video of the stop which has a digital time displayed on it, to the time on the dispatch logs dated 2-16-12 between the hours 1PM-4PM each communication is listed word for word with both the time and date. Applicant's father has tried to obtain this through freedom of information act with "no response." See attached Ex. M. This dispatch log will verify that all the state's witnesses testified falsely, as such this log could have been used to impeach the credibility of all but one of the state's witnesses. This satisfies the materiality requirement. Id at 3380. This establishes the materiality of this evidence. Pyles v. Johnson, supra at 998. Furthermore, the results of the proceedings would have been different had these logs been disclosed. Bagley, supra at 3380.

Next is the fact that the prosecutor did not disclose the fact that the Brazos Co. Sheriff's Dept. did not have a evidence control system covering the time from arrest until trial. This evidence could have been used to establish the video was inadmissible as evidence "no chain of custody. Cuba v. State, Supra at 735. Also it could have been used to discredit the admissibility of the gun and jacket. Also to further establish the mandatory policy was not followed thereby establishing additional incidents of BAD FAITH. This would establish that the inventory search was nothing more than a search for criminal evidence. Because the inventory search was illegal. See Colorado v. Bertine, supra at 742-743. As such the gun and jacket would have been ruled inadmissible. No gun no trial. This unambiguously establishes the materiality of this evidence. Pyles v. Johnson, supra at 998.

Additionally the state withheld the audio recording that the investigating prosecutor made of "his" interview with Ms. Campbell. This recording could have been used to establish that the prosecutor illegally used it to impeach her testimony at trial during cross-examination. This will establish the prosecutor committed the criminal act of witness tampering. Tex.P.C.§36.05. Applicant was entitled to have the use of this evidence 20 days before trial. Tex.C.C.Proc. Rules 38.22(3)(a)(5),

49

and 39.14. This undiscovered and undisclosed evidence has been used to discredit the only defense. The recording could have been used to rehabilitate the credibility of applicant's only witness. Had this witnesses' testimony been believed applicant would have been found not guilty. For these reasons this writ should be granted and a new trial ordered.

## PRAYER

Applicant prays that this Honorable Court will hold all proceedings deal with this 11.07 in abeyance until applicant's request to transcribe the missing regaining portions of the mandatory Court Reporter's records are transcribed and supply to applicant at a reasonable cost. Then allow applicant to supplement his 11.07. Applicant also prays that an evidentary hearing will be ordered at which time applicant will be allowed to fully develop the record regarding the factual basses of each of his claims. That applicant's writ in all things be granted thereby ordering a new trial. It is so prayed.

I, Dave Greer TDCJ-ID# 1829754, presently incarcerated in the Texas Department of Criminal Justice Institutional Division at the Wayne Scott Unit, in Brazoria County, Texas declare under the penalty of perjury that the facts in this memorandum of law are true and correct to the best of my belief.

My date of birth is _12-22-66_.

EXECUTED on this ___30th___ day of ___JUNE___, 2015.

Under both Federal Law (28 U.S.C. §1746) and state law (V.A.C.Civ. Prac. & Rem. Code §132.002-132.003)

Respectfully submitted,

Dave Greer #1829754
Wayne Scott Unit
6999 Retrieve Rd.
Angleton, Texas 77515

## CERTIFICATE OF SERVICE

I, hereby certify that a true and correct copy of this memorandum has been sent to the criminal District Attorney addressed to: Mr. Jarvis Parsons, 300 E. 26 Street, Suite 310, Bryan, Texas 77803, by placing a true and correct copy in the U.S. Mail postage paid on this ___30th___ day of ___JUNE___, 2015.

Dave Greer

# APPLICANT'S EXHIBIT LIST

EX. A. AFFIDAVIT OF MS. GROSS VERIFYING THE EX PARTE COMMUTATIONS BETWEEN THE JUDGE, PROSECUTOR AND DELIBERATING JURY ON 11-14-12.

EX. B-1. LETTERS TO APPLICANT'S TRIAL ATTORNEY SEEKING TO REVIEW THE VIDEO BEFORE TRAIL SO HE CAN DECIDE TO TAKE THE STATE'S PLEA OFFERS. FIRST ONE ON 5-23-12.

EX. B-2 """"""". ON 8-4-12

EX. B-3 """"""". ON 8-26-12

EX. B-4. """"""". ON 9-16-12 PAGE 1.

EX. B-4-A. """"""". PAGE 2.

EX. B-5. """"""""". ON 9-30-12

EX. C-1. COPY OF LETTER FROM OPEN CUSTODIAN AT BRAZOS CO. SHERIFF'S DEPARTMENT.

EX. C-2. """ COPY OF JAIL VISITATION LOG, PAGE 7.

EX. C-3. """ COPY OF VISITATION LOG. PAGE 6.

EX. D-1. WARNING BY MAGISTRATE ON 5-19-12.

EX. D-2. WARNING BY MAGISTRATE ON 5-15-12.

EX. E. A COPY OF NOTE TO TRIAL ATTORNEY DURING TRIAL IN EFFORTS TO HAVE HIM MAKE AN OBJECTION.

EX F. FREEDOM OF INFORMATION REQUEST FOR COPY OF THE GRIEVANCE THAT WAS FILED AGAINST JAILER LAKETH McKINNEY.

EX. G. BRAZOS COUNTY SHERIFF'S OFFICE CUSTODIAN OF RECORDS RESPONSE.

EX. H. DISTRICT CLERK'S RESPONSE W/LAKETH McKINNEY'S ACTIVE CAUSE NO.'S.

EX. I-1. BRYAN EAGLE NEW PAPER CLIPPING.

EX. J. LETTER TO APPELLATE ATTORNEY ASKING HER BRING UP SPECIFIC ISSUES ON MOTION FOR NEW TRIAL.

EX. K. LETTER FROM ATTORNEY RICHARD WETZEL TO THOMAS BLANCHARD, INFORMING HIM WHAT GROUNDS OF ERROR TO FILE ON 11.07. ON THE BACK IS A LETTER TO APPLICANT INFORMING HIM ABOUT THE OPEN INVESTIGATION ON BRAZOS COUNTY SHERIFF DEPARTMENT'S LACK OF EVIDENCE CONTROL SYSTEM.

EX. L AFFIDAVIT FORM KENNETH GREER.

EX. M-1. FREEDOM INFORMATION REQUEST FOR DISPATCH LOGS.

EX. M-2. CERTIFIED MAIL RECEIPTS FOR FREEDOM OF INFORMATION REQUESTS.

EX. N. FREEDOM OF INFORMATION REQUEST FOR AUDIO RECORDING OF MONISHIA ON 11-13-12.

6/25/2015
Kimberly Gross
5177 Julie Circle
Bryan, Texas 77807

AFFIDAVIT

I'm over 18 years old, and I base this statement on my personal knowledge:

!. The D.A. set up the video projection with his personal lap top and he was the only person with control of it.

2. During jury deliberation everyone was removed from the courtroom so the jury could watch the DVD and the D.A. stayed to operate his computer.

3. Mr. Greer was in a holding cell in the back of the courtroom.

4. The Attorney (Mr. Gray) was not present in the courtroom.


Sincerely;


Kimberly Gross

*Kimberly Gross* (signature)

Joe Ray Bewley
June 26. 2015
Brazos CO, Texas

Notary stamp: Joe Ray Bewley — NOTARY PUBLIC STATE OF TEXAS — Commission Expires 04-17-2016

EX. A

EARL GRAY Atty at Law  
102 North MAIN  
Bryan TX 77801          5-23-12

DAVE D GREER  
1835 Sandy Point  
Bryan TX 77807  
Attorney  
File  
Atty

Mr Gray  
I'm glad to have you appointed to my case. You've represented several friends or family of mine & I've not heard of any complaints.

At this time I'm requesting you to exercise my Right to a Examing Trial & to a speedy trial.

I'm also requesting you to file a Motion 4 Discovery ASAP explicitly requesting All DVD's from the 12 S.O. cars that where present at Gates Creek & Briarcrest stop on 2-16-12 & All DVD's from th 9 SO cars present on 5-16-12 at Cater Creek & Melton St as well as the chain of custody And Information pertaining to this alleged Mtr Ven.

I sincerely hope we can Dispose of this case PRE-Inditment!

Also at this time I Do give your permission to Discuss my case w/ Kenneth or Annette Greer & Mershia Renee Campbell. My Father, Mother & Common Law Spouse/ My Co-Defendant.

I'm looking forward to a Visit w/ y at your earliest convenience to Discuss this case in Detail.

Be Advised I've Also been charge w/ a theft out of Burelison Co and would appreciated Any & All Information you can obtain on that. Because thats all I Know about in myself

EX. B-1

Respectfully  
DAVE Greer

Mr Earl Gray
103 N Main St
Bryan TX 77803          8-4-12

Mr. Earl Gray

Sir, As of yet, I've not received any word from you much less any copies of the motions you're supposed to have filed, as per my request, on my behalf.

Please, you or your staff send me a complete copy of your work product pertaining to any my case, A.S.A.P. so I can review it prior to my next court date of 8-13-12

EX. B-2

EARL GRAY ATTY
103 N MAIN St
BRYAN TX 77803

DAVE GREER
1835 SANDPOINT RD
BRYAN TX 77807

8-26-12

Mr Gray,

1. Sir, Have you Received my Discovery pkg?
2. Please send me copies.
3. When can I View the "Videos"?
4. What's Probable Cause fu the Traffic Stop?
5. When's my Next Court Date and what's taking so long to set one?

Thank you for your time
    Sincerely

Dave Greer

EX. B-3

EARL GREY Atty                          DAVE GREER
103 N. MAIN ST                          1835 SANDPOINT RD

BRYAN TX 77809                          BRYAN TX 77809

                    9-16-12              cc & Home
                                         Atty
   Mr GREY                               File


        SIR, I'VE NOT RECEIVED ANY RESPONCE
   FROM YOU OR YOUR OFFICE, CONCERNING,
   MY LAST LETTER TO YOU ON 8-26-12.
        DO YOU EMPLOY A INVESTIGATOR TO
   FLESH OUT THE FACT'S OF A CASE?
        HAVE YOU RECEIVED MY DISCOVERY PACKAGE?
        WHEN CAN I VERW THE VIDEOS? EXPLICELY
   THE ONES FROM DEPUTY FECKEYS CAR ON
   2-16-12? WHAT WUZ PROBABLE CAUSE FOR THAT
   STOP?
        WHAT IS BRAZO County ADMINISTRATIVE
   DIRECTIVES AND RULES CONCERNING A "INVENTORY
   SEARCH"? HAS A INVENTORY LIST BEEN PRODUCED?
        PLEASE SEND ME A COPY OF WHREN Ver OLD SC
   OR THE NEWEST SC CASE'S WITH CONTROLLING
   PRECEDENT ON INVENTORY SEARH'S.
        MONISHA CAMBELL WAS IN ROBERTSON Co Any
   ON A UNRELATED CHARGE. BUT HAS MADE BOND
   ON FEB 16-12 SHE WUZ BOOKED INTO THIS
   JAIL WEARING ANOTHER 1x LEATHER JACKET.
   ALSO WHILE SHE WUZ IN BRAZOS Co JAIL
   AT THAT TIME, SHE WUZ INTERVEIWED BY
   SGT TRAVIS HINES, BRYAN P.D. THAT INTERV

                    EX. B-4

CW02 RECORDED BY OFFICER HINES. YOU WILL FIND THAT CONVERSATION VERY INFORMATIVE AS WELL AS HELPFULL WITH MY CASE.

IN YOUR OPINION, DOES THE "AFFIRMITIVE LINKS DOCTRINE PERTAIN TO POSSESSION OF A FIREARM?

ALSO, WHATS YOUR OPINION AS TO BENCH TRIAL OR JURY?

IN NO WAY DO I WISH TO SLOW THE MOMENTUM OF MY CASE.

MY HEALTH IS FAILING AND THEY MAY WANT TO AMPUTATE ONE OF MY LEGS...

ANYWAY... I'VE TRYED TO INTERVEIW SEVERAL OTHER ATTORNEYS.. FOR A SECOND OPINION, BUT NONE WILL COME to SEE ME WITH OUT YOUR PERMISSION

STILL PATIENTLY AWAITING A RESPONCE

DAVE GREER

EARL GREY Atty @ Law
103 N Main St
Bryan Tx 77603

Dave Greer
1835 Sandy Point Rd
Bryan Tx 77807

9-30-12

Mr Grey,

I've been requesting you to obtain the videos from both traffic stops. Starting @ 5-26-12 I've made this request at least once a month. On 8-13-12 I even asked the female visiting Judge. Your verbal request to the DA's office for these videos, is now a part of the written record.

I feel very disappointed and uncomfortable with the belief that I have to protect myself from both the state and my own counsel.

But nevertheless, in the event you allow me to be convicted, I need these "request" to be a tangible part of the official record.

So, once again I'm requesting you to file a defendant amended motion for discovery & inspection explicitly asking for all videos from all sheriffs car present @ both traffic stops. (By law if emergency lights are on car cameras are to be recording), as well as Brazos Co. Sheriffs office written policy & procedures pertaining to inventory searches, and all inventory list of contents of vehicle.

As you may know, Brazos Co. Jail does not allow access to a law library to any inmate that have a attorney of record. I do believe you have mis stated law to me on several occasions

EX. B-5



# BRAZOS COUNTY OFFICE OF THE SHERIFF
# CHRISTOPHER C. KIRK

W. JAMES STEWART, CHIEF DEPUTY
WAYNE DICKY, JAIL ADMINISTRATOR

1700 WEST STATE HIGHWAY 21
BRYAN, TEXAS 77803-1300

Kenneth Greer
5177 Julie Circle
Bryan, Texas 77807

Mr. Greer,

I received your Open Records Request for the attorney visits on David D. Greer between the dates of 10/29/2012 and 12/07/2012. We did not list the attorneys separate in the computer at that time. I am enclosing a list of visits with all of the other visits and personal information redacted that was prepared by our County Attorney.

Hope you find this helpful,

Sgt. Pechacek
Custodian of Records
Brazos County Sheriff's Office

 


26619800 GREER, DAVID DUANE

| DATE | TIME | VISITOR | OFFICER |
|------|------|---------|---------|



10/26/12 17:40 GRAY, EARL R.
103 N. MAIN STREET
BRYAN, TX 77803

11/09/12 12:29 GRAY, EARL R.
103 N. MAIN STREET
BRYAN, TX 77803

EX. C-2

26619800 GREER, DAVID DUANE

DATE     TIME        VISITOR



09/24/12  15:55      GRAY, EARL R.
                     103 N. MAIN STREET
                     BRYAN, TX 77803

STATE OF TEXAS

COUNTY OF BRAZOS

ORIGINAL

§
§
§

WARNING BY MAGISTRATE

WARNING #: 427138

THIS IS TO CERTIFY THAT I, ROSE JONES IN THE CAPACITY OF MAGISTRATE DID, ON 05/19/12 ____:____ am/pm AT BCDC ADMINISTER THE WARNINGS REQUIRED BY ARTICLE 15.17 OF THE TEXAS CODE OF CRIMINAL PROCEDURE TO:

NAME: DAVID DUANE GREER

ADDRESS: 5177 JULIE CIR, BRYAN, TX 77807

PHONE: 979-595-3511

PID NO.: 26619800

DOB(AGE): 12/22/66

D L/I D NO: TX-08609286

WHO APPEARED BEFORE ME IN BRAZOS COUNTY, TEXAS. SPECIFICALLY, I INFORMED THIS PERSON AS FOLLOWS:

1. THE ACCUSATION AND ANY AFFIDAVIT CHARGES YOU WITH THE OFFENSE(S) OF:

| Warrant Number | Charge | Bond Amount | Bond Type | Warning # |
|---|---|---|---|---|
| 12-04020-02 | BURLESON CO/WRNT/THEFT OF PROP $1500<$20000/TTY | $0.00 | NB | 427138 |

2. IF YOU ARE CHARGED WITH ANY FELONY OFFENSE, YOU HAVE THE RIGHT TO AN EXAMINING TRIAL;

3. YOU HAVE THE RIGHT TO REMAIN SILENT AND MAKE NO STATEMENT AT ALL. ANY STATEMENT YOU MAKE MAY BE USED AS EVIDENCE AGAINST YOU AT YOUR TRIAL;

4. IF YOU CHOOSE TO MAKE A STATEMENT, YOU MAY TERMINATE THE INTERVIEW AT ANY TIME;

5. YOU HAVE THE RIGHT TO HAVE A LAWYER PRESENT TO ADVISE YOU PRIOR TO AND DURING ANY QUESTIONING OR INTERVIEW WITH PEACE OFFICERS OR ATTORNEYS REPRESENTING THE STATE;

6. IF YOU ARE UNABLE TO EMPLOY A LAWYER, YOU HAVE THE RIGHT TO HAVE A LAWYER APPOINTED TO COUNSEL WITH YOU PRIOR TO AND DURING ANY SUCH QUESTIONING OR INTERVIEW;

7. IF YOU WISH TO REQUEST A COURT-APPOINTED ATTORNEY:

   a. YOU MUST COMPLETE A WRITTEN APPLICATION UNDER OATH FOR A COURT-APPOINTED ATTORNEY;

   b. THE APPLICATION MUST CONTAIN SUFFICIENT FINANCIAL INFORMATION TO ENABLE A JUDGE TO DETERMINE IF YOU ARE INDIGENT;

   c. REASONABLE ASSISTANCE WILL BE PROVIDED TO COMPLETE THE APPLICATION, IF NEEDED;

8. A REQUEST FOR A COURT-APPOINTED ATTORNEY WILL BE DETERMINED WITHIN THREE (3) WORKING DAYS AFTER THE REQUEST IS RECEIVED IF YOU REMAIN IN JAIL AND DO NOT BOND OUT OF JAIL;

9. IF YOU ARE FOUND TO BE INDIGENT AND AN ATTORNEY IS APPOINTED, THE ATTORNEY WILL ATTEMPT TO CONTACT YOU BY THE END OF THE NEXT WORKING DAY AFTER BEING APPOINTED.

THE ACCUSED __ DOES __ DOES NOT WANT TO REQUEST A COURT-APPOINTED ATTORNEY.

10. THE COURT FINDS THAT PROBABLE CAUSE __ DOES __ DOES NOT EXIST IN THIS MATTER.

11. IF YOU ARE NOT A U S CITIZEN, DO YOU WANT YOUR CONSULATE TO BE NOTIFIED? __ NO, __ YES.

COUNTRY? _____

WITNESSES: _S— M. Holy 273_ _____

DEFENDANT: **X**

Distribution: __ Court, __ Defendant, __ Magistrate, __ Jail

JUSTICE OF THE PEACE, PRECINCT 4



Form # 5015 Warning by Magistrate

EX. D-1

STATE OF TEXAS **ORIGINAL** § WARNING BY MAGISTRATE

COUNTY OF BRAZOS § WARNING #: 426596

THIS IS TO CERTIFY THAT I, ROSE JONES IN THE CAPACITY OF MAGISTRATE DID, ON 05/15/12, ____:____ am/pm AT BCDC ADMINISTER THE WARNINGS REQUIRED BY ARTICLE 15.17 OF THE TEXAS CODE OF CRIMINAL PROCEDURE TO:

**NAME:** DAVID DUANE GREER

**ADDRESS:** 5177 JULIE CIR, BRYAN, TX 77807

**PHONE:** 979-595-3511

**PID NO.:** 26619800

**DOB(AGE):** 12/22/66

**D L/I D NO:** TX-08609286

WHO APPEARED BEFORE ME IN BRAZOS COUNTY, TEXAS. SPECIFICALLY, I INFORMED THIS PERSON AS FOLLOWS:

1. THE ACCUSATION AND ANY AFFIDAVIT CHARGES YOU WITH THE OFFENSE(S) OF:

| Warrant Number | Charge | Bond Amount | Bond Type | Warning # |
|---|---|---|---|---|
| H-02434-F | UNL POSS FIREARM BY FELON | $50,000.00 | SC | 426596 |
| ONSITE | JP22/OPER UNREG MOTOR VEHICLE | $600.00 | JPS | 426599 |
| 03329636 | PAROLE VIOLATION/BL/WRNT/TTY | $0.00 | NB | 426623 |

2. IF YOU ARE CHARGED WITH ANY FELONY OFFENSE, YOU HAVE THE RIGHT TO AN EXAMINING TRIAL;

3. YOU HAVE THE RIGHT TO REMAIN SILENT AND MAKE NO STATEMENT AT ALL. ANY STATEMENT YOU MAKE MAY BE USED AS EVIDENCE AGAINST YOU AT YOUR TRIAL;

4. IF YOU CHOOSE TO MAKE A STATEMENT, YOU MAY TERMINATE THE INTERVIEW AT ANY TIME;

5. YOU HAVE THE RIGHT TO HAVE A LAWYER PRESENT TO ADVISE YOU PRIOR TO AND DURING ANY QUESTIONING OR INTERVIEW WITH PEACE OFFICERS OR ATTORNEYS REPRESENTING THE STATE;

6. IF YOU ARE UNABLE TO EMPLOY A LAWYER, YOU HAVE THE RIGHT TO HAVE A LAWYER APPOINTED TO COUNSEL WITH YOU PRIOR TO AND DURING ANY SUCH QUESTIONING OR INTERVIEW;

7. IF YOU WISH TO REQUEST A COURT-APPOINTED ATTORNEY:

   a. YOU MUST COMPLETE A WRITTEN APPLICATION UNDER OATH FOR A COURT-APPOINTED ATTORNEY;

   b. THE APPLICATION MUST CONTAIN SUFFICIENT FINANCIAL INFORMATION TO ENABLE A JUDGE TO DETERMINE IF YOU ARE INDIGENT;

   c. REASONABLE ASSISTANCE WILL BE PROVIDED TO COMPLETE THE APPLICATION, IF NEEDED;

8. A REQUEST FOR A COURT-APPOINTED ATTORNEY WILL BE DETERMINED WITHIN THREE (3) WORKING DAYS AFTER THE REQUEST IS RECEIVED IF YOU REMAIN IN JAIL AND DO NOT BOND OUT OF JAIL;

9. IF YOU ARE FOUND TO BE INDIGENT AND AN ATTORNEY IS APPOINTED, THE ATTORNEY WILL ATTEMPT TO CONTACT YOU BY THE END OF THE NEXT WORKING DAY AFTER BEING APPOINTED.

THE ACCUSED __ DOES __ DOES NOT WANT TO REQUEST A COURT-APPOINTED ATTORNEY.

10. THE COURT FINDS THAT PROBABLE CAUSE ___ DOES ___ DOES NOT EXIST IN THIS MATTER.

11. IF YOU ARE NOT A U S CITIZEN, DO YOU WANT YOUR CONSULATE TO BE NOTIFIED? ___ NO, ___ YES.

COUNTRY? _____

WITNESSES: _____

DEFENDANT: X _____

Distribution: __ Court, __ Defendant, __ Magistrate, __ Jail

_____
JUSTICE OF THE PEACE, PRECINCT 4

**EX. D-2**

Young ?

I Do Not Own Truck
Not Registered 2 me
My Fathers Truck
Not my Jacket or Vehicle

ok — every in your name ? No
Gun found on 2-16-12   83 DAYS LASO
Affidavit by young Sworn in 5-14-12
Tinted windows
Bryan PD Warrant Not S.O.

I Requested JAG Towing

My Camo Jacket in Truck
    LEDESMA ?  CANT TRY on JACKET
WHO Informant

Arrested on 5-14 Not that DAY
Any Corroborating of Informant

Black Jacket listed on Inventory But No Camo

    Milliner ?
Gay Ass Punk   EX. E
Video in JAIL 24/7   OVER

Date: 2-3-15

To: Records Access Officer
    Minimum Security Jail (MSJ)
    1835 Sandy Point Road
    Bryan, Texas 77897

From: Kenneth Greer
      5177 Julie Circle
      Bryan, Texas 77807

Re: Freedom of Onformation Law Request

Records Access Officer:

Under the provision of the Texas Freedom of Information Law, Government
Code Ann. § 552.00@, I request the following:

1. Step 1 grievance forms filed by Steve Austin against Laketh McKinney
   from 2012 where David D. Greer was a witness.
2. Step 2 grievance forms filed by Steve Austin against Laketh MvKinney
   form 20123where David D. Greer was a witness.

As you know the Freedom of Information Law requires that an agency respond
within five business days of receipt of a request, therefore I would appreciate
a response as soon as possible and look forward to hearing from you soon. If
for any reason any portion of my request is denied, please inform me in writing
of the reason for denial and provide me the name and address of the person to
whom an appeal should be directed.

Sincerely,

Kenneth Greer
5177 Julie Cr.
Bryan, Texas 77807

EX. F



# BRAZOS COUNTY OFFICE OF THE SHERIFF
# CHRISTOPHER C. KIRK

W. JAMES STEWART, CHIEF DEPUTY
WAYNE DICKY, JAIL ADMINISTRATOR

1700 WEST STATE HIGHWAY 21
BRYAN, TEXAS 77803-1300

Kenneth Wayne Greer
5177 Julie Circle
Bryan, Texas 77807

03/09/2015

Dear Mr. Greer,

I have received your request for records concerning grievances filed by Steve Austin against Laketh McKinney. I have been advised by Assistant District Attorney John Brick that I cannot release these records due to the criminal case filed against Laketh McKinney still pending.

Sincerely,

*Sgt. Pechacek*

Sgt. C. Pechacek
Custodian of Records
Brazos County Sheriff's Office

 


Brazos County



**Marc Hamlin**
*District Clerk*

300 E. 26th St., Suite 1200
Bryan TX 77803
(979) 361-4230

Kenneth Greer

5177 Julie Circle

Bryan, Texas 77807

Regarding: <u>Cause Number 01-3458 & 13-03704-CRF-361</u>

Mr. Greer,

Your request for copies of said "Final Conviction" for Cause #01-3458 is enclosed, however our records show that regarding Cause# 13-03704-CRF-361 is still an Active case so we will not have a Final Conviction. Please know that you may follow the case documents on our website: http://justiceweb.co.brazos.tx.us and retrieve copies if needed.

We apologize for any inconvenience this may have caused.

Thank you,

District Clerk Office

EX. H

# Sheriff: Jailer had sex with inmate

**BY BROOKE CONRAD**
brooke.conrad@theeagle.com



MCKINNEY

A Brazos County detention officer was fired Wednesday after he was arrested on charges of having sexual relations with an inmate since mid-April, officials said.

Brazos County Sheriff Chris Kirk launched an internal investigation in

May after a report that Laketh Bernard McKinney Sr., 36, was bringing contraband into the jail. While the inmate was interviewed about the contraband — pornographic materials — he told authorities about his and McKinney's sexual encounters that occurred on at least four different occasions, Kirk said.

According to an arrest report, the inmate told police that the first encounter occurred when McKinney asked to see him naked, the report states. The inmate said he eventually exposed himself to the jailer and McKinney told the inmate that he could watch a movie on McKinney's cellphone.

While in the mattress room — a locked area without surveillance that is used for mattress and general storage — the inmate said McKinney began to perform a sex act on him.

During the course of the investigation, the inmate was asked if he would be willing to testify about the

See **JAILER**, Page A8

incidents. The report states that the inmate was hesitant because he did not want his name in the media.

Though the inmate said the sexual encounters were consensual, Kirk said, the inmate remains a victim.

"It's inappropriate behavior to have a personal relationship with an inmate," he said. "It's criminal activity for an officer to have sexual relations with an inmate. Whether the inmate wanted to be involved or not, it doesn't matter."

Kirk did not release the age of the inmate or his criminal charges to protect his identity. Kirk did confirm, however, that the inmate is a non-violent offender.

McKinney, a Brazos County jailer since April 2011, was suspended without pay on May 31 while authorities continued to investigate the case.

Investigators requested that the inmate call McKinney and get him to talk about the sex acts, to which the inmate agreed.

According to the report, the inmate said McKinney was "being very cautious" because the two had previously discussed the internal investigation. McKinney asked the inmate during a phone call that they communicate via letters instead.

Investigators listened to a later phone call between McKinney and the inmate that is described as "very personal in nature" in the report.

On May 31, the inmate agreed to have a recording device placed on him, and a face-to-face conversation between him and McKinney lasting more than an hour was recorded.

The report states the conversation was difficult to hear, but at one point McKinney asked if their relationship would continue after the inmate got out of jail. The inmate responded that it would.

When McKinney was asked during the investigation why an inmate would be calling his cellphone from the jail, McKinney said the inmate was dating his cousin. He also said that the inmate had asked him for oral sex, but he stated he did not participate.

A letter addressed to the inmate was intercepted for the investigation on May 31. According to the report, the letter states, "Your smile is electrifying, your knowledge is power, your eyes are captivating, your body and all about you are breath taking [sic]. You are the missing piece of

your touch, your swag, and your presence. It has been hard, but I will make it through this. Can't wait for the total experience with you and just so you know I can take all of you ...LOL!... I love you [inmate's full name] and there is nothing you can do about that."

It was verified through the postal service on June 4 that the letter came from McKinney's address.

The former jailer was served a warrant early Wednesday. He was arrested and charged with violation of civil rights of a person in custody by sexual contact, a state jail felony. He was released from jail later Wednesday morning after posting $10,000 bond.

According to McKinney's Facebook profile, he is the pastor of Cedar of Lebanon Church of God in Christ off Texas 60 in College Station, and is married with two children.

Wednesday afternoon McKinney updated his Facebook status to read "Hello my facebook family and friends!! Just know that the devil is busy! Full of lies!! Don't believe what you see!! God is in control!! Victory is mine in Jesus name!!!"

Several people commented on the post, offering their prayers and support.

Attempts to reach McKinney via email were not immediately returned Wednesday.

According to Brazos County records, McKinney was arrested in 2001 for theft between $500 and $1,500. The case was later dismissed.

Kirk said the jail's hiring process includes an extensive background check and both personal and work references.

"We were aware of the previous arrest," Kirk said. "The case was dismissed and he came in with a reasonable explanation, so given all the other background that we had, the decision was made to hire him."

Kirk said there is no reason to believe that McKinney and the inmate had a relationship outside the jail, or that McKinney had sexual encounters with other inmates.

"We certainly are embarrassed by this to have occurred in our jail," Kirk said. "I think we trusted someone that wasn't worthy of our trust but nevertheless the act was carried out ... As soon as we got the warrant we fired him and turned him over for arrest. We've got a lot of good people that work here. I hope no one uses a broad brush to paint them all. We had a bad apple and we removed it. We will continue to do our job

EX. I

Mary B Hennessy Atty
PO Box 2536
Brenham Tx
77834                    12-28-12

Ms. Hennessy,
    I'm sorry for your inconvenience, and the fact we've
not had a face to face visit. Thank you for your attempt
    In the event I'm benchwarranted back to either
Burleson or Brazos Co., or when I'm shipped from
this unit, myself or my family will let you
know. I do grant you permission to speak freely
and openly with my family. Please keep Kenneth
and Annette Greer, and Kimberly Gross in the loop.
    Enclosed is the "only copies" I have, of my
actual notes from trial (red ink), and three letters
date 8-26-12, 9-16-12, & 9-30-12, to my trial counsel
Mr Earl Grey. These letters set the stage of
our client-Atty relationship.
    Would you please make copies of these enclosed
notes and letters and return them to me?
    The two main issues I need introduced
through the motion for trial, to preserve for
the written appellet record, are; the fact I was
never allowed to review the video. period. The
only time I've seen any portion of it was
during trial. And then only the re-dacted
versoin. If I could've reviewed the DVD prior
to trial I may have excepted the 5 yr plea offer
How could I make a informed descion without
personally seeing the discovery & DVD?
    Also Mr Grey would not allow me to
try on the 1x leather jackett. Ma'am I
weigh 220 pounds. I've not worn a 1x anything

EX. J

**RICHARD E. WETZEL**
ATTORNEY AT LAW

1411 WEST AVENUE, SUITE 100
AUSTIN, TX 78701
(512) 469-7943

Board Certified Criminal Law
And Criminal Appellate Law by
The Texas Board of Legal Specialization

(512) 474-5594 - fax
wetzel_law @1411west.com
www.TexasCriminalAppealsLawyer.com

January 21, 2014

Thomas Blanchard
1841613 — *TDC#*
1800 Luther Dr.
Navasota, TX
77868

Re: Your Appeal

Dear Mr. Blanchard:

Thank you for your letter of January 12, 2014. I will file the dismissal form and let you know when it is granted. You cannot file a writ until the mandate issues. I will let you know when that happens.

On your habeas application, I would allege multiple grounds: Prosecutorial misconduct for hiding the absence of a control system; Ineffective counsel for failing to discover the absence of a system; and newly discovered evidence of the lack of a control system.

I will keep you advised of the status of your appeal. Thank you for your attention and cooperation in this matter.

Sincerely,

Richard E. Wetzel
Attorney at Law

**EX. K**

*OVER*

# General Affidavit

STATE OF TEXAS
COUNTY OF BRAZOS

1. ON 2-16-2012 BRAZOS Co. Sheriffs office had my TRUCK TOWED THAT WAS being driven by DAVE GREER.

2. ON 5-14-12 DAVE WAS stopped by BRAZOS Co. Sheriffs office. This Time I WAS Allowed To TAKE possession of My TRUCK

Personally came And Appeared before me, The undersigned Notary, The within named KENNETH W. GREER, who is A Resident of BRAZOS County, STATE of TEXAS AND makes This his STATEMENT AND GENERAL Affidavit upon oath AND AFFIRMATION of belief AND personal Knowlege That The Facts set Forth Above Are TRUE AND CORRECT To The best of his Knowledge.

DATED The 5 day of may 2015

SIGNATURE OF AFFIANT
Kenneth W Greer

SWORN & subscribed before me
This day of 5-5-15

Joe Ray Bewley
Notary Public



Joe Ray Bewley
Commission Expires
04-17-2016

My Commission Expires 4-17-16

EX. 1

Date: 2-3-15

To: Record Access Officer
    Brazos County Sheriff's Department
    1700 Hwy. 21 West
    Bryan, Texas 77807

From: Kenneth Greer
      5177 Julie Cr.
      Bryan, Texas 77807
      (979)823-9200

Re: Freedom of Information Law Request

Records Access Officer:

Under the provision of the Texas Freedom of Information Law, Government Code Ann. § 552.001, I request the following information;

1. Unredacted video from the patrol vehicle that recorded the incident from 2/16/12.

2. Trnascript of the video from the patrol vehicle that recorded the incident from 2/16/12.

3. Recording from the Brazos County Sheriff's dispatcher from the incident of 2/16/12.

4. Transcript of the Brazos County Sheriff's dispatcher from the incident of 2/16/12.

As you know, the Freedom of Information Law requires that an agency respond to a request within five business days of receipt of a request, therefore, I would appreciate a response as soon as possible and look forward to hearing from you shortly. If for any reason any portion of my request is denied, please inform me of the reason for denial and provide the name abd address to whom an appeal should be directed, in writing.

Sincerely,

Kenneth Greer
Kenneth Greer
5177 Julie Cr.
Bryan, Texas 77807

M-1



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

BRYAN TX 77803 OFFICIAL USE

| Postage | $ | $0.49 |
| Certified Fee | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $3.79 |

Postmark Here
MAR - 3 2015
03/03/2015

Sent To

Street & Apt. No., or PO Box No.

City, State, ZIP+4

PS Form 3800, July 2014        See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

BRYAN TX 77807 OFFICIAL USE

| Postage | $ | $0.49 |
| Certified Fee | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $3.79 |

Postmark Here
MAR - 3 2015
03/03/2015

Sent To

Street & Apt. No., or PO Box No.

City, State, ZIP+4

PS Form 3800, July 2014        See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

BRYAN TX 77803 OFFICIAL USE

| Postage | $ | $0.49 |
| Certified Fee | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $3.79 |

Postmark Here
MAR - 3 2015
03/03/2015

Sent To

Street & Apt. No., or PO Box No.

City, State, ZIP+4

PS Form 3800, July 2014        See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

BRYAN TX 77807 OFFICIAL USE

| Postage | $ | $0.49 |
| Certified Fee | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $3.79 |

Postmark Here
MAR - 3 2015
03/03/2015

Sent To

Street & Apt. No., or PO Box No.

City, State, ZIP+4

PS Form 3800, July 2014        See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

BRYAN TX 77803 OFFICIAL USE

| Postage | $ | $0.49 |
| Certified Fee | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $3.79 |

Postmark Here
MAR - 3 2015
03/03/2015

Sent To

Street & Apt. No., or PO Box No.

City, State, ZIP+4

EX. M-2

Date: 3-3-15

To: Ryan Calvert, Asst. District Attorney
    300 East 26th Street, Ste 310
    Bryan, Texas 77803

From: Kenneth Greer
      5177 Julie Circler
      Bryan, Texas 77897

Re: Freedom of Information Law Request

Records Access Officer:

Under the provision of the Texas Freedom of Information Law, Government
Code Ann. §§ 552.001, I request the following information:

1. Audionrecording of conversation with Monisha Campbell outside of the
   courtroom 11/13/12.

2. Transcript of recording of conversation with Monisha Vampbell outside
   of the courtroom 11/13/12.

As you know, the Freedom of Information Law requires that an agency respond
to a request within five business days of receipt of a request, therefore, I
would appreciate a response as soon as possible and look forward to hearing
from you shortly. If for any reason any portion of my request is denied, please
inform me of the reason for denial in writing and provide me the name and
address to whom an appeal should be directed.

Sincerely,

Kenneth Greer

Kenneth Greer
5177 Julie Cr.
Bryan, Texas 77807

EX. IV

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## APPLICATION FOR A WRIT OF HABEAS CORPUS
### SEEKING RELIEF FROM FINAL FELONY CONVICTION
### UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: Greer, Dave D.

DATE OF BIRTH: 12/22/1966

PLACE OF CONFINEMENT: Wayne Scott Unit 6999 Retriever Rd, Angleton, TX 77515

TDCJ-CID NUMBER: 01829754    SID NUMBER: TX3329636

(1)    This application concerns (check all that apply):

☑ a conviction          ☐ parole

☐ a sentence            ☐ mandatory supervision

☐ time credit           ☐ out-of-time appeal or petition for discretionary review

(2)    What district court entered the judgment of the conviction you want relief from? (Include the court number and county.)

272ND Brazos Co. District Court

(3)    What was the case number in the trial court?

12-03324-CRF-272ND

(4)    What was the name of the trial judge?

TRAVIS BRYAN III

1 of 36 pages

(5) Were you represented by counsel? If yes, provide the attorney's name:

EARL GRAY

(6) What was the date that the judgment was entered?

11-15-12

(7) For what offense were you convicted and what was the sentence?

Unlawfull Possession of Firearm By Felon

(8) If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?

N/A

(9) What was the plea you entered? (Check one.)

☐ guilty-open plea          ☐ guilty-plea bargain
☑ not guilty                ☐ *nolo contendere*/no contest

If you entered different pleas to counts in a multi-count indictment, please explain:

(10) What kind of trial did you have?

☐ no jury                   ☐ jury for guilt and punishment
                            ☑ jury for guilt, judge for punishment

2

Rev. 01/14/14

(11)    Did you testify at trial? If yes, at what phase of the trial did you testify?

_NO_

(12)    Did you appeal from the judgment of conviction?

☑ yes                              ☐ no

If you did appeal, answer the following questions:

(A)  What court of appeals did you appeal to?    _TENTH_

(B)  What was the case number?    _10-13-00049-CR_

(C)  Were you represented by counsel on appeal? If yes, provide the attorney's name:

_MARY HENNESY_

(D)  What was the decision and the date of the decision?    _MARCH 20, 2014_

(13)    Did you file a petition for discretionary review in the Court of Criminal Appeals?

☑ yes                              ☐ no

If you did file a petition for discretionary review, answer the following questions:

(A)  What was the case number?    _#PD-0536-14_

(B)  What was the decision and the date of the decision?    _EXT-TO FILE PDR EXTEND TO FRI. 6/20/2014_

(14)    Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

☐ yes                              ☑ no

If you answered yes, answer the following questions:

(A)  What was the Court of Criminal Appeals' writ number?    _N/A_

3

Rev. 01/14/14

**(B)** What was the decision and the date of the decision?  ___N/A___

**(C)** Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

___N/A___

_____

_____

_____

**(15)** Do you currently have any petition or appeal pending in any other state or federal court?

☐ yes                    ☑ no

If you answered yes, please provide the name of the court and the case number:

_____

**(16)** If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

☐ yes                    ☐ no

If you answered yes, answer the following questions:

**(A)** What date did you present the claim?  _____

**(B)** Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

4

_____

_____

_____

_____

_____

_____

(17)  Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

Rev. 01/14/14

**GROUND ONE:** Applicant is Now Being Denied His Due Process Right to A Complete Copy of The TRIAL Record to Prepare His Post Conviction Collateral Attack.

**FACTS SUPPORTING GROUND ONE:** The Transcription of the Trial Vol. 4. of 6. Page 183. L.14 (Jury Retired for Deliberations.) L 15. (JURY REQUESTED TO VEIW VIDEO.) L 16. (JURY Continued Deliberations) The Record is missing; 1) Jury Note; 2) WHether Counsel is Present; 3) Whether Applicant is Present; 4) What the Judge's Response was also at Vol. 3. P. 173 L. 20 The State had a Critical off the record Discussion at which time Counsel Openly Revealed His Conflict of intrest in representing applicant against the actions of the Brazos Co. Sheriff Dept. is a Voluntary and/or Reserve Deputy. He has had and does activly work with and around all of the State's witness at times his safty and very life depends upon them performing their respective Job in a professional Matter as such he has a deep seated respect

6

Rev. 01/14/14

for each witness. also after trial He will continue to work with and around these witness entrusting his life and safty in their hands. when but not limted to armed and dengerous raid and ride a longs also that he has flashing police lights on his private vehidle, Due to such Has a right to carry a gun and have a badge. Therefore, He has a Conflict of intrest fn represent the best intrest of his Co-workers and to the intrest of all the applicant, In which he is Duty Bound to prove the witnesses acted not only Simply in a unprofessional Manner, but violated applicants constitutional Rights. Proving such could very well open the door to civil suit, Criminal charges. and being fired. Also missing THE Alleged stipulation that a redacted version of the video could be introduled. Vol 4 P34 L12-15. The alleged stipulation that the gun was a firearm Vol.4 P.164. L6-8. Also a copy of the alleged evidence sheet Vol4 P. 156L13-17 without these missing portions of the records applicant can not adequately prepare his post conviction attack.

Rev. 01/14/14

## GROUND TWO:

Applicant was denied his sixth Amendment Rights To Cross-examing the witnesses aganist him.

**FACTS SUPPORTING GROUND TWO:** Officer M. Ficke filled out and prepared the vehicle inventory report, it was vital that applicant cross-examine this method of perparing the report. The next witness that give evidence against applicant that he was driving — C.I. a black Ford Ranger Pick-Up. No other witness testifed that they knew applicant was the Driver of this Truck. Until after he was stopped and ordered out of the truck with guns drawn, applicant needed to cross-examzne this witness to determine how He/she knew applicant was driving this vehicle How far away He/She was when they Identified applicant, How He/she Described applicant, How He/She described the truck. If He/She provided the license plate number. This person was alleged to be a confidential Him/Her. INFORMANT,

YET APPLICANT STILL NEEDED TO CROSS-EXAMINE Him orHer.

Rev. 01/14/14



Rev. 01/14/14

The Prosecutor Denied Applicant A Fair trial in violcation of the 14th amend of the U.S. Court. By using Hypothetical situations which inculded the spelific facts of the case to comm

**GROUND THREE:** The Jurors to the state's Legal theory for Conviction Before any evidence being presented before

## The Actual Trial Began.

**FACTS SUPPORTING GROUND THREE:** The prosecution used the exact facts of the case they were going to use to convict applicant to find Jurors that would convict applicant and struck the ones that would not commit themselves to so Convict. The States theory to convict is that the truck applicant was driving was his and any thing found in his truck Belonged to him E.G. Gun and Jacket. During voir-dire the prosecution set Forth the expct facts and legal theory to all venire persons; Vol. 3 page 41-42 Mr. Calvert: did -- You Drive Your Truck to the court-House Today? — No.37. Yes Sir. Mr. Calvert: It's parked out in the parking Lot? -- No.37 Yes Sir... You didn't bring Your tools into the court-room, did you? -- NO, Sir OKAY- And You said those tool even Though they're in your vehicle, thyre in your possession, Right? -- Yes, Sir, They are... WHY? Do You Think So?... Because they're under my care. I can manage those tools. The prosecutor then went Row by Row P. 42 L 22-24 Jury Members Mr. Cobos Agreed The Jury Forman Agreed: P57 L.6. all Vinire persons that disagreed were struck E.G. 3. P. 45. L. 3. Ms. Bernal. The Prosecutor even if selected Jurors that were willing to convict appicant even if they did not prove He owned the Gun (EXACT FACTS of The case). P.65 Jurors that refused to convict based upon these facts were struck E.G. Ms. Ford (P63 L23) Ms. Wilch P.66 Then he proceeded to pound on the fact that the Truck was applicants when EDUCATEING The Court. Vol 3. P. 166 L R-13 "It was the Defendant's truck" the prosecution from the start of trials "openinc Statment" started reminding Jurors of their comitment by letting" them know it's Applicants truck. Vol 4. P.23 L.6-7 Mr. Greer and Ms. Campbell where cocated together. Theuwere in Mr. Greers truck. He owns IT. The very first state's witness to testify Temy Young, had him testify it was applicants truck Vol 4 P. 34. L. 24-25...

10

You said earlier, there was NO Body else in the defendants Truck, Right? P.35 L.1 A. That's correct Sir. The prosecution Continued to insist it was Applicant's Truck even though he he knew it was not. Vol.4. P.72. L.24-25. "Q. Now the vehicle that Mr. Greer was driving. That's actually registed to Kenneth Greer, Is that right? P.73 L. 1-5 "A. Yes, Sir. Q. And so, that would be -- That David Dad NOT Actually David, is that correct? A. Yes Sir" EVEN though at this point the prosecutor knew applicant did not owe the truck. He knew if he conveniced the Jury it was his truck the Jury would convict Him The prosecutor pounded this fact into the Jurors heads until it was Litlrally the last words they heard "It's his truck" "It's His Truck" It's His Truck Before they begin to Deliberate. Closeing Arguaments P.178 L 24-25". It's his vehicle There is NO Question. None. We are beyond a shadow of a Doubt. The vehicle was his" P.179"... Its Registered to his parents, But It's his Truck. That's His Truck". (remember Jury Committed to Convict if the gun is in His truck... The Lone Issue in Front of you is not possession... Because it was in his Vehicle, that he was Driving... The Gun was in the Truck. P.180 L.25 It's his truck. P.182 L.22 Driving His truck with in one minute before the Jury was excused to Begin its Deliberation.

Rev. 01/14/14

The Prosecutor Denied Applicant a Fair Trial In Violation of the 14th Amend. Of U.S. Const. By using Hypothetical Situations which inllued the specofic Facts of the case to commit Jurors To Convict Applicant and striking the Jurors that where unwilling

**GROUND FOUR:** To Convict applicant Based upon the evidenle and Legal theory that the State was going to present when the Trial Begins.

**FACTS SUPPORTING GROUND FOUR:** The prosecutor used the exact Facts of the case to find Jorors that would Convict applicant and struck the ones that would not commit them selves to so convict. The State's Theory to convict is that the Truck Applicant was Driving was his and any thing found in His truck Belonged to Him E.G. Gun and Jacket. During voir dire the prosecutor set Forth the exact facts and legal theory to all venirepersons, Vol 3 P 41-42 Mr. Calvert: Did you drive your Truck to the Court House Today?... No.37: Yes Sir. Mr. Calvert: It's Parked in the Parking Lot?... NO.37: Yes Sir... You didn't bring your tools into the Court Room, did You? No, Sir... OKAY, and You said those tools, even though They're in Your vehicle, They're in your possession, Right?... Yes, Sir, They Are. -- WHY? Do You Think So?,,, because They're under my Case. I can manage those tools. The prosecutor then went Row by Row Vol. 3, P. 42 L. 22-34 Jury Pool member Mr. Colos aareed. The Jury Forman Agreed. P. 54 L. 6 All Jurors that Disagreed were struck E.G. Vol. 3 P. 45 L. 3 Ms. Bernal. The prosecutor even Selected Jurors that were willing to Convict Applicant even if they did not prove He owns the Gun, (exact facts of the case) P. 65 Jorors that refused to convict based upon those facts were struck E.G. Ms. Ford (P. 63 L. 23) Ms. Welch P. 66. Then He proceede to Pound on the fact the The Truck was applicants, when educating The Court. Vol. 3. 166 L. 12-13 It was in the Defendant's Truck. The Prosecutor FROM the Start of Trial "opening statment" Reminding Jurors of Their commitment. By letting them know it's Applicant's Truck P 23 L. 6-7 " Mr. Greer and Ms. Campbell were Located together. They were in Mr. Greer Truck. He owns IT." the very first state witness to testify. Terry Young, He had him testify it was applicant's Truck. Vol. 4 P. 34 L. 24-25 "... You said earlier, There was Nobody else in the Defendant's truck, Right? P. 35 L 1. A Thats Correct Sir" The Prosecutor Continued To insits it was applicants truck even though He knew it was not, Vol. 4. P 72 L. 24-25 " Q. Now, the Vehicle that Mr. Greer was Driving, that is actually Registered to a Kenneth Greer, Is that Right? (P. 73 L. 1-5 A. Yes, Sir. Q and so that would Be-- That would be Divid's Dad, Not actvally David is that Correct? A. Yes, Sir." even though at this point the prosecutor knew

Rev. 01/14/14

applicant did not own the truck, He knew if he convince The Jury it was his truck the Jury would convict Him. The Prosecutor Pounded this words they heard "It's His Truck", It's his truck". IT's his Truck" before they begin to Deliberate. Closing Arguements P178 L.24-25:... It's His Vehicle. There is NO Question. None. We are beyond a shadow of a Doubt the vehicle was his. P.179... It's Registered to his Parents, But it's His truck. That's His truck (Remember Jury Committed to Convict if the Gun is in His Truck)... The Lone issue in front of You is not Possession... because it was in his vehicle that He was Driving... The Gun was in his truck. P180 L.25 Its His Truck P192 L.22 Driving His Truck within one minute before Jury was excused to begin Deliberations.

Rev. 01/14/14

**GROUND:** (5) The Prosecutor Denied Applicant a fair trial by Painting a false Picture of the evidence which Denied 6th Amend Applicant His 14 Amend. U.S. Cont. Right to a fair trial 6 AA ¢

---

**FACTS SUPPORTING GROUND:** The Prosecutor Picked a Jury that Would Convict Applicant if he owned the truck that the Gun was found in. The Prosecutor started stating false facts to the Jury in opening Statement Vol. 4 P. 23 L. 13-15 "They saw who was in the Vehicle. They Recognized them, and they knew who they were looking for. And so they got behind them untill one testified they recognized Applicant as the Driver untill after they were ordered out of the vehicle with the guns drawn. Next the Prosecutor knew Kenneth Greer owned the Truck and Not applicant. Vol 4 P 72-73 this fact was known before Trial. The Prosecutor stated His opening statement Presenting false facts to obtain a Conviction. that The vehicle was applicants P. 25 L. 9... It was his vehicle." He had his first witness Terry Young Lie under Oath that it was applicants Truck. P. 34 L. 25 P 35 L.1. P 36 L. 13-16 Then He falsely Represented that applicant only witness Ms. Campbell P. 166 L 18) was wearing a camoflage Jacket. P. 82 L 25 P. 128 L 5 P. 144 L. 19 P. 166 L. 18) Prosecutor Then lied to Jury During closing arguments P. 164 L. 6-9"... Because You know that was firearm because that was stipulated..." Lessening the States Burden of proof. then He falsely states P. 164 L. 6-9... that the only Jacket in the Truck was a black Leather Jacket." Then falsely told the Burden of proof Does not have to be Beyond a Reasonble Doubt and explained why it Does not P. 165 L. 14-18 Once again Lessening The States Burden of Proof. Prosecutor once falsly stated The only other Jacket in the Truck was the one in the Back seat, also that Ms. Campbell was wearing a camoflage Jacket. These false Comained facts are Imporant to cover up the fact that applicant had His camoflage Jacket with a hood on it in the Truck but it was not among other things not Listed on the inventory sheet. The Prosecutor then started Pounding The false fact that it was applicants Vehicle. P. 178 L. 24-25 Its His vehicle... The vehicle was his P. 179 That's His truck. CIts important to remerer at this point, That the Jury is commited to Convict If the gun is in applicants Truck...) The Lone issue in front of You is not Possession. There can be No Dispute. Again we are there beYond a shadow of a Doubt that the man was exercising care, Custudy, Control or management over the Pistol. We know That. Why? Because it was in his vehicle that He was Driving.

14

GROUND: (6) Six: THE PROSECUTION DENIED APPLICANT A FAIR TRIAL IN VIOLATION OF THE FOURTEENTH AMENDMT & 6th OF THE U.S. CONSTITUTION BY MISSTATING THE LAW.

FACTS SUPPORTING GROUND: PROSECUTOR MISSTATED THE LAW DURING VOIR-DIRE DEALING WITH APPLICANT'S 5th AMEND. RIGHT TO NOT TESTIFY. VOL.3. P.85 L.1-9 "MR. CALVERT: YOU MIGHT INCRIMINATE SOMEBODY ELSE, RIGHT? CAN ANYBODY THINK OF ANOTHER ONE?"

THEN THE PROSECUTOR SOUGHT TO LESSEN HIS BURDEN OF PROOF BY MISSTATING THE LAW REGARDING HAVING TO PROVE HIS CASE BEYOND A REASONABLE DOUBT. Vol 4 P. 165 L. 14-19 " IT DOES NOT HAVE TO BE BEYOND A REASONABLE DOUBT BECAUSE REMEMBER, JUST LIKE RYAN TOLD YOU IN VOIR-DIRE, HOW IS THE ONLY WAY YOU CAN KNOW BEYOND A SHADOW OF A DOUBT THAT IT HAPPENED? EITHER YOU DID IT OR YOU WATCHED IT. NONE OF US WERE THERE. WE DIDN'T SEE IT. BUT WE HEARD CREDIBLE TESTIMONY."

THESE TWO COMBINED MISSTATMENTS OF LAW DENIED APPLICANT A FAIR TRIAL

16-17

Rev. 01/14/14

**GROUND: SEVEN:** THE PROSECUTOR ILLEGALLY COMMENTED ON APPLICANTS RIGHT TO REMAIN SILENT WHICH DENIED APPLICANT HIS FIFTH AMEND. RIGHT, WHICH IN TURN DENIED APPLICANT HIS FOURTEENTH AMEND. RIGHT TO A FAIR TRIAL.

**FACTS SUPPORTING GROUND:**

THE PROSECUTOR TOLD ALL VENIREPERSONS THAT APPLICANT'S A CONVICTED FELON. THEN TOLD THEM APPLICANT MAY NOT TESTIFY BECAUSE HE MAY HAVE SOMETHING TO HIDE. THEN CAREFULLY EXPLAINED TO THEM A REAL WORLD EXAMPLE WHERE A PREVIOUS DEFENDANT WAS SCARED IT MAY COME OUT DURING CROSS-EXAMINATION HE ALSO BEAT UP HIS TWO PREVIOUS GIRLFREINDS. Vol. 3. P. 86 L 18-25, P. 87 L. 1., E.G. WOMAN BEATER. IRONICALLY DURING APPLICANT'S TRIAL HIS WITNESS (HIS GIRLFREIND) TESTIFIED THEY HAD A FIGHT. THEN HE TOLD THEM A PERSON (APPLICANT) MAY NOT WANT TO TESTIFY BECAUSE HE MAY TELL ON SOMEONE ELSE.

18

Rev. 01/14/14

THE PROSECUTOR'S MISSTATEMENT OF THE LAW REGARDING APPLICANT'S FIFTH AMEND. RIGHT TO

GROUND: EIGHT: (8) REMAIN SILENT WAS ILLEGALLY USED TO POISON ALL VENIRE PERSONS, THEREBY DENIEING APPLICANT A FAIR AND IMPARTIAL TRIAL IN VIOLATION OF THE FOURTEENTH AMEND. OF THE U.S. CONST.

FACTS SUPPORTING GROUND:

THE PROSECTOR TOLD THEM THAT THE RIGHT TO REMAIN SILENT INCLUEDS THE RIGHT NOT TO TELL ON SOME ONE ELSE. VOL. 3. P. 82. L. 8-13.

19

Rev. 01/14/14

GROUND: 9 NINE: PROSECUTOR MISCONDUCT, IMPROPER JURY ARGEMENT WHICH DENIED APPLICANT HIS FOURTEETH & 6th CONSTITUTIONAL AMENDMENT TO A FAIR TRIAL

FACTS SUPPORTING GROUND: THE PROSECUTOR FIRST IMPROPERLY INSTRUCTED THE JURY THAT THE STATE DOES NOT HAVE TO PROVE IT WAS A FIREARM. BECAUSE IT WAS STIPULATED TO. (SEE VOL 4 P.164 L.6-8) AND THAT THE STATE DOES NOT HAVE TO PROVE ITS CASE BEYOND A REASONABLE DOUBT. P.165 L.14-18 "IT DOES NOT HAVE TO BE BEYOND A REASONABLE DOUBT BECAUSE, REMEMBER, JUST LIKE RYAN TOLD YOU IN VOIR-DIRE, HOW IS THE ONLY WAY YOU CAN KNOW BEYOND A SHADOW OF A DOUBT THAT IT HAPPENED. EITHER YOU DID IT, OR YOU WATCHED IT. NONE OF US WERE THERE WE DIDN'T SEE IT." NEXT P.166 L.18-19, MS CAMPBELL WAS WEARING A CAMOFLAGE JACKET. HE ALSO STATED MS CAMPBELL WAS A LIAR WHEN SHE TESTIFIED THAT SHE WAS WEARING A SATINY, FLOWERY JACKET. P.182 L.7-8 PROSECUTOR THEN IMPROPERLY INSTRUCTED THE JURY THAT THE VEHICLE WAS APPLICANT'S. P.178 L.24-25, P.179 L.2,14,15,20,22 P.180 L.25, P.181 L.1, P.182 L.22. PROSECUTOR THEN INSTRUCTED THE JURY THAT THE ISSUE OF POSSESSION HAS ALREADY BEEN DECIDED BECAUSE THE PISTOL WAS IN APPLICANTS VEHICLE. THESE IMPROPER INSTRUCTIONS INSURED THE STATE DID NOT HAVE TO PROVE 1) THE GUN WAS A FIREARM, 2) THAT APPLICANT POSSESSED IT. ACTUALLY THEN THE STATE HAD NO BURDEN OF PROOF BECAUSE APPLICANT STIPULATED HE WAS A CONVICTED FELON STILL ON PAROLE. ALSO EVEN IF THE STATE STILL HAD AN ELEMENT OF THE OFFENSE TO PROVE IT DID NOT HAVE TO PROVE IT BEYOND A REASONABLE DOUBT.

20-21

**GROUND:** **10 TEN:** PROSECUTORIAL MISCONDUCT DENIED APPLICANT HIS SIXTH AND FOURTEENTH AMEND. OF US. CONST. RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL BY SUCCESSFULLY URGING THE JUDGE TO HAVE A OFF THE RECORD DISCUSSION.

**FACTS SUPPORTING GROUND:**

THE PROSECTOR INSSURED THAT CRITICAL EVIDENCE OF WHICH OPENLY REVEALED TRIAL COUNSEL HAD ALL STATE'S WITNESSES BEST INTREST IN MIND. COUNSEL HAD EVERY REASON TO NOT IMPEACH THE CREDITABILITY OF ANY STATE WITNESS. TO NOT SUBJECT ANY STATE WITNESS, TO CIVIL SUIT, CRIMINAL CHARGES OR BEING FIRED FOR VIOLATING APPLICANT'S CIVIL RIGHTS. THAT COUNSEL WAS THE FORMER Co-WORKER OF ALL STATE WITNESSES. THE PROSECUTOR DID NOT WANT THIS ON THE RECORD BECAUSE ANY KNOWLEDGE OF THE SHERIFF IS IMPUTED TO THE PROSECUTOR. THEREFORE, REVEALING THAT HE WAS ACTIVELY COVERING UP HIS KNOWLEDGE THAT COUNSEL WAS OPERATING UNDER A SEVER CONFLICT OF INTREST. THIS ~~CONDUCT~~ MISCONDUCT DENIED APPELLATE COUNSEL

22

Rev. 01/14/14

THE KNOWLEDGE AND A RECORD TO REFERENCE TO ON A APPEAL TO SET FORTH THE ISSUE ON APPEAL WITH THE REQUIRED RECORD REFERENCES THAT TRIAL COUNSELS REPRESENTATION REPRESENTION OF APPLICANT WAS A CONFLICT OF INTREST.

23

Rev. 01/14/14

**GROUND:** #ELEVEN: THE TOTALITY OF THE PROSECTORIAL MISCONDUCT DENIED APPLICANT HIS 6th & FOURTEETH AMEND. OF U.S. CONST. RIGHT TO A FAIR AND IMPARTIAL TRIAL.

**FACTS SUPPORTING GROUND:**
THE FACTS ARE ALL THE INSTANCES OF PROSECUTORIAL MISCONDUCT CONSIDERED NOT INDIVIDUALLY BUT ALL COMBINED TOGETHER.

24

Rev. 01/14/14

**GROUND:** 12 TWELVE: THE TRIAL COURT DENIED APPLICANT. HIS 6th AND 14th AMEND. RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL BY NOT PROVIDING A COMPLETE COPY OF THE TRIAL RECORD.

**FACTS SUPPORTING GROUND:** THE APPELLATE COUNSEL WAS UNABLE TO PRESENT AS A GROUND OF ERROR ON DIRECT APPEAL THAT APPLICANT WAS DENIED HIS DUE PROCESS RIGHT TO ATTEND ALL CRITICAL PROCEEDINGS IN HIS TRIAL. THIS IS TRUE BECAUSE THE STATE FAILED TO PROVIDE A COMPLETE RECORD. THE TRIAL RECORD IS DEVOID (VOL. 4 P. 6 P. 183) OF THE JURY NOTE/COMMUNICATIONS THAT WAS SENT OUT DURING DELIBERATIONS; 2) WHETHER COUNSEL WAS PRESENT; AND 3) WHETHER APPLICANT WAS PRESENT; AND 4) WHAT THE JUDGE'S RESPONCE WAS. ALSO THE TRIAL JUDGE AGREED TO HAVE AN OFF THE RECORD DISCUSSION WHICH COUNSEL OPENLY REVEALED HIS CONFLICT OF INTREST IN REPRESENTING APPLICANT AGAINST THE BRAZO Co. SHERIFF'S DEPT. BECAUSE COUNSEL'S VOLUNTARY HELP OR A RIDE-ALONG DEPUTY WITH BRAZOS Co SHERIFF'S DEPT. HE WENT ALONG ON RAIDS. WERE ALL SUSPECTS ARE CONSIDERED ARMED AND DANGEROUS, HIS SAFTY AND VERY LIFE DEPENDENT UPON THE STATE WITNESSES. HE ALSO HAS FLASHING POLICE LIGHTS ON HIS PRIVATE VEHICLE. THIS OFF THE RECORD DISCUSSION WOULD HAVE ALERTED APPELLATE COUNSEL THAT TRIAL COUNSEL WAS OPERATING WITH A SEVER CONFLICT OF INTREST. TO PROVE APPLICANT INNOCENT HE MUST HIS FREIND AND CO WORKERS DID NOT FOLLOW PROCEEDURES, VIOLATED APPLICANTS CONSTITUTIONAL RIGHTS. DOING SO WOULD SUBJECT HIS FREINDS/Co WORKERS TO INTERNAL DISIPLANARY UP TO BEING FIRED, OPEN THE DOOR FOR CIVIL SUIT AND/OR CRIMINAL CHARGES, THE VERY PEOPLE WE WILL SOMEDAY AFTER TRIAL BE INTRUSTING HIS VERY LIFE TO.

ALSO MISSING IS THE ALLEGED STIPULATION THAT A REDACTED VERSION OF THE VIDEO COULD BE INTRODUCED VOL. 4. P. 74.. THE STIPULATION THAT THE GUN WAS A FIREARM

25

Rev. 01/14/14

Vol 4. P.168 L.6-8. Also Missing, a copy of the alleged evidence sheet P.156, L.13-17.

On Direct Appeal, counsel can not argue outside the record. Therefore, due to the State's failure to so provide a complete record applicant was denied effective assistance of counsel on Direct Appeal.

26

Rev. 01/14/14

**GROUND: THIRTEEN:** APPLICANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMEND. RIGHTS OF U.S. CONST.

**FACTS SUPPORTING GROUND:** 1) COUNSELS REPRESENTATION OF APPLICANT THE ENTIRE TIME WAS UNDER A SEVER CONFLICT OF INTREST 2) COUNSEL FAILED TO PROPERLY PRESENT APPLICANTS MOTION TO SUPPRESS OR URGE FOR A HEARING BEFORE TRIAL. 3) COUNSEL FAILED TO OBJECT WHEN THE STATE FAILED TO PRODUCE THE VIDEO (DVD) 20 DAYS BEFORE TRIAL AS THE LAW REQUIRES. 4) FOR AGREEING TO ALLOW THE STATE TO ENTER A REDACTED VERSION OF THE INCULPATORY VIDEO AND ACCORDING TO THE RECORDS SIGNING A STIPULATION TO SO ALLOW THEM TO DO SO WITHOUT APPLICANT'S KNOWLEDGE. 5) FAILED TO OBJECT WHEN STATE FAILED TO PRODUCE EITHER OFFICER FICKE OR THE ALLEGED CONFIDENTIAL INFORMANT FOR CROSS-EXAMINATION. 6) FAILED TO OBJECT TO HEARSAY STATMENTS AND REQUEST AN IMMEDIATE RULING. 7) FAILED TO OBJECT TO BACKDOOR HEARSAY STATEMENTS AND REQUEST AN IMMEDIATE RULING. 8) FAILED TO ALLOW APPLICANT TO REVIEW THE VIDEO (DVD) EVEN IN THE FACE OF NUMEROUS REQUEST BEFORE TRIAL SO HE COULD MAKE AN INTELLIGENT AND INFORMED DECISION TO ACCEPT THE STATES PLEA AGREEMENTS "OFFERS" OR GO TO TRIAL. 9) FAILED TO OBJECT TO THE INTRODUCTION OF CRITICAL EVIDENCE WITH OUT ESTABLISHING THE PROPER CHAIN OF CUSTODY. E.G. GUN, DVD OR JACKET. 10) COUNSEL FAILED TO OBJECT WHEN ~~APPLICANT WAS NOT ALLOWED TO BE PRESENT AT ALL STAGES OF HIS TRIAL. E.G. WHEN JURY SENT A NOTE OUT AND JUDGE SENT A REPLY. 12) FAILED TO OBJECT~~ TO STATE STATED THAT THE APPLICANT WAS "ONLY" IN JAIL FOR THE OFFENSE HE IS NOW CONVICTED OF. 11) COUNSEL FAILED TO OBJECT WHEN APPLICANT WAS NOT ALLOWED TO BE PRESENT AT ALL STAGES OF HIS TRIAL. E.G. WHEN JURY SENT A NOTE OUT AND THE JUDGE SENT A REPLY. 12) FAILED TO OBJECT TO THE NUMEROUS TIMES THE STATE PRESENTED FALSE EVIDENCE E.G. VOL 4 P 87 L. 7-9 13) FAILED TO OBJECT WHEN STATE INTRODUCED THE ILLEGAL INCOMPLETE INVENTORY LIST. 14) FOR ASSISTING

27

AND URGEING EXCUSES FOR THE STATE TO DENIE THE APPLICANT HIS SIXTH AMEND. RIGHT TO CROSS-EXAMINE OFFICER FICKE VOL. 4. P. 90 L. 7-9, r. 15) FAILED TO OBJECT WHEN THE STATE INTRODUCED CRITICAL INCULPATORY EVIDENCE THAT WAS ALTERED E.G. SEVERAL DIFFERANT VIDEOS SELECTIVELY MADE INTO ONE, WHICH IS IMPOSSIBLE TO AUTHENICATE FOR LEGAL INTRODUCTION Vol. 4 P. 151 L. 6-7 FRONT CAMERA AND BACK SEAT CAMERA OF FICKE'S CAR Vol. 4 P. 144 L. 10-12, Vol. 4 P. 166 L. 19-20 FRONT CAMERA AND BACK SEAT OF BALLEWS CAR. 16) COUNSEL REFUSED AND FAILED TO ALLOW THE ONLY DEFENSE WITNESS TO REVEIW THE VIDEO TO REFRESH HER MEMORY, AND PREPARE HER FOR CROSS-EXAMINATION, STATING THAT HE COULD NOT ALLOW HER TO REVIEW THE VIDEO BECAUSE THIS WOULD BE WITNESS TAMPERING. 17) FAILED TO OBJECT WHEN THE PROSECUTOR MISSTATED THE LAW 18) FAILED TO OBJECT WHEN THE PROSECUTOR MADE IMPROPER JURY ARGUEMENTS. 19) FAILED TO REQUEST FINDINGS OF FACTS AND CONCLUSIONS OF LAW AFTER MOTION TO SUPPRESS WAS DENIED. 20) FAILED TO OBJECT WHEN THE JURY WERE ALLOWED TO TAKE THE VIDEO AND PLAYER INTO THE JURY ROOM DURING DELIBERATIONS. 21) COUNSEL FAILED TO OBJECT TO PROSECUTORS PRODUCTION AND USE OF CUSTODIAL INTRA-GATION VIDEO (DVD) IN VIOLATION OF TEXAS LAW. 22) COUNSEL FAILED TO PURSUE EXCULPATORY EVIDENCE, DISPATCH LOGS OF BRAZOS Co. SHERIFFS DEPT. AND BRYAN TX. POLICE DEPT. FOR FEBUARY 16, 2012 @ APPROXIMATLY 1 pm THRU 4pm. 23) For Asking The Judge AND Jury to Consider Evidence that is Not In The Record, that is Detremental to Applicant. 24) Failed to Question Venire Person #6 Robert Cosina if his personal friendship with the Presiding Judge would affect his Ability to be Fair And impartial Juror.

GROUND: _FOURTEEN:_

14

APPLICANT WAS DENIED HIS SIXTH AMENDMENT RIGHTS OF U.S. CONST. TO EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL

FACTS SUPPORTING GROUND:

AS PREVIOUSLY SHOWN APPELATE COUNSEL WAS NOT PROVIDED A COMPLETE COPY OF THE TRIAL RECORDS, THEREFORE IT WAS IMPOSSIBLE FOR COUNSEL TO FILE A PROPER MOTION FOR NEW TRIAL TO FURTHER DEVELOPE THESE UN-KNOWN FACTS. COUNSEL FAILED TO REQUEST THE COURT TO PRODUCE THESE MISSING PORTIONS OF THE RECORD. COUNSEL FAILED TO FILE THE MANDATORY AFFIDAVIT IN SUPPORT OF THE MOTION FOR A NEW TRIAL. COUNSEL FAILED TO BRING FORTH ISSUE'S SPECIFICALLY REQUESTED BY APPLICANT, BY WAY OF LETTERS, AS GROUNDS FOR THE MOTION FOR A NEW TRIAL, TO PRESERVE AND EXPAND ON THEM IN THE OFFICAL RECORD. E.G. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, APPLICANT NOT VEIWING VIDEOS PRE-TRIAL, AND THE ONE X LARGE LEATHER JACKET WOULD NOT FIT APPLICANT

24

IT WAS IMPOSSIBLE FOR COUNSEL TO PRESENT THESE CRITICAL TRIAL ERRORS ON APPEAL DUE TO THE FACT THEY WERE UNKNOWN AND THEY WERE OUTSIDE OF THE RECORD. ALSO COUNSEL DID NOT PRESENT THESE ISSUES NOW BEING PRESENTED. ADDITIONALLY THE ISSUES THAT WERE PRESENTED WERE DEFICENTLY BREIFED.

30

Rev. 01/14/14

GROUND: 15 FIFTEEN:

APPLICANT WAS DENIED HIS FOURTEENTH AMEND. RIGHT TO U.S. CONST. OF EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL

FACTS SUPPORTING GROUND:

SAME FACTS AS GROUND No. 14 FOURTEEN

31

16

GROUND: SIXTEEN° 4th

APPLICANT WAS DENIED 6th AND 14th AMEND RIGHT OF U.S.CONST. TO EFFECTIVE ASSISTANCE OF COUNSEL, BECAUSE COUNSEL FAILED TO PROPERLY ASSERT ALL 4th AMEND. CLAIMS

FACTS SUPPORTING GROUND:

TRIAL COUNSEL FAILED TO OBTAIN RULEINGS ON THE VARIOUS MOTIONS TO SUPPRESS, PRE-TRIAL, COUNSEL FAILED TO REQUEST FINDINGS OF FACTS AND CONCLUSIONS OF LAW ON DENIED SUPPRESSION HEARING DURING TRIAL AND ON PRE-TRIAL MOTIONS. COUNSEL FAILED TO ADEQUATLY ARGUE THE ISSUE OF THE IDENTIFICATION OF APPLICANT BY CONFIDENTIAL INFORMANT. OR THE CONFIDENTIAL INFORMANTS IDENTIFCATION (WHO HE/SHE IS). AS WELL AS PURSUE THE ARGUEMENT FURTHER, INVOLVING THE INCOMPLETE, IMPROPER AND INVALID INVENTORY SEARCH

32

Rev. 01/14/14

17.

GROUND: SEVENTEEN:
PROSECUTORIAL MISCONDUCT DENIED APPLICANT HIS 14th AMEND. RIGHTS
OF U.S. CONST. BY WITH-HOLDING EXCULPATORY EVIDENCE & 6th
Amendment right to a fair trial

FACTS SUPPORTING GROUND:
PROSECUTOR WITH HELD AND FAILED TO PRODUCE
EXCULPATORY EVIDENCE, NAMELY, THE DISPATCH
LOGS/RECORDING/TRANSCRIPTS FOR BRAZOS Co.
SHERIFF DEPT. AND BRYAN CITY POLICE
DEPT. FOR FEBUARY 16, 2012 AT APPROXIMATELY
1 pm. THRU 4 pm.

33

Rev. 01/14/14

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

### OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF _____

_____, being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____, 20____.

_____
Signature of Notary Public

16
34

Rev. 01/14/14

## PETITIONER'S INFORMATION

Petitioner's printed name: _____

State bar number, if applicable: _____

Address: _____

_____

_____

Telephone: _____

Fax: _____

## INMATE'S DECLARATION

I, _DAVE D GREEK_____, am the applicant / petitioner (circle one) and being presently incarcerated in _TDCJ-ID WAYNE SCOTT UNIT_, declare under penalty of perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on _May 14___, 20 _15_

_____
Signature of Applicant / Petitioner (circle one)

17

35

## PETITIONER'S INFORMATION

Petitioner's printed name: _____

Address: _____

_____

_____

Telephone: _____

Fax: _____


Signed on _____, 20_____


_____
Signature of Petitioner


18

36

Case No. _____
(The Clerk of the convicting court will fill this line in.)

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: Greer, Dave D.

DATE OF BIRTH: 12/22/1966

PLACE OF CONFINEMENT: Wayne Scott Unit 6999 Retrieve Rd, Angleton, TX 77515

TDCJ-CID NUMBER: 01829754    SID NUMBER: TX3329636

(1)    This application concerns (check all that apply):

☑ a conviction              ☐ parole

☐ a sentence               ☐ mandatory supervision

☐ time credit              ☐ out-of-time appeal or petition for
                              discretionary review

(2)    What district court entered the judgment of the conviction you want relief from?
       (Include the court number and county.)

       272ND Brazos Co. District Court

(3)    What was the case number in the trial court?

       12-03324-CRF-272ND

(4)    What was the name of the trial judge?

       TRAVIS BRYAN III

Rev. 01/14/14

(5) **Were you represented by counsel? If yes, provide the attorney's name:**

EARL GRAY

(6) **What was the date that the judgment was entered?**

11-15-12

(7) **For what offense were you convicted and what was the sentence?**

Unlawfull Possession of Firearm By Felon

(8) **If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?**

N/A

(9) **What was the plea you entered? (Check one.)**

☐ guilty-open plea          ☐ guilty-plea bargain
☑ not guilty               ☐ *nolo contendere*/no contest

**If you entered different pleas to counts in a multi-count indictment, please explain:**

(10) **What kind of trial did you have?**

☐ no jury                  ☐ jury for guilt and punishment
                           ☑ jury for guilt, judge for punishment

2

Rev. 01/14/14

(11)  Did you testify at trial? If yes, at what phase of the trial did you testify?

_NO_

(12)  Did you appeal from the judgment of conviction?

☑ yes                    ☐ no

If you did appeal, answer the following questions:

(A)  What court of appeals did you appeal to?  _TENTH_

(B)  What was the case number?  _10-13-00049-CR_

(C)  Were you represented by counsel on appeal? If yes, provide the attorney's name:
_MARY HENNESY_

(D)  What was the decision and the date of the decision?  _MARCH 20, 2014_

(13)  Did you file a petition for discretionary review in the Court of Criminal Appeals?

☑ yes                    ☐ no

If you did file a petition for discretionary review, answer the following questions:

(A)  What was the case number?  _#PD-0536-14_

(B)  What was the decision and the date of the decision?  _EXT-TO FILE PDR EXTEND TO FRI, 6/20/2014_

(14)  Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

☐ yes                    ☑ no

If you answered yes, answer the following questions:

(A)  What was the Court of Criminal Appeals' writ number?  _N/A_

3

Rev. 01/14/14

(17) Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

5

Rev. 01/14/14

**GROUND ONE:** Applicant is Now Being Denied His Due Process Right to A Complete Copy of The TRIAL Record to Prepare His Post Conviction Collaterac Attack.

**FACTS SUPPORTING GROUND ONE:** The Transcription of the Trial Vol. 4. of 6. Page 183, L.14 (Jury Retired for Deliberations.) L 15. (JURY REQUESTED TO VEIW VIDEO.) L16. (JURY Continued Deliberations) The Record is missing; 1) Jury Note; 2) Whether Counsel is Present; 3 Whether Applicant is Present; 4) What the Judge's Response was also at Vol. 3, P. 173 L. 20 The State had a Critical off the record Discussion at which time Counsel Openly Revealed His Conflict of intrest in representing applicant against the actions of the Brazos Co. Sheriff Dept. is a Voluntary and/or Reserve Deputy. He has had and does activly work with and around all of the State's Witness at times his safty and very life depends upon them performing their respective Job in a professional Matter as such he has a deep seated respect

6

Rev. 01/14/14

for each witness. Also after trial He will continue to work with and around these witness entrusting his life and safty in their hands. when but not limted to armed and dengerous raid and ride a longs also that he has flashing police lights on his private vehidle, Due to such Has a right to carry a gun and have a badge. Therefore, He has a Conflict of intrest fn represent the best intrest of his co-workers and to the intrest of all the applicant, In which he is Duty Bound to prove the witnesses acted not only Simply in a unprofessional manner, but violated applicants constitutional Rights. Proving such could very well open the door to civil suit, Criminal charges. and being fired. Also missing THE Alleged stipulation that a redacted version of the video could be introduled. Vol 4 P34 L12-15. The alleged stipulation that the gun was a firearm vol.4 P.164. L6-8. Also a copy of the alleged evidence sheet Vol4 P.156 L13-17 without these missing portions of the records applicant can not adequately prepare his post conviction attack.

**GROUND TWO:**

Applicant was denied his sixth Amendment Rights
To Cross-examing the witnesses aganist him.

**FACTS SUPPORTING GROUND TWO:** Officer M. Ficke filled out
and prepared the vehicle inventory report, it was
vital that applicant cross-examine this method of
perparing the report. The next witness that
give evidence against applicant that he was driving C.I.
a black Ford Ranger Pick-Up. No other witness
testifed that they knew applicant was the Driver of
this Truck. Until after he was stopped and ordered out
of the truck with guns drawn, applicant needed to
cross-examzne this witness to determine how He/She
knew applicant was driving this vehicle How far away
He/She was when they Identified applicant, How He/She
Described applicant, How He/She described the truck,
If He/She provided the license plate number. This person
was alleged to be a confidential Him/Her. INFORMANT,

YET APPLICANT STILL NEEDED TO CROSS-EXAMINE Him orHer.

Rev. 01/14/14



Rev. 01/14/14

The Prosecutor Denied Applicant A Fair trial in violation of the 14th amend of the U.S. Court. By using Hypothetical situations which inculded the spelific facts of the case to comm

**GROUND THREE:** The Jurors to the state's Legal theory for Conviction Before any evidence being presented before

## The Actual Trial Began.

**FACTS SUPPORTING GROUND THREE:** The prosecution used the exact facts of the case they were going to use to convict applicant to find Jurors that would convict applicant and struck the ones that would not commit themselves to so Convict. The States theory to convict is that the truck applicant was driving was his and any thing found in his truck Belonged to him E.G. Gun and Jacket. During voir-dire the prosecution set Forth the expct facts and legal theory to all venire persons; Vol. 3 page 41-42 Mr. Calvert: did-- You Drive Your Truck to the court-House Today?-- No. 37, Yes Sir, Mr. Calvert: It's parked out in the parking Lot?-- No. 37 Yes Sir... You didn't bring Your tools into the court-room, did you?-- NO, Sir OKAY- And You said those tool even Though they're in your vehicle, thyre in your possession, Right? -- Yes, Sir, They are...WHY? Do You Think So?... Because they're under my care. I can manage those tools. The prosecutor then went Row by Row P. 42 L. 22-24 Jury Members Mr. Cobos Agreed The Jury Forman Agreed: P57 L.6. all Vinire persons that disagreed were struck E.G. 3. P.45. L.3. Ms. Bernol. The Prosecutor even if selected Jurors that were willing to convict applicant even if they did not prove He owned the Gun (EXACT FACTS Of The case). P.65 Jurors that refused to convict based upon these facts were struck E.G. Ms. Ford (P63 L 23) Ms. Wilch P.66 Then he proceeded to pound on the fact that the Truck was applicants when EDUCATEING The Court. Vol 3. P. 166 L R-13 "It was the Defendant's truck" the prosecution from the Start of trials "opening statment" started reminding Jurors of their comitment by letting" them know it's Applicants truck. Vol 4. P 23 L. 6-7 Mr. Greer and Ms. Campbell where cocated together. They were in Mr. Greers truck. He owns IT. The very first state's witness to testify Terry Young, had him testify it was applicants truck Vol 4 P. 34. L. 24-25...

10

Rev. 01/14/14

You said earlier,there was NO Body else in the defendants Truck, Right? P.35 LI A. That's correct Sir. The prosecution continued to insist it was Applicant's Truck even though he he knew it was not. Vol.4. P.72. L.24-25." Q. Now the Vehicle that Mr. Greer was driving. That's actually registered to Kenneth Greer, Is that right? P.73 L-1-5 " A. Yes, Sir. Q. And so, that would be--That David Dad Not actually David, is that correct? A. Yes Sir" EVEN though at this point the prosecutor knew applicant did not owe the truck, He knew if he conveniced the Jury it was his truck the Jury would Convict Him The prosecutor Pounded this fact into the Jurors heads until it was Litlrally the last words they heard "It's his truck" "It's His Truck" It's His Truck Before they begin to Deliberate. Closeing Arguaments P.178 L 24-25".. It's his vehicle There is NO Question. None. We are beyond a shadow of a Doubt. The vehicle was his" P.179"... Its Registered to his parents, But It's his Truck. That's His Truck" (remember Jury Committed to Convict if the gun is in His truck)... The Lone Issue in Front of you is not possession... Because it was in his Vehicle that he was Driving... The Gun was in the Truck. P.180 L.25 It's his truck. P.182 L.22 Driving His truck with in one minute before the Jury was excused to Begin it's Deliberation.

Rev. 01/14/14

The Prosecutor Denied Applicant a Fair Trial In Violation of the 14th Amend. Of U.S. Const. By using Hypothetical Situations which inllued the specofic Facts of the case to commit Jurors To Convict Applicant and striking the Jurors that where unwilling

**GROUND FOUR:** To Convict applicant Based upon the evidenle and Legal theory that the state was going to present when the Trial Begins.

**FACTS SUPPORTING GROUND FOUR:** The prosecutor used the exact Facts of the case to find Jurors that would convict applicant and struck the ones that would not commit them selves to so convict. The States Theory to convict is that the Truck Applicant was Driving was his and any thing found in His truck Belonged to Him. E.G. Gun and Jacket. During voirdire the prosecutor set Forth the exact facts and legal theory to all venirepersons; Vol 3 P41-42 Mr. Calvert: Did you drive your Truck to the CourtHouse Today?... No.37: Yes Sir. Mr. Calvert: It's Parked in the Parking Lot?... NO.37: Yes, Sir.... You didn't bring your tools into the CourtRoom, did You? No, Sir... OKAY, and you said those tools, even though They're in Your vehicle, They're in your possession. Right?... Yes, Sir, They Are.--WHY? Do You Think So?..., because They're under my Care. I can manage those tools. The prosecutor then went Row by Row Vol. 3, P. 42 L. 22-24 Jury Pool member Mr. Colos aareed. The Jury Forman Agreed. P. 54 L. 6 All Jurors that Disagreed were struck E.G. Vol. 3 P. 45 L. 3 Ms. Bernal. The prosecutor even Selected Jurors that were willing to Convict Applicant even if they did not prove He owns the Gun, (exact facts of the case) P. 65 Jurors that refused to convict based upon these facts were struck E.G. Ms. Ford (P. 63 L. 23) Ms. Welch P. 66. Then He proceede to Pound on the fact the The Truck was applicants when educating The Court. Vol. 3. 166 L. 12-13 It was in the Defendant's Truck. The Prosecutor fRom the Start of Trial "opening statment" Reminding Jurors of Their commitment. By letting them know its Applicant's Truck P 23 L. 6-7 " Mr. Greer and Ms. Campbell were Located together. They were in Mr. Greer Truck. He owns IT." the Very first state witness to testify. Terry Young. He had him testify it was applicant's Truck. Vol. 4 P. 34 L. 24-25 "...You said earlier, There was Nobody else in the Defendant's truck, Right? P. 35 L. A Thats Correct Sir" The Prosecutor Continued To insits it was applicants truck even though He knew it was not, Vol. 4, P. 72 L. 24-25" Q. Now, the Vehicle that Mr. Greer was Driving, that is actually Registered to a Kenneth Greer, Is that Right? (P. 73 L. 1-5 A. Yes, Sir. Q and so that would Be-- That would be Divid's Dad. Not actually David is that correct? A. Yes, Sir." even though at this point the prosecutor knew"

Rev. 01/14/14

applicant did not own the truck, He knew if he convince The Jury it was his truck the Jury would convict Him. The Prosecutor Pounded this words they heard "It's His Truck",

It's his truck", IT's his Truck" before they begin to Deliberate. Closing Arguements P178 L.24-25".. It's His Vehicle. There is NO Question. None. We are beyond a shadow of a Doubt the vehicle was his. P.179... It's Registered to his Parents, But it's His truck. that's His truck (Remember Jury Committed to Convict if the Gun is in His Truck)... The Lone issue in front of You is not Possession... because it was in his vehicle that He was Driving... The Gun was in his truck. P.180 L.25 its His Truck P192 L.22 Driving His Truck with in one minute before Jury was excused to begin Deliberations.

Rev. 01/14/14

**GROUND:** (5) The Prosecutor Denied Applicant a fair trial by Painting a false Picture of the evidence which Denied 6th Amend Applicant His 14 Amend. U.S. Cont. Right to a fair trial

6 LA &

---

**FACTS SUPPORTING GROUND:** The Prosecutor Picked a Jury that would Convict Applicant if he owned the truck that the Gun was found in. The Prosecutor started stating false facts to the Jury in opening statment Vol.4 P.23 L.13-15 "They saw who was in the Vehicle. They Recognized them, and they Knew who they were looking for. And so, they got behind them untill one testified they recognized Applicant as the Driver untill after they were ordered out of the Vehicle with the guns drawn. Next the Prosecutor knew Kenneth Greer owned the Truck and not applicant. Vol 4 P 72-73 this fact was known before Trial. The Prosecutor stated His opening statement Presenting false facts to obtain a Conviction. that The vehicle was applicants P.25 L.9... It was his vehicle." He had his first witness Terry Young Lie under Oath that it was applicants Truck. P.34 L.25 P35 L1, P36 L.13-16 Then He falsely Represented that applicant only witness Ms. Campbell P.166 L.18) was wearing a camoflage Jacket. P.82 L.25 P.128 L5-9 P.144 L.19 P.166 L.18) Prosecutor Then lied to Jury Ouring closing arguments P.164 L.6-9"...Because You know that was firearm because that was stipulated..." Lessening the state's Burden of proof. then He falsely states P.164 L.6-9... that the only Jacket in the Truck was a black Leather Jacket." Then falsely told the Burden of proof Oues not have to be Beyond a Reasonble Doubt and explained why it Does not P.165 L.14-18 Once again Lessening The States Burden of Proof. Prosecutor once falsly stated The only other Jacket in the Truck was the one in the Back seat, also that Ms. Campbell was wearing a camoflage Jacket. These false Comained facts are Imporant to cover up the fact that applicant had His camoflage Jacket with a hood on it in the Truck but it was not among other things Not Listed on the inventory sheet. The Prosecutor then started Pounding The false fact that it was applicant's Vehicle. P.178 L.24-25 Its His vehicle... The vehicle was his P.179 That's His truck. CIt's important to remerer at this point, That the Jury is commited to convict If the Gun is in applicant's Truck...) The Lone issue in front of You is not Possession. There can be No Dispute. Again we are there be Yond a Shadow of a Doubt that the man was exercising care, custudy, Control or management over the Pistol. We know That. Why? Because it was in his vehicle that He was Driving.

14

Rev. 01/14/14

**GROUND: (6) SIX:** THE PROSECUTION DENIED APPLICANT A FAIR TRIAL IN VIOLATION OF THE FOURTEENTH AMENDM. & 6th OF THE U.S. CONSTITUTION BY MISSTATING THE LAW.

**FACTS SUPPORTING GROUND:** PROSECUTOR MISSTATED THE LAW DURING VOIR-DIRE DEALING WITH APPLICANT'S 5th AMEND. RIGHT TO NOT TESTIFY. VOL.3. P. 85 L. 1-9 "MR. CALVERT: YOU MIGHT INCRIMINATE SOMEBODY ELSE, RIGHT? CAN ANYBODY THINK OF ANOTHER ONE?"

THEN THE PROSECUTOR SOUGHT TO LESSEN HIS BURDEN OF PROOF BY MISSTATING THE LAW REGARDING HAVING TO PROVE HIS CASE BEYOND A REASONABLE DOUBT. Vol 4 P. 165 L. 14-19 "IT DOES NOT HAVE TO BE BEYOND A REASONABLE DOUBT BECAUSE REMEMBER, JUST LIKE RYAN TOLD YOU IN VOIR-DIRE, HOW IS THE ONLY WAY YOU CAN KNOW BEYOND A SHADOW OF A DOUBT THAT IT HAPPENED? EITHER YOU DID IT, OR YOU WATCHED IT. NONE OF US WERE THERE. WE DIDN'T SEE IT. BUT WE HEARD CREDIBLE TESTIMONY."

THESE TWO COMBINED MISSTATMENTS OF LAW DENIED APPLICANT A FAIR TRIAL

16-17

Rev. 01/14/14

**GROUND:** SEVEN: THE PROSECUTOR ILLEGALLY COMMENTED ON APPLICANT'S RIGHT TO REMAIN SILENT WHICH DENIED APPLICANT HIS FIFTH AMEND. RIGHT, WHICH IN TURN DENIED APPLICANT HIS FOURTEENTH AMEND. RIGHT TO A FAIR TRIAL.

**FACTS SUPPORTING GROUND:**

THE PROSECUTOR TOLD ALL VENIREPERSONS THAT APPLICANT'S A CONVICTED FELON. THEN TOLD THEM APPLICANT MAY NOT TESTIFY BECAUSE HE MAY HAVE SOMETHING TO HIDE. THEN CAREFULLY EXPLAINED TO THEM A REAL WORLD EXAMPLE WHERE A PREVIOUS DEFENDANT WAS SCARED IT MAY COME OUT DURING CROSS-EXAMINATION HE ALSO BEAT UP HIS TWO PREVIOUS GIRLFRIENDS. Vol. 3. P. 86 L 18-25, P. 87 L. 1., E.G. WOMAN BEATER. IRONICALLY DURING APPLICANT'S TRIAL HIS WITNESS (HIS GIRLFREIND) TESTIFIED THEY HAD A FIGHT. THEN HE TOLD THEM A PERSON (APPLICANT) MAY NOT WANT TO TESTIFY BECAUSE HE MAY TELL ON SOMEONE ELSE.

18

Rev. 01/14/14

THE PROSECUTOR'S MISSTATEMENT OF THE LAW
REGARDING APPLICANT'S FIFTH AMEND. RIGHT TO

GROUND: EIGHT: REMAIN SILENT WAS ILLEGALLY USED
(8)
TO POISON ALL VENIRE PERSONS, THEREBY DENIEING
APPLICANT A FAIR AND IMPARTIAL TRIAL IN VIOLATION OF
THE FOURTEENTH AMEND. OF THE U.S. CONST.

FACTS SUPPORTING GROUND:

THE PROSECTOR TOLD THEM THAT THE

RIGHT TO REMAIN SILENT INCLUEDS

THE RIGHT NOT TO TELL ON SOME ONE

ELSE. VOL. 3. P. 82. L. 8-13.

14

Rev. 01/14/14

**GROUND: 9 NINE: PROSECUTOR MISCONDUCT, IMPROPER JURY ARGEMENT WHICH DENIED APPLICANT HIS FOURTEETH & 6th CONSTITUTIONAL AMENDMENT TO A FAIR TRIAL**

**FACTS SUPPORTING GROUND:** THE PROSECUTOR FIRST IMPROPERLY INSTRUCTED THE JURY THAT THE STATE DOES NOT HAVE TO PROVE IT WAS A FIREARM. BECAUSE IT WAS STIPULATED TO. (SEE VOL 4 P164 L 6-8) AND THAT THE STATE DOES NOT HAVE TO PROVE IT'S CASE BEYOND A REASONABLE DOUBT. P.165 L.14-78 "IT DOES NOT HAVE TO BE BEYOND A REASONABLE DOUBT BECAUSE, REMEMBER, JUST LIKE RYAN TOLD YOU IN VOIR-DIRE, HOW IS THE ONLY WAY YOU CAN KNOW BEYOND A SHADOW OF A DOUBT THAT IT HAPPENED EITHER YOU DID IT, OR YOU WATCHED IT. NONE OF US WERE THERE WE DIDN'T SEE IT." NEXT P.166 L.18-19, MS CAMPBELL WAS WEARIN A CAMOFLAGE JACKET. HE ALSO STATED MS CAMPBELL WAS A LIAR WHEN SHE TESTIFIED THAT SHE WAS WEARING A SATINY, FLOWERY JACKET. P.182 L.7-8 PROSECUTOR THEN IMPROPERLY INSTRUCTED THE JURY THAT THE VEHICLE WAS APPLICANT'S. P.178 L.24-25, P.179 L.2, 14, 15, 20, 22 P.180 L.25, P.181 L.1, P.182 L.22. PROSECUTOR THEN INSTRUCTED THE JURY THAT THE ISSUE OF POSSESSION HAS ALREADY BEEN DECIDED BECAUSE THE PISTOL WAS IN APPLICANT'S VEHICLE. THESE IMPROPER INSTRUCTIONS INSURED THE STATE DID NOT HAVE TO PROVE 1) THE GUN WAS A FIREARM, 2) THAT APPLICANT POSSESSED IT. ACTUALLY THEN THE STATE HAD NO BURDEN OF PROOF BECAUSE APPLICANT STIPULATED HE WAS A CONVICTED FELON STILL ON PAROLE. ALSO EVEN IF THE STATE STILL HAD AN ELEMENT OF THE OFFENSE TO PROVE IT DID NOT HAVE TO PROVE IT BEYOND A REASONABLE DOUBT.

20-21

Rev. 01/14/14

GROUND: 10 TEN: PROSECUTORIAL MISCONDUCT DENIED APPLICANT HIS SIXTH AND FOURTEENTH AMEND. OF US. CONST. RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL BY SUCCESSFULLY URGING THE JUDGE TO HAVE A OFF THE RECORD DISCUSSION.

FACTS SUPPORTING GROUND:

THE PROSECTOR INSSURED THAT CRITICAL EVIDENCE OF WHICH OPENLY REVEALED TRIAL COUNSEL HAD ALL STATE'S WITNESSES BEST INTREST IN MIND. COUNSEL HAD EVERY REASON TO NOT IMPEACH THE CREDITABILITY OF ANY STATE WITNESS. TO NOT SUBJECT ANY STATE WITNESS, TO CIVIL SUIT, CRIMINAL CHARGES OR BEING FIRED FOR VIOLATING APPLICANT'S CIVIL RIGHTS. THAT COUNSEL WAS THE FRIEND/CO-WORKER OF ALL STATE WITNESSES. THE PROSECUTOR DID NOT WANT THIS ON THE RECORD BECAUSE ANY KNOWLEDGE OF THE SHERIFF IS IMPUTED TO THE PROSECUTOR. THEREFORE, REVEALING THAT HE WAS ACTIVELY COVERING UP HIS KNOWLEDGE THAT COUNSEL WAS OPERATING UNDER A SEVER CONFLICT OF INTREST. THIS CONDUCT MISCONDUCT DENIED APPELLATE COUNSEL

22

THE KNOWLEDGE AND A RECORD TO REFERENCE TO ON A APPEAL TO SET FORTH THE ISSUE ON APPEAL WITH THE REQUIRED RECORD REFERENCES THAT TRIAL COUNSELS REPRESENTATION OF APPLICANT WAS A CONFLICT OF INTREST.

23

Rev. 01/14/14

GROUND: //ELEVEN: THE TOTALITY OF THE PROSECTORIAL MISCONDUCT DENIED APPLICANT HIS 6th & FOURTEETH AMEND. OF U.S. CONST. RIGHT TO A FAIR AND IMPARTIAL TRIAL.

FACTS SUPPORTING GROUND:

THE FACTS ARE ALL THE INSTANCES OF PROSECUTORIAL MISCONDUCT CONSIDERED NOT INDIVIDUALLY BUT ALL COMBINED TOGETHER.

24

**GROUND: 12 TWELVE:** THE TRIAL COURT DENIED APPLICANT HIS 6th AND 14th AMEND. RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL BY NOT PROVIDING A COMPLETE COPY OF THE TRIAL RECORD.

**FACTS SUPPORTING GROUND:** THE APPELLATE COUNSEL WAS UNABLE TO PRESENT AS A GROUND OF ERROR ON DIRECT APPEAL THAT APPLICANT WAS DENIED HIS DUE PROCESS RIGHT TO ATTEND ALL CRITICAL PROCEEDINGS IN HIS TRIAL. THIS IS TRUE BECAUSE THE STATE FAILED TO PROVIDE A COMPLETE RECORD. THE TRIAL RECORD IS DEVOID (VOL. 4 of 6 P. 183) OF THE JURY NOTE/Communication THAT WAS SENT OUT DURING DELIBERATIONS; 2) WHETHER COUNSEL WAS PRESENT; AND 3) WHETHER APPLICANT WAS PRESENT; AND 4) WHAT THE JUDGE'S RESPONCE WAS. ALSO THE TRIAL JUDGE AGREED TO HAVE AN OFF THE RECORD DISCUSSION WHICH COUNSEL OPENLY REVEALED HIS CONFLICT OF INTREST IN REPRESENTING APPLICANT AGAINST THE BRAZO Co. SHERIFF'S DEPT. BECAUSE COUNSEL'S VOLUNTARY HELP OR A RIDE-ALONG DEPUTY WITH BRAZOS Co SHERIFF'S DEPT. HE WENT ALONG ON RAIDS WERE ALL SUSPECTS ARE CONSIDERED ARMED AND DANGEROUS, HIS SAFTY AND VERY LIFE DEPENDENT UPON THE STATE WITNESSES. HE ALSO HAS FLASHING POLICE LIGHTS ON HIS PRIVATE VEHICLE. THIS OFF THE RECORD DISCUSSION WOULD HAVE ALERTED APPELLATE COUNSEL THAT TRIAL COUNSEL WAS OPERATING WITH A SEVER CONFLICT OF INTREST. TO PROVE APPLICANT INNOCENT HE MUST HIS FREIND AND CoWORKERS DID NOT FOLLOW PROCEEDORES, VIOLATED APPLICANTS CONSTITUTIONAL RIGHTS. DOING SO WOULD SUBJECT HIS FREIND/CoWORKERS TO INTERNAL DISIPLANARY UP TO BEING FIRED, OPEN THE DOOR FOR CIVIL SUIT AND/OR CRIMINAL CHARGES, THE VERY PEOPLE WE WILL SOMEDAY AFTER TRIAL BE INTRUSTING HIS VERY LIFE TO.

ALSO MISSING IS THE ALLEGED STIPULATION THAT A REDACTED VERSION OF THE VIDEO COULD BE INTRODUCED VOL. 4 P. 74.. THE STIPULATION THAT THE GUN WAS A FIREARM

25

Rev. 01/14/14

Vol 4. P.168 L.6-8. Also Missing, a copy of the alleged evidence sheet P.156, L.13-17.

On direct appeal, counsel can not argue outside the record. Therefore, due to the state's failure to so provide a complete record applicant was denied effective assistance of counsel on direct appeal.

26

Rev. 01/14/14

GROUND: 13. THIRTEEN: APPLICANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMEND. RIGHTS OF U.S. CONST.

FACTS SUPPORTING GROUND: 1) COUNSELS REPRESENTATION OF APPLICANT THE ENTIRE TIME WAS UNDER A SEVER CONFLICT OF INTREST 2) COUNSEL FAILED TO PROPERLY PRESENT APPLICANTS MOTION TO SUPPRESS OR URGE FOR A HEARING BEFORE TRIAL. 3) COUNSEL FAILED TO OBJECT WHEN THE STATE FAILED TO PRODUCE THE VIDEO (DVD) 20 DAYS BEFORE TRIAL AS THE LAW REQUIRES. 4) FOR AGREEING TO ALLOW THE STATE TO ENTER A REDACTED VERSION OF THE INCULPATORY VIDEO AND ACCORDING TO THE RECORDS SIGNING A STIPULATION TO SO ALLOW THEM TO DO SO WITHOUT APPLICANTS KNOWLEDGE. 5) FAILED TO OBJECT WHEN STATE FAILED TO PRODUCE EITHER OFFICER FICKE OR THE ALLEGED CONFIDENTIAL INFORMANT FOR CROSS-EXAMINATION. 6) FAILED TO OBJECT TO HEARSAY STATMENTS AND REQUEST AN IMMEDIATE RULING. 7) FAILED TO OBJECT TO BACK DOOR HEARSAY STATEMENTS AND REQUEST AN IMMEDIATE RULING. 8) FAILED TO ALLOW APPLICANT TO REVEIW THE VIDEO (DVD) EVEN IN THE FACE OF NUMEROUS REQUEST BEFORE TRIAL SO HE COULD MAKE AN INTELLIGENT AND INFORMED DECISION TO ACCEPT THE-STATES PLEA AGREEMENTS "OFFERS" OR GO TO TRIAL. 9) FAILED TO OBJECT TO THE INTRODUCTION OF CRITICAL EVIDENCE WITH OUT ESTABLISHING THE PROPER CHAIN OF CUSTODY. E.G. GUN, DVD OR JACKET. 10) COUNSEL FAILED TO OBJECT WHEN ~~APPLICANT WAS NOT ALLOWED TO BE PRESENT AT ALL STAGES OF HIS TRIAL. E.G. WHEN JURY SENT A NOTE OUT AND JUDGE SENT A REPLY. 12) FAILED TO OBJECT~~ TO STATE STATED THAT THE APPLICANT WAS "ONLY" IN JAIL FOR THE OFFENSE HE IS NOW CONVICTED OF. 11) COUNSEL FAILED TO OBJECT WHEN APPLICANT WAS NOT ALLOWED TO BE PRESENT AT ALL STAGES OF HIS TRIAL. E.G. WHEN JURY SENT A NOTE OUT AND THE JUDGE SENT A REPLY. 12) FAILED TO OBJECT TO THE NUMEROUS TIMES THE STATE PRESENTED FALSE EVIDENCE E.G. VOL 4 P 87 L. 7-9 13) FAILED TO OBJECT WHEN STATE INTRODUCED THE ILLEGAL INCOMPLETE INVENTORY LIST. 14) FOR ASSISTING

27

Rev. 01/14/14

AND URGEING EXCUSES FOR THE STATE TO DENIE THE APPLICANT HIS SIXTH AMEND. RIGHT TO CROSS-EXAMINE OFFICER FICKE VOL. 4. P. 90 L.7-9,.15) FAILED TO OBJECT WHEN THE STATE INTRODUCED CRITICAL INCULPATORY EVIDENCE THAT WAS ALTERED E.G. SEVERAL DIFFERANT VIDEOS SELECTIVELY MADE INTO ONE, WHICH IS IMPOSSIBLE TO AUTHENICATE FOR LEGAL INTRODUCTION Vol.4 P.151 L.6-9 FRONT CAMERA AND BACK SEAT CAMERA OF FICKE'S CAR Vol.4 P.144 L.10-12, Vol.4 P.166 L.19-20 FRONT CAMERA AND BACK SEAT OF BALLEWS CAR. 16) COUNSEL REFUSED AND FAILED TO ALLOW THE ONLY DEFENSE WITNESS TO REVEIW THE VIDEO TO REFRESH HER MEMORY, AND PREPARE HER FOR CROSS-EXAMINATION, STATING THAT HE COULD NOT ALLOW HER TO REVIEW THE VIDEO BECAUSE THIS WOULD BE WITNESS TAMPERING. 17) FAILED TO OBJECT WHEN THE PROSECUTOR MISSTATED THE LAW 18) FAILED TO OBJECT WHEN THE PROSECUTOR MADE IMPROPER JURY ARGUEMENTS. 19) FAILED TO REQUEST FINDINGS OF FACTS AND CONCLUSIONS OF LAW AFTER MOTION TO SUPPRESS WAS DENIED. 20) FAILED TO OBJECT WHEN THE JURY WERE ALLOWED TO TAKE THE VIDEO AND PLAYER INTO THE JURY ROOM DURING DELIBERATIONS. 21) COUNSEL FAILED TO OBJECT TO PROSECUTATORS PRODUCTION AND USE OF CUSTODIAL INTRA- -GATION VIDEO (DVD) IN VIOLATION OF TEXAS LAW. 22) COUNSEL FAILED TO PURSUE EXCULPATORY EVIDENCE, DISPATCH LOGS OF BRAZOS Co. SHERIFFS DEPT. AND BRYAN TX. POLICE DEPT. FOR FEBUARY 16, 2012 @ APPROXIMATLY 1pm Tru 4pm. 23) For Asking The Judge AND Jury to Consider EVIDENCE that is NOT IN THE Record, that is Detremental to Applicant; 24) Failed to Question Venire Person #6 Robert Cosina if his personal friendship with the Presiding Judge would effect his Ability to be Fair and impartial Juror.

28

Rev. 01/14/14

**GROUND:** 14 FOURTEEN:

APPLICANT WAS DENIED HIS SIXTH AMENDMENT RIGHTS OF U.S. CONST. TO EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL

**FACTS SUPPORTING GROUND:**

AS PREVIOUSLY SHOWN APPELLATE COUNSEL WAS NOT PROVIDED A COMPLETE COPY OF THE TRIAL RECORDS, THEREFORE IT WAS IMPOSSIBLE FOR COUNSEL TO FILE A PROPER MOTION FOR NEW TRIAL TO FURTHER DEVELOPE THESE UN-KNOWN FACTS. COUNSEL FAILED TO REQUEST THE COURT TO PRODUCE THESE MISSING PORTIONS OF THE RECORD. COUNSEL FAILED TO FILE THE MANDATORY AFFIDAVIT IN SUPPORT OF THE MOTION FOR A NEW TRIAL. COUNSEL FAILED TO BRING FORTH ISSUE'S SPECIFICALLY REQUESTED BY APPLICANT, BY WAY OF LETTERS, AS GROUNDS FOR THE MOTION FOR A NEW TRIAL, TO PRESERVE AND EXPAND ON THEM IN THE OFFICAL RECORD. E.G. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, APPLICANT NOT VEIWING VIDEOS PRE-TRIAL, AND THE ONE X LARGE LEATHER JACKET WOULD NOT FIT APPLICANT

24

Rev. 01/14/14

IT WAS IMPOSSIBLE FOR COUNSEL TO PRESENT THESE CRITICAL TRIAL ERRORS ON APPEAL DUE TO THE FACT THEY WERE UNKNOWN AND THEY WERE OUTSIDE OF THE RECORD. ALSO COUNSEL DID NOT PRESENT THESE ISSUES NOW BEING PRESENTED. ADDITIONALLY THE ISSUES THAT WERE PRESENTED WERE DEFICENTLY BRIEFED.

30

Rev. 01/14/14

GROUND: 15 FIFTEEN:

APPLICANT WAS DENIED HIS FOURTEENTH AMEND. RIGHT TO U.S. CONST. OF EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL

FACTS SUPPORTING GROUND:

SAME FACTS AS GROUND No. 14 FOURTEEN

31

Rev. 01/14/14

GROUND: SIXTEEN(16) 4th

APPLICANT WAS DENIED 6th AND 14th AMEND RIGHT OF U.S. CONST. TO EFFECTIVE ASSISTANCE OF COUNSEL, BECAUSE COUNSEL FAILED TO PROPERLY ASSERT ALL 4th AMEND. CLAIMS

FACTS SUPPORTING GROUND:

TRIAL COUNSEL FAILED TO OBTAIN RULEINGS ON THE VARIOUS MOTIONS TO SUPPRESS, PRE-TRIAL, COUNSEL FAILED TO REQUEST FINDINGS OF FACTS AND CONCLUSIONS OF LAW ON DENIED SUPPRESSION HEARING DURING TRIAL AND ON PRE-TRIAL MOTIONS. COUNSEL FAILED TO ADEQUATLY ARGUE THE ISSUE OF THE IDENTIFICATION OF APPLICANT BY CONFIDENTIAL INFORMANT. OR THE CONFIDENTIAL INFORMANTS IDENTIFCATION (WHO HE/SHE IS). AS WELL AS PURSUE THE ARGUEMENT FURTHER, INVOLVING THE INCOMPLETE, IMPROPER AND INVALID INVENTORY SEARCH

32

Rev. 01/14/14

17

**GROUND:** SEVENTEEN:
PROSECUTORIAL MISCONDUCT DENIED APPLICANT HIS 14ᵗʰ AMEND. RIGHTS
OF U.S. CONST. BY WITH-HOLDING EXCULPATORY EVIDENCE & 6.th
Amendment right to a fair trial

**FACTS SUPPORTING GROUND:**
PROSECUTOR WITH HELD AND FAILED TO PRODUCE

EXCULPATORY EVIDENCE, NAMELY, THE DISPATCH

LOGS/RECORDING/TRANSCRIPTS FOR BRAZOS Co.

SHERIFF DEPT. AND BRYAN CITY POLICE

DEPT. FOR FEBUARY 16, 2012 AT APPROXIMATELY

1 pm. THRU 4pm.

33

Rev. 01/14/14

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

### OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF _____

_____, being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____, 20____.

_____
Signature of Notary Public

Rev. 01/14/14

## PETITIONER'S INFORMATION

Petitioner's printed name: _____

State bar number, if applicable: _____

Address: _____

_____

_____

Telephone: _____

Fax: _____

## INMATE'S DECLARATION

I, _DAVE D GRECK_, am the applicant / petitioner (circle one) and being presently incarcerated in _TDCJ ID WAYNE SCOTT UNIT_, declare under penalty of perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on _May 14_, 20 _15_

_____
Signature of Applicant / Petitioner (circle one)

17

35

Rev. 01/14/14

## PETITIONER'S INFORMATION

Petitioner's printed name: _____

Address: _____

_____

_____

Telephone: _____

Fax: _____


Signed on _____, 20_____.


_____
Signature of Petitioner


18

36